## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-2381-MEH

WALTER CHARNOFF

      Plaintiff,

v.

NANCY LOVING, ART PORT LLC, ARTSUITE NY, STUDIO 41, LLC

      Defendants.

---

## PLAINTIFF'S MOTION FOR SANCTIONS

---

Plaintiff, Walter Charnoff, ("Mr. Charnoff" or "Plaintiff") by and through his undersigned counsel, The Law Office of Ian T. Hicks, LLC, hereby respectfully files his Motion for Sanctions, as follows:[1]

## I.      INTRODUCTION

Each step taken by the Defendants and their attorney in this case has been supported by a bad faith effort to mislead. Plaintiffs are therefore requesting sanctions under 28 U.S.C. § 1927 and the Court's inherent authority, against the Defendants other than Studio 41, LLC, ("S41") and their counsel, jointly and severally, for the filing and continued maintenance of the Motion to

---

[1] Certificate of Conferral: Undersigned counsel conferred with counsel for the Defendants, in writing, regarding the subject of this Motion. Those communications are reflected in Exhibit 1, attached hereto. No further conferral, based on the content of those communications, would be fruitful. Defendants and their counsel oppose the relief sought herein.

Dismiss for Lack of Jurisdiction (the "Motion to Dismiss") and Defendants' Response to Order to Show Cause ("Defendants' Show Cause Response").

Plaintiff requests attorneys' fees incurred in drafting (1) the Response to Defendants' Motion to Dismiss for Lack of Jurisdiction ("Plaintiff's Response") and (2) the Response to Defendants' Response to Order to Show Cause ("Plaintiff's Show Cause Response"). Moreover, Plaintiff requests that Defendants' Motion be denied as a substantive sanction. Both Defendants' Show Cause Response and their Motion to Dismiss are supported by evidence that is false, namely an Affidavit of Nancy Loving (the "Loving Affidavit"). The falsity of the Loving Affidavit arises from two factors.

First, the Loving Affidavit makes critical misrepresentations that Ms. Loving was the only owner of Art Port, LLC ("AP"), and relies upon a fraudulently manipulated document, the 2016 Tax Return (the "Tax Return"), as evidence supporting those misrepresentations. Second, nearly every material statement made in the Loving Affidavit is refuted by email communications from Ms. Loving or David Hinkelman ("Mr. Hinkelman"), Ms. Loving's business partner and live-in boyfriend.[2]

More specifically, the Tax Return was attached to the Loving Affidavit as <u>Exhibit B</u>, and offered in support of Ms. Loving's sworn statement she was the only owner of AP. Yet, the Tax Return stated on the first page that three Form K-1s were issued for AP, demonstrating that in fact AP had three owners, not one. Since the Form K-1s were part of the Tax Return when it was filed, their absence dictates that someone acting on behalf of Ms. Loving, AP, or ArtSuite NY

---

[2] The Affidavit of Studio 41, LLC, (the "S41 Affidavit") likewise appears to include at least one false statement regarding the timing of Ms. Loving's agency relationship with S41, but the falsity is not, at this time, as clear and palpable as it is for the remaining Defendants, Ms. Loving, Art Port, LLC, ("AP"), and ArtSuite ("AS").

received what was represented as a complete document, took out pages, and then Ms. Loving

swore under oath that the Tax Return stood for facts that it in reality directly contradicted.

This is not a trivial issue.  The misrepresentation that Ms. Loving was the only owner of

AP was critical to Defendants' Motion and Defendants' Show Cause Response, because it

purported to prove that AP was domiciled outside Colorado.  That fact, if true, would mean that

(1) AP is diverse from Plaintiff, who is domiciled in Colorado, for purposes of subject-matter

jurisdiction under 28 U.S.C. § 1332 and (2) that AP was a foreign entity possessing insufficient

minimum contacts with Colorado to be subject to this Court's *in-personam* territorial jurisdiction

under the Due Process Clause and Colorado's Long-Arm Statute, C.R.S. § 13-1-124.

If there was any question whether the manipulation of the Tax Return was done in bad

faith, no such question remains after Defendants' Reply to Plaintiff's Show Cause Response.

("Defendants' Show Cause Reply") and the email conferrals between the undersigned and counsel

for Defendants.  Immediately after Plaintiff's Response was filed, the undersigned conferred with

counsel for Defendants and requested that Defendant's Motion be withdrawn, and specifically

highlighted the issue with the missing Form K-1s in the Tax Return and the false Loving

Affidavit.

Counsel's response was that Defendants are not required to file complete documents, even

tax returns, which are signed under oath.  Counsel also stated that there might be additional

"interest holders" in AP, besides Ms. Loving, but despite a week of searching, she could not

figure out who they were, despite the fact her client is the manager of AP.  The undersigned's

request that counsel withdraw the Loving Affidavit, the Tax Return, and Defendants' Motion was

rejected.

In Defendants' Show Cause Reply, Ms. Loving and Mr. Hinkelman admit that AP had two additional owners besides Mr. Loving.  Those two additional owners include Mr. Hinkelman and ISP Holding, Inc. ("ISP"), which is in turn owned by Alicia St. Pierre, and Martin St. Pierre (collectively the "St. Pierres").  Ms. Loving and Mr. Hinkelman then attempt to explain the absence of Form K-1s and the falsity of the Loving Affidavit through a series of convoluted, self-contradictory, and implausible statements that simply reiterate their bad faith and appear to constitute an admission of filing knowingly fraudulent federal tax returns.

Like their attorney, Ms. Loving, AS, and AP, with knowledge that they have submitted false documents to the Court, and faced with a choice to withdraw those falsehoods or double down with more, chose the latter.  Thus, Ms. Loving, AS, and AP, along with their attorney, made a series of intentional decisions with the intent to defraud and deceive the Court and Plaintiff on pivotal matters central to the issues in dispute.  This is intolerable, and sanctions are appropriate.

## II.    LEGAL STANDARD

An attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  *Crocs, Inc. v. Effervescent, Inc*., 278 F. Supp. 3d 1182, 1192 (D. Colo. 2017); 28 U.S.C. § 1927.

"An attorney's actions are considered vexatious and unreasonable under § 1927 if the attorney acted in bad faith," *Dreiling v. Peugeot Motors of America, Inc.,* 768 F.2d 1159, 1165 (10th Cir. 1985), or if the attorney's conduct constitutes a "reckless disregard of the duty owed by counsel to the court." *Braley v. Campbell*, 832 F.2d 1504, 1511–12 (10th Cir. 1987).  Sanctions under § 1927 are also appropriate when "an attorney is cavalier or bent on misleading the court; intentionally acts without a plausible basis; [or] when the entire course of proceedings was

unwarranted." *See Miera v. Dairyland Ins. Co.*, 143 F.3d 1337, 1342 (10th Cir. 1998) (internal quotations and citations omitted).  A district court has "wide discretion in matters of sanctions" under § 1927.  *Hamilton v. Boise Cascade Exp.*, 519 F.3d 1197, 1207 (10th Cir. 2008).

Similarly, "[u]nder federal law, the court has the inherent power to coerce compliance with its orders, sanction behavior constituting fraud on the court, and vindicate its authority in the face of contumacious behavior." *ClearOne Commc'ns, Inc. v. Chiang,* 670 F. Supp. 2d 1248, 1281 (D. Utah 2009) (citing *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43–44 (1991)).  "The federal courts' inherent power to protect the orderly administration of justice and to maintain the authority and dignity of the court extends to a full range of litigation abuses*." Diamond Consortium, Inc. v. Hammervold,* 386 F. Supp. 3d 904, 914 (M.D. Tenn. 2019) (Quoting *Mitan v. Int'l Fid. Ins. Co.,* 23 F. App'x 292, 298 (6th Cir. 2001)).

"[C]ourts have an inherent power at common law to 'protect their institutional integrity and to guard against abuses of the judicial process with contempt citations, fines, awards of attorneys' fees, and such other orders and sanctions as they find necessary, including even dismissals and default judgments.'" *Klayman v. Judicial Watch, Inc.,* 314 F. Supp. 3d 308, 312 (D.D.C. 2018) (Quoting *Parsi v. Daioleslam*, 778 F.3d 116, 130 (D.C. Cir. 2015) (Citation omitted)).  A court has the inherent power to sanction a party if it acts in "bad faith, vexatiously, wantonly, or for oppressive reasons," including "willful[ ] abuse [of the] judicial processes." *See Lundahl v. Halabi,* 600 F. App'x 596, 607 (10th Cir. 2014) (Quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766 (1980) (internal quotation marks omitted)).  Under "the inherent power of the court, sanctions are appropriate where an individual has made a false statement to the court and has done so in bad faith." *S.E.C. v. Smith*, 710 F.3d 87, 97 (2d Cir. 2013) (Citing *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 136 (2d Cir. 1998)).

The court is not required to consider other sanctioning mechanisms before invoking its inherent powers.  *See Auto-Owners Ins. Co. v. Summit Park Townhome Ass'n*, 886 F.3d 852, 858 (10th Cir. 2018); *Courtesy Inns, Ltd. v. Bank of Santa Fe*, 40 F.3d 1084, 1089 (10th Cir. 1994) (stating that *Chambers v. NASCO, Inc*., 501 U.S. 32 (1991), rejected arguments that "the various sanctioning provisions of the federal rules reflect legislative intent to displace the court's inherent powers"); *Nat. Gas Pipeline Co. of Am. v. Energy Gathering, Inc*., 2 F.3d 1397, 1407 (5th Cir. 1993) ("In *Chambers* . . . the Court held that the inherent power to impose sanctions for bad-faith conduct during litigation was not displaced by, and went beyond, such sanctioning mechanisms as Rule 11 and 28 U.S.C. § 1927.") (citing *Chambers v. NASCO, Inc*., 501 U.S. 32 (1991)).

### III.    LEGAL ARGUMENT

#### A.    <u>The Loving Affidavit Depends on a Manipulated Tax Return for Improper Purposes</u>

Sanctions are proper under 28 U.S.C. § 1927 and the Court's inherent authority, against Ms. Loving, AS, and AP, and their counsel, jointly and severally, for their filing of the Loving Affidavit, their manipulation of the Tax Return, and their continued use of those documents to support the Motion to Dismiss and Show Cause Response, despite knowledge of their falsity. Reviewing the Defendants' Show Cause Reply and supporting Exhibits, it is clear that both Ms. Loving and her attorney have decided to manufacture new misrepresentations, rather than withdraw those filings as requested by the undersigned.

The Loving Affidavit is attached to both Defendants' Motion as <u>Exhibit A</u> and Defendants' Show Cause Response as <u>Exhibit D</u>.  *See* Defs.' Mot. to Dismiss, ECF No. 11 and 11-1; Defs.' Resp. to Order to Show Cause, ECF No. 12-1 and 12-8.  The Loving Affidavit, in turn, relies upon the Tax Return, which is attached to that document as <u>Exhibit B</u>.  The Loving Affidavit cites to <u>Exhibit B</u>, as follows, at paragraph 15 in connection with the statement in

paragraph 14 that AP is domiciled in New York: "**I am the sole member of Art Port LLC. See**

**tax return attached as Exhibit B**."  Loving Aff., attached hereto as <u>Exhibit 2</u> (Emphasis added);

Tax Return, attached as <u>Exhibit 3</u>.

In Defendants' Motion, they cite to the Loving Affidavit and specifically paragraph 14, for

the proposition that AP is domiciled in New York, as follows: "**Art Port, LLC only has one**

**member, Nancy Loving, who is a citizen of New York.**"  *See* Defs.' Mot. to Dismiss, ECF No.

11, ¶ 4.  This statement and citation is critical, as it purportedly demonstrates—through reliance

on the Tax Return—that because a limited-liability company's domicile is determined by the

domicile of all its members, AP is domiciled in New York, where Ms. Loving is also domiciled as

its "**one member**."

The contention that Ms. Loving is the only member of AP, a contention built on the Tax

Return, is then used throughout Defendants' Motion in support of the argument that none of the

Defendants—a class that includes AP—have sufficient minimum contacts with Colorado to

justify the Court's exercise of its *in personam* territorial jurisdiction over AP.  *See, e.g.,* Defs.'

Mot., ECF No. 12, p. 8 ("Plaintiff does not allege, nor could he, that *Defendants* had continuous

and systematic general business in Colorado.  Plaintiff does not allege that any of the *Defendants*

are registered to do business in Colorado, lease, own, or possess any offices, facilities, or other

property in Colorado, have employees in Colorado, hold bank accounts in Colorado, or have

solicited any business in Colorado . . . "); p. 10-11 ("*Art Port/Loving* never travelled to Colorado

for the purpose of soliciting, negotiating or consummating any transaction for the purchase of art

by Charnoff . . . "); p. 11-12 ("The evidence demonstrates that *Nancy Loving, through Art Port*,

entered into agreements with Charnoff in New York and  Connecticut . . .") (Emphasis added).

In Defendants' Show Cause Response, Defendants rely upon the Loving Affidavit and Tax Return to establish that "**Art Port LLC and Its Member are Citizens of New York**."  *See* Defs.' Resp. to Order to Show Cause, ECF No. 12-1, p. 3 (Emphasis in original).  The Show Cause Response directly cites to the Tax Return at ¶¶ 7-9 as follows:

> As Ms. Loving further attested *in her sworn affidavit*, Ms. Loving sells art through Defendant Art Port LLC . . . *Ms. Loving is the sole member of Art Port LLC.*  [Loving Affidavit] at ¶ 15. Accordingly, Defendant *Art Port LLC is a citizen of New York for the purposes of the Court's diversity jurisdiction.*

(Emphasis added).  Because the Response cites paragraph 15 of the Loving Affidavit, it is likewise citing to the Tax Return that is cited in that paragraph as Exhibit B, and doing so as evidence that she is the only member of AP.

In paragraph 9, Defendants cite to two cases holding that a limited-liability company is domiciled for purposes of subject-matter jurisdiction under 28 U.S.C. § 1332, diversity of citizenship, in the states where each member is domiciled.  It is therefore unquestionable that Defendants rely upon the Loving Affidavit and Tax Return for two critical purposes: (1) to demonstrate AP's domicile in New York to show it lacks sufficient minimum contacts for the exercise of personal jurisdiction and (2) to support diversity jurisdiction as a party that is domiciled in a state different from Colorado, where Plaintiff is domiciled.

The problem with their reliance on the Tax Return is that, upon more careful scrutiny, it shows that AP actually had three owners/members, not one.  On the first page of the Tax Return, at the top, it states at Line I as follows: "Number of Schedules K-1 . . . 3."  *See* Ex. 3, p. 1.  "An LLC provides its members with a Schedule K–1 reporting each member's earnings . . . [a]lthough it does not pay taxes, an LLC must still file a 'partnership return' (Form 1065) with the IRS reporting its earnings."  *See United States v. McBride*, 656 F. App'x 416, 419 n. 1 (10th

Cir. 2016) (unpublished) (emphasis added); *see also, e.g., Crew Tile Distribution, Inc. v. Porcelanosa Los Angeles, Inc.,* 2017 WL 4988667, at *10 (D. Colo. Nov. 2, 2017) (Explaining how Form K-1s are used to determine ownership in an entity, stating as follows: "[i]n seeking to open a credit account with Porcelanosa in 2004, Darlyne Davis represented that she was the sole owner of Infinite, but the company's K–1 forms reflect that it was jointly owned by Ryan Davis (34%) and Darlyne Davis (66%)."); *In re Direct Access, LLC*, 602 B.R. 495, 531 (Bankr. S.D.N.Y. 2019) ("[A] Form K-1 would only be issued for someone who is an owner . . .").

Consequently, the very evidence that Ms. Loving and AP provided to prove AP's domicile, through the domicile of its members, accomplished nothing more than proving the opposite—that she has failed to meet her burden of persuasion to prove complete diversity.  It likewise appeared that the Form K-1s had been affirmatively removed, since there were clearly "3" filed with the Tax Return.  *See* Ex. 2, p. 1.

All of the facts alleged herein—that the Loving Affidavit was false, the Tax Return had been affirmatively manipulated, and that it was done as part of a calculated effort to mislead this Court and Plaintiff, have now been reconfirmed by Defendants' Show Cause Reply.

Therein, the following explanation appears for the why the Form K-1s were removed from the Tax Return: "Defendants filed the return simply to show the address for Art Port LLC on the tax return was a New York address and that the tax return was filed in New York."  Defs.' Reply to Order to Show Cause, ECF No. 21, p. 2.  The very next sentence continues: "Defendants simply did not file the entire return because the tax return was attached as evidence of the LLC's address."  *Id.*  Taken together, these sentences show that Defendants are claiming they knowingly filed an incomplete Tax Return because that document was utilized only for purposes of showing AP's address.  That contention is meritless, for two reasons.

First, it is contradicted by Defendants' own words and the content of their filings.  Most directly, the Loving Affidavit itself states that "**I am the sole member of Art Port LLC. See tax return attached as Exhibit B**."  *See* <u>Ex. 2</u>, ¶ 15 (emphasis added).  In Defendants' Motion, Defendants cite to the Loving Affidavit and specifically paragraph 14, which directly ties into paragraph 15 that cites the Tax Return, for the proposition that "**Art Port, LLC only has one member, Nancy Loving, who is a citizen of New York**."  *See* Defs.' Mot. to Dismiss, ECF No. 11, ¶ 4.

Second, it is circular and self-contradictory.  AP's address and where it pays taxes are facts irrelevant to showing its domicile unless the domicile of all its members/owners is also proven.  And the address has no independent relevance, because it is not a fact of consequence, standing alone; it is only is relevant if it is used to prove domicile, which, in turn, requires evidence of who its members are so their domicile can be established.  Therefore, Ms. Loving would have to be established as the sole member of AP in order to establish AP's domicile.

Moving through Defendants' Show Cause Reply, the explanations grow increasingly more convoluted and implausible.  Ms. Loving states that she was not even aware three Form K-1s were issued, and thus, when she signed the Loving Affidavit, she apparently believed herself to be the sole member of AP.  Defs.' Reply to Order to Show Cause, ECF No. 21, p. 2.

Why Ms. Loving believes this to be exculpatory is difficult to understand.  It instead shows that she (1) filed the Tax Return even though it was inaccurate at the time it was filed, and contrary to her beliefs about ownership of the company, (2) does not review documents filed in support of sworn testimony in an affidavit to ensure her statements are accurate, (3) filed less than whole Tax Return, but was unaware that the left-out parts constituted three Form K-1s she never

knew were issued, and (4) now knowing the Loving Affidavit to be false on a central issue, continues to rely upon it, rather than withdrawing it.

Ms. Loving continues onward, the story growing more remarkable by the word, stating as follows:

> While she still believes she is the sole member of Art Port LLC, Ms. Loving has since investigated and, while each of the interest owners/investors of Art Port LLC believe her to be the sole member, the tax returns do show that 3 K-1s were issued. *Id.* Mr. Hinkelman, the individual who signed the subject tax return, also believes and believed Ms. Loving to be the sole member of Art Port LLC. See Declaration of Hinkelman attached as Exhibit B.

*Id.,* p. 3. So, if Ms. Loving is to be believed, five separate individuals, two natural persons—Ms. Loving and Mr. Hinkelman—and one company—ISP—along with ISP's owners, the St. Pierres, had ownership interests in AP, had Form K-1s filed on their behalf, but (1) still believe Ms. Loving is the sole member of AP, making the Form K-1s filed in 2016 false and (2) were wholly unaware that the Form K-1s existed or were filed, under oath, with the IRS. To be true, the Reply necessarily requires that everyone provided false information on a Tax Return contrary to their existing beliefs, does not review sworn documents filed with the IRS on their behalf, and are utterly clueless on matters central to their business affairs.

Mr. Hinkelman's supporting Declaration is equally incredible. In paragraphs 1-3, he admits that (1) he was a member of AP, with a 50% ownership interest, beginning in 2013, (2) he terminated his interest in AP in August 2018 and provided notice to someone, and (3) he transferred his 50% interest to Ms. Loving, and she transferred "a portion" of her interest back to Mr. Hinkelman, but not the same interest he had transferred, but some other, unknown interest. *See* Decl. of David Hinkelman, ECF No. 21-3, ¶¶ 1-3. In paragraph 5, Mr. Hinkelman appears to admit that he violated federal tax laws in the manner in which he executed and filed the Tax Return. *Id.,* ¶ 5.

These statements prove that (1) Mr. Hinkelman knew in 2016 he was a member of AP, (2) as the tax matters partner who signed the Tax Return, issued himself a Form K-1, and (3) that he transferred a 50% interest in AP to Ms. Loving, which then somehow transformed itself through some unknown process into a different "interest" and that interest, the percentage of which he does not recall, was transferred back to him.  Again, this would require, in addition to all the other far-fetched conclusions, the Court to believe that in good faith Mr. Hinkelman knew he was a 50% owner at the time of the 2016 Tax Return, but Ms. Loving either never knew that, or simply forgot when executing the Loving Affidavit that relied upon that Tax Return.

The more likely story is that Ms. Loving, AP, and AS in bad faith provided a false Loving Affidavit, supported by a manipulated document, and simply created *ad-hoc* justifications when they were caught in the deception that are baffling, convoluted, and riddled with unbelievable statements and internal contradictions.  It is even more disturbing that Mr. Hinkelman and ISP appear to want the benefit of being on AP's Tax Return—which appears to have likely benefitted them through a several hundred thousand dollar claimable loss—but want to deny the burden of being an owner when it suits their needs, such as in the context of this litigation.

Not only is that conclusion rendered more likely by the circumstances alone, it is reinforced by the reaction of Defendants' counsel and Defendants since Plaintiff's Response was filed by the undersigned conferred in an effort to have the filings withdrawn, as explained below in Section III. B.

**B.**   **The Loving Affidavit's Key Contentions are Refuted by Defendants' Own Words**

The Loving Affidavit's key contentions—other than those related to the Tax Return and AP's domicile—are refuted by emails sent by Defendants, emails sent by Mr. Hinkelman and Ms. Loving.  The reaction of Defendants' counsel, when these issues were pointed out in various

conferral emails, was not to reassess their Motion to the extent it relied on those contradicted statements, but instead to ignore the contradictions, and further misrepresent them in Defendants' Reply to Defendants' Motion (the "Defendants' Jurisdictional Reply")

The Loving Affidavit makes several key misrepresentations or omissions that are pivotal the jurisdictional question, including (1) that Plaintiff made his decision to purchase art in New York, (2) Ms. Loving never travelled to Colorado to meet with Plaintiff regarding the purchase of art, (3) no contract was formed for the purchase of art while Ms. Loving and Plaintiff were in Colorado, and (4) Mr. Hinkelman, on Ms. Loving's behalf, never picked up a check from Plaintiff's home in Colorado, but instead, all monies were wired to an account in New York, which is false.  *See* Ex. 2, ¶¶ 16-25 (1), ¶¶ 26-28 (1)-(3), ¶¶ 22-25 and ¶ 28 (4).

Each of these misrepresentations was refuted by emails sent by Ms. Loving or Mr. Hinkelman to Plaintiff, or independent records, all of which was supplied in Plaintiffs' Response and identified in Section III. B., the Statement of Material Facts, which cites to Plaintiff's Affidavit and the 12 supporting exhibits.

First, paragraphs 6-9 cite to numerous emails from Ms. Loving and Mr. Hinkelman where they clearly solicit Plaintiff, request that he meet with them in Colorado to review various artworks, and confirm that during those meeting he made selections for the purchase of art and came to terms with Defendants, forming a contract while Ms. Loving and Plaintiff were physically located in Colorado on at least July 1st and 3rd of 2016.  *See* Pl.'s Resp. to Defs.' Mot. Dismiss, ECF No. 15, III. B., SMF ¶¶ 6-12; Pl.'s Aff., ¶¶ 24-28, ¶¶ 40-43.  Indeed, Ms. Loving stated in an email on July 24, 2016, stated that Plaintiff did not have to pay sales tax because it was an out of state purchase—in Colorado.  *See id.,* Pl.'s Resp. to Defs.' Mot. Dismiss, III. B., SMF ¶ 12.  Those same emails demonstrate that performance of the contract—the delivery of the

art—was due in Colorado.  *See* Pl.'s Resp. to Defs.' Mot. Dismiss, III. B., SMF ¶¶ 6-12; Pl.'s Aff., ¶¶ 24-29, ¶¶ 40-43.

Second, Plaintiff did not pay for the art with three wires sent to out of state, as Ms. Loving states, but instead two wires and a check that was physically picked up from Plaintiff's home in Colorado by Mr. Hinkelman, which his own text message, attached as Exhibit 10 to Plaintiff's Affidavit, this was in the amount of $72,350.00, which was nearly half of the value for the purchase of all the art, for both the first and second transactions, a picture of which was filed with Defendants' Show Cause Response as Exhibit C.  So documents confirm three visits by Ms. Loving with Mr. Hinkelman, or Mr. Hinkelman traveling to Colorado on her behalf, to complete each material step in forming a contract to purchase the art and to pick up nearly half the funds necessary to complete the purchase.

As explained in Plaintiffs' Response, where an out of state party travels into the forum state, and forms a contract in the forum state, with performance due in the forum state, the Tenth Circuit has explained jurisdiction exists in the forum state so clearly that it "do[es] not regard[] th[at] as being even a close case."  *See, e.g., East Vail Townhomes, Inc. v. Eurasian Development D.A., Inc.,* 716 F.2d 1346, 1348–49 (10th Cir. 1983) (stating that "[w]e do not regard this as being even a close case," held where agreement was negotiated and executed in Colorado, court had personal jurisdiction over nonresident); *Gognat v. Ellsworth*, 224 P.3d 1039, 1052 (Colo. App. 2009), *aff'd*, 259 P.3d 497 (Colo. 2011) ("[Plaintiff] alleged . . . that Mr. Ellsworth came to Colorado to talk about forming a joint venture . . . and that they agreed to such a joint venture during these meetings. Mr. Gognat therefore established . . . specific jurisdiction."); *Ruggieri v. Gen. Well Serv., Inc*., 535 F. Supp. 525, 532 ("When a defendant has traveled into the forum

state to negotiate and execute a contract, he may be properly sued in the forum state for breaches of that contract.")

In Defendants' Jurisdictional Reply, Defendants ignore these key documents and evidence and misrepresent what they say in an effort to make them appear to show only one trip to Colorado, which is utterly false.  Defendants state that Plaintiff characterized her trip to Colorado, as a whole, was "for the purpose of" meeting him to select art.  But in fact, Plaintiff's Affidavit states that his "for the purpose of" language only described the purpose his meeting with Ms. Loving, not what else she might have done in Colorado, because that is not relevant—if he meets her about the art, that is a jurisdictional contact for a claim arising out of that art transaction.  Defendants also ignore the fact that there are two separate emails indicating two separate trips for the express purpose—as it pertains to Plaintiff—of forming a contract for the sale of art.  Finally, Defendants do not address the third trip to Colorado by Mr. Hinkelman to pick up a check that constituted nearly half the cost for their entire scope of business dealings related to the art.

Against this backdrop, Defendants have presented zero evidence of *Plaintiff stating* that he formed a contract for the purchase of art in New York or that he took any material step towards or involving the purchase of art in New York.  All Defendants have presented are a single self-serving email authored by Ms. Loving, and the unsupported Loving Affidavit, which is riddled with demonstrable falsehoods.  Defendants' Motion is worse than unsupported, and it is at war with the words and actions of those upon whose behalf it is purportedly filed, demonstrating that Defendants will do and say whatever is necessary to try and steal a win in this litigation.

**C.**     <u>**Defendants' Misconduct Reflects a Bad Faith Intent to Mislead the Court**</u>

Standing alone, these circumstances and actions would be sufficient to find that Ms. Loving, AS, and AP, as well as their attorney, acted in bad faith.  That conclusion is amplified even further by the fact that immediately after Plaintiff filed its Response to Defendants' Motion, the undersigned transmitted an email to Defendants' counsel (1) requesting that she carefully review Plaintiff's Response, Plaintiff's Affidavit, and Ms. Loving's and Mr. Hinkelman's many emails to Plaintiff that directly contradict the Loving Affidavit, (2) identifying that the Tax Return appears to have been manipulated to have the Form K-1s removed, was represented by the Loving Affidavit as showing one owner/member when in fact it showed three on page 1, (3) seeking confirmation that counsel was unaware that AP had three, rather than one, owner as represented falsely in the Loving Affidavit, and (4) asking that Defendants withdraw their Motion, and if not, notifying counsel that Plaintiff would seek sanctions no earlier than seven days thereafter.  *See* <u>Ex. 1</u>, Email dated Sep. 18, 2019.

In the response email from Defendants' counsel, on September 20, 2019, she stated, in relevant part, (1) Plaintiff's concerns only applied to domicile, not minimum contacts (even though out of state domicile must be proven for the minimum contacts analysis to even apply), (2) although counsel did not file a manipulated return, she was "not aware of any requirement" that she file a complete Tax Return (even though the Tax Return was filed and attached to the Loving Affidavit with no indication it was incomplete), (3) counsel was "not aware that there were three owners of ArtPort LLC in 2016 and am still unclear of the make-up.  I have been working on understanding that issue all week" (indicating that counsel knew "all week," including the three days of September 16, 17, and 18th up until Plaintiff's Response was filed late on the 18th there might be a core discrepancy or misstatement of material fact in Defendant's Motion, but did not

say anything until the undersigned raised the issue), and (4) counsel was "confused" by the undersigned's request that Defendants' Motion or the Loving Affidavit be withdrawn, because the falsity in the Loving Affidavit and the Tax Return as represented by Defendants originally only related to the issues in Defendants' Show Cause Response (which as explained above, is inaccurate, and fails to explain why falsehoods in documents relating to any filing that is awaiting a ruling are acceptable). *See id.*, Email dated August 20, 2019.

In reply to that email, the undersigned sent an email later the same day (1) stating that the undersigned's original email on September 18th identified, through Plaintiff's Response, that there were a multitude of false statements in the Loving and S41 Affidavits apart from those concerning the Tax Returns that are refuted by her client's own emails, especially at paragraphs 26-28 of the Loving Affidavit, as well as two other categories of misrepresentations, yet Defendants' counsel failed to address those issues that the undersigned clearly raised on September 18th, (2) explaining why the Tax Return is relevant to both minimum contacts and diversity jurisdiction, and detailing why those matters are inextricably intertwined, (3) stating that the undersigned did not understand how counsel was still unable to discern who the three owners/members in AP were, given the seeming simplicity of the issue, and (4) under the undersigned's view, any document that is filed needs to be complete unless it is identified as incomplete especially where it is contrary to the sworn affidavit it is attached to. *See id.,* Email dated September 20, 2019 at 12:04 p.m.

As is now clear, none of the documents that contain false statements of material fact, whether it be Defendants' Motion or the Loving Affidavit, were withdrawn. Instead, Defendants and their counsel continue to rely on them for their Motion to obtain dismissal of the case, filed the Show Cause Reply after the above email exchange that doubled down on yet more apparent

misrepresentations in an unconvincing effort to explain false statements in this litigation by admitting their statements to the IRS in the Tax Return were false, and also filed the Jurisdictional Reply that boldly and cavalierly ignored the emails attached to Plaintiff's Affidavit filed with Plaintiff's Response that refuted the Loving Affidavit.

Both the original filing of Defendants' Motion and the Loving Affidavit, as well as the continued maintenance of those filings after being notified they contained false statements of material fact, demonstrates that Defendants and their counsel have acted in bad faith, vexatiously, and in willful abuse of the judicial process.

A court may sanction a party under its inherent authority when that party 'has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *E.g., Hutchinson v. Pfeil*, 208 F.3d 1180, 1186 (10th Cir.2000) (quoting *Chambers v. NASCO, Inc*., 501 U.S. at 45–46). Similarly, "[a]n attorney's actions are considered vexatious and unreasonable under § 1927 if the attorney acted in bad faith," *Dreiling v. Peugeot Motors of America, Inc.,* 768 F.2d 1159, 1165 (10th Cir. 1985), or "an attorney is cavalier or bent on misleading the court; intentionally acts without a plausible basis; [or] when the entire course of proceedings was unwarranted." *See Miera,* 143 F.3d at 1342 (10th Cir. 1998).

Thus, under its inherent authority or § 1927, a court may levy sanctions for the same conduct when bad faith or a similar level of intent is present. *See, e.g., Englebrick v. Worthington Indus., Inc.,* 944 F. Supp. 2d 899, 908 (C.D. Cal. 2013), *aff'd,* 620 F. App'x 564 (9th Cir. 2015) ("District courts have inherent authority to sanction parties who provide false testimony or engage in deceptive conduct.") (Citing *Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001)); *Crocs, Inc.,* 278 F. Supp. 3d at 1192 (applying § 1927). Bad faith may be shown by direct or circumstantial

evidence.  *See, e.g., Cont'l Cas. Co. v. Marshall Granger & Co.,* LLP, 2017 WL 1901969, at *10 (S.D.N.Y. May 9, 2017).

Here, there is ample evidence of bad faith.  Defendants knew originally, and later were informed again by the undersigned, that the Loving Affidavit contained numerous false statements of material fact concerning the locations where important transactions occurred and that the Loving Affidavit relied upon the false Tax Return.

Plaintiff demonstrated, clearly, that Ms. Loving's statements in paragraphs 26-27 of her Affidavit, concerning Ms. Loving's travels to Colorado, her meetings with Plaintiff in Colorado, and where the transactions at issue allegedly occurred, were false and refuted by her own emails and those of Mr. Hinkelman to Plaintiff.  *See, e.g.,* Pl.'s Resp. to Mot. to Dismiss, SMF at ¶¶ 6-12. Those false statements were critical, because Defendants used them to attempt to show that they did not travel to Colorado to solicit Plaintiff to purchase art, that he did not make his selections of art in Colorado, and that any contract to purchase art was not formed in Colorado.  Defendants' clear purpose in making those false statements was to mislead the Court into believing that the center of gravity for the parties' commercial relationship arose outside Colorado.

The Tax Return was likewise demonstrated to be falsely represented in the Loving Affidavit and Defendants' Motion.  It continues to be falsely represented in the Jurisdictional Reply and Show Cause Reply.  Rather than address the substance of the falsity, Defendants have authored a labyrinth of incredible, baffling, self-contradictory, and incriminating statements and further sworn declarations in their Show Cause Reply.  More disconcerting is the statement by Defendants' Counsel that she is not required to file complete documents, and her steadfast refusal to address the issue at hand rather than engage in procedural and linguistic gamesmanship.

19

Defendants utterly failed to explain or even address the falsity of the key statements in paragraphs 26-27 of the Loving Affidavit that were used as the foundation of Defendants' Motion.

Sanctions in the form of attorneys' fees and costs incurred by Plaintiff in responding to Defendants' Motion and the Response to Defendants' Show Cause Response, as well as the instant Motion are therefore warranted.  So too is denial of Defendants' Motion.  Plaintiff has tried to resolve these issues, which are on critical matters that may be decisive in a dismissal of this case, without Court intervention and not only did Defendants and their attorney fail to rectify the problems, they worsened their behavior as shown by the Show Cause Reply and attached exhibits.  Only sanctions will protect Plaintiff and ensure the orderly and fair administration of justice.

## V.      CONCLUSION

Plaintiff requests that the instant Motion be granted, Defendants' Motion be denied as a sanction, and that he be given 21 days after entry of any Order granting the same to file his request for attorneys' fees and supporting documentation.


Dated this 4th day of October, 2019

*/s/ Ian T. Hicks, Esq.*
Ian T. Hicks, Reg. No., 39332
The Law Office of Ian T. Hicks LLC
Attorney for Plaintiff
6000 East Evans Avenue, Suite 1-360
Denver, Colorado, 80222
Telephone: (720) 216-1511
Facsimile: (303) 648-4169
E-mail: ian@ithlaw.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on this 4th day of October, 2019, the foregoing Motion

was filed via CM/ECF, and served upon the following:

**Shoemaker Ghiselli + Schwartz, LLC**
Elizabeth H. Getches
Cynthia A. Mitchell
SHOEMAKER GHISELLI + SCHWARTZ LLC
1811 Pearl Street
Boulder, CO 80302
Telephone: (303) 530-3452
 FAX: (303) 530-4071
Email: lgetches@sgslitigation.com
Attorney for Defendants


*s/   Ian T. Hicks, Esq.*