IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-02381-LTB-MEH

WALTER CHARNOFF,

    Plaintiff,

v.

NANCY LOVING d/b/a ARTSUITE NY,
ARTPORT, LLC, and
STUDIO 41, LLC,

    Defendants.

---

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
---

**Michael E. Hegarty, United States Magistrate Judge.**

Before the Court is Defendants' Motion to Dismiss for Lack of Personal Jurisdiction [ECF 11]. Pursuant to 28 U.S.C. § 636(b)(1)(B) and D.C. COLO. L.Civ.R. 72.1(c), the motion has been referred to this Court for a report and recommendation.

For his Complaint, Plaintiff, a resident of Colorado, alleges Defendant Loving, a resident of New York, solicited him by telephone and electronic mail to purchase certain works of art created by Harold Garde, beginning in early 2016. In this endeavor, Plaintiff alleges Loving was acting on behalf of her own business, Artsuite NY, Artport, LLC, and Garde's entity, Studio 41, LLC. Loving allegedly emailed to Plaintiff photographs and descriptions of certain works of art. Later, she traveled to Boulder, Colorado to meet with Plaintiff in furtherance of these solicitation efforts. At the meeting with Loving in Colorado, Plaintiff made his selection of artworks to purchase. After the meeting the parties continued to communicate by electronic mail regarding specifics of the purchase. Plaintiff initially transferred $45,120.00 to Loving, and, after more

negotiating and more selections of artwork by Plaintiff, as well as revelations of improper storage and treatment of the works of art that Plaintiff had agreed to purchase, and in reliance on representations made by Loving concerning certain offsetting credits Plaintiff would receive, Plaintiff ultimately paid Loving a total of $186,000.00. At the time he filed this lawsuit, Plaintiff had not received his alleged purchases.

The Complaint in this action makes the following claims: (1) breach of contract; (2) unjust enrichment; (3) fraudulent misrepresentation; (4) civil theft pursuant to Colo. Rev. Stat. §§ 18-4-401 and 405; (5) conversion; (6) vicarious liability of the entity Defendants for Loving's conduct under a respondeat superior theory; (7) joint venture liability of Studio 41, LLC; (8) vicarious liability of the entity Defendants for Loving's conduct under the doctrine of actual and implied authority; and (9) vicarious liability of the entity Defendants for Loving's conduct under the doctrine of apparent authority. Plaintiff seeks economic and equitable relief. *See* Compl., ECF 5. On August 28, 2019, Defendants filed the present motion to dismiss for the Court's lack of personal jurisdiction. The Court heard limited argument on October 28, 2019 and, for the reasons that follow, respectfully recommends that the Honorable Lewis T. Babcock deny Defendants' motion.

**I.   Statement of Facts**

The following are relevant factual allegations (as opposed to legal conclusions, bare assertions, or merely conclusory allegations) made by Plaintiff in his Complaint and not refuted by Defendants (whose relevant factual allegations are noted below), which are taken as true for analysis under Fed. R. Civ. P. 12(b)(2) pursuant to *OMI Holdings, Inc. v. Royal Ins. Co.*, 149 F.3d 1086, 1091 (10th Cir. 1998).[1]

---

[1] "[E]ven well-pleaded jurisdictional allegations are not accepted as true once they are controverted by affidavit (here, based on personal knowledge of the party with direct access to the operative

Plaintiff resides in Longmont, Colorado. Compl. ¶ 1, ECF 5. Defendants are residents of either New York or Delaware. *Id.* ¶¶ 2-5. In early 2016 Defendant Loving began soliciting Plaintiff by telephone and email to purchase various artworks by Harold Garde. *Id.* ¶ 9.[2] Plaintiff had had a prior business relationship with Loving's "boyfriend," Dave Hinkleman. *Id.* ¶ 32. At all relevant times, as is clear from all the principals' affidavits and averments, Loving knew Plaintiff resided in Colorado.

Loving sold her works through her proprietary gallery(ies) Artsuite NY and Artport, LLC, in addition to acting as an agent for Garde and his entity, Studio 41, LLC, at all times representing she had the authority to do so. *Id.* ¶¶ 11-16.[3] In furtherance of her solicitation, Loving emailed to Plaintiff presentations of various works of art that she proposed to sell to Plaintiff. *Id.* ¶¶ 17-18. In June 2016, Loving traveled to Colorado and, during that trip, met with Plaintiff regarding the art purchases. *Id.* ¶¶ 19-20; Loving Aff. ¶ 17. During this in-person meeting at a hotel in Boulder, Colorado, Plaintiff reviewed the proposed works of art and negotiated the terms of the transaction, "including price, quantity, description, delivery protocol," and other elements, while Loving made certain promises concerning the mechanics of completing the transaction. *Id.* ¶¶ 20-22.[4]

After the Colorado meeting, Loving sent multiple emails to Plaintiff in which she stated, among other things, that Garde was insisting on a quick purchase, Plaintiff was exempt from sales

---

facts). *See Wenz v. Memery Crystal,* 55 F.3d 1503, 1505 (10th Cir.1995)." *Shrader v. Biddinger*, 633 F.3d 1235, 1248 (10th Cir. 2011).

[2] Plaintiff met Loving at a social engagement in New York in 2015 (including a brief visit to her gallery); he met Garde during that same engagement. This "chance" meeting did not involve any discussion of the purchase of artworks. Charnoff Aff. ¶¶5-14.

[3] As Loving phrases it, Garde's website states that he is represented by Art Port, LLC and lists Loving's contact information for sales and availability of artwork. Loving Aff. ¶ 10. Further, Loving and Art Port, LLC were contractually authorized by Studio 41 and Garde to sell Garde's art. Studio 41 Aff. ¶ 12.

[4] The Loving Affidavit also states that she discussed the art with Plaintiff during personal trips to Colorado in October 2016 and October 2017. Loving Aff. ¶ 17.

tax, and the shipping would be free. *Id.* ¶¶ 23-24. Plaintiff relied on Loving's representations in wiring $45,120.00 from a Colorado bank to Loving. *Id.* ¶ 25. During these communications, Loving represented she was an officer of Artport, LLC, a director of Artsuite NY, and had authority to act on behalf of Garde and Studio 41, LLC. *Id.* ¶¶ 11-14, 16, 26.

Communications between Plaintiff and Loving continued between June and August 2016, including discussions of the artworks and the mechanics of their purchase and delivery. *Id.* ¶¶ 27-28. Thereafter, Plaintiff traveled to Connecticut to have an unrelated business discussion with Hinkleman and observed artworks (in a damaged condition) he had allegedly purchased hanging on the walls of Hinkleman's and Loving's joint residence, i*d.* ¶¶ 32-34, whereupon Loving promised him a credit and to either store properly, or ship to Plaintiff, all purchased art. *Id.* ¶¶ 37-38.

Over the next several months, Plaintiff and Loving continued to communicate about additional works for purchase. *Id.* ¶¶ 41-43. Loving made various representations concerning these works, including their condition, their proper storage, and their proper handling, most of which Plaintiff contends were misrepresentations; Loving also placed for sale to others artwork that Plaintiff contends he purchased. *Id.* ¶¶ 41-45. Ultimately, after numerous additional solicitations by Loving and discussions between Loving and Plaintiff via email and telephone, Plaintiff made a second purchase in the amount of $141,000.00. *Id.* ¶¶ 48-55. The contract memorializing this purchase was executed between Art Port, LLC, Studio 41, LLC and Plaintiff. Sales Agreement, ECF 15-13.

Plaintiff avers numerous other representations made and actions taken by Loving that support his claims for relief. As relevant here, Plaintiff alleges that Loving at all times represented she was in communication with Garde and his family concerning matters relating to Plaintiff's

4

purchase of his art, and that she was acting on behalf of Garde and the entity Defendants, including Studio 41, LLC. *Id. passim.*

## II. Legal Standards

"Jurisdiction to resolve cases on the merits requires ... authority over the parties (personal jurisdiction), so that the court's decision will bind them." *Gadlin v. Sybron Int'l Corp.*, 222 F.3d 797, 799 (10th Cir. 2000) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999)). "[W]hen the court's jurisdiction is contested, the plaintiff has the burden of proving jurisdiction exists." *Wenz v. Memery Crystal,* 55 F.3d 1503, 1505 (10th Cir. 1995). When "personal jurisdiction is assessed in an evidentiary hearing . . , the plaintiff generally must establish, by a preponderance of the evidence, that personal jurisdiction exists." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.,* 514 F.3d 1063, 1070 n.4 (10th Cir. 2008) (citation omitted). "[B]ut where, as here, the issue is raised early on in litigation, based on pleadings (with attachments) and affidavits, that burden can be met by a prima facie showing." *Shrader*, 633 F.3d at 1239.

## III. Analysis

### A. Specific Jurisdiction over Loving

"The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Walden v. Fiore*, 571 U.S. 277, 134 (2014). The law of the forum state and constitutional due process limitations govern personal jurisdiction in federal court. *Intercon, Inc. v. Bell Atl. Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000); *see* Fed. R. Civ. P. 4(k)(1)(A). Colorado's long-arm statute, Colo. Rev. Stat. § 13–1–124, extends jurisdiction to the Constitution's full extent. *Benton v. Cameco Corp.*, 375 F.3d 1070, 1075 (10th Cir. 2004); *Mr. Steak, Inc. v. District Court*, 194 Colo. 519, 574 P.2d 95,

5

96 (1978) (en banc). Thus, the personal jurisdiction analysis here is a single due process inquiry. *See Benton*, 375 F.3d at 1075.

When evaluating personal jurisdiction under the due process clause, the Tenth Circuit conducts a two-step analysis. At the first step, the court examines "whether the non-resident defendant has 'minimum contacts' with the forum state such 'that he should reasonably anticipate being haled into court there.'" *TH Agric. & Nutrition, LLC v. Ace European Grp., Ltd.,* 488 F.3d 1282, 1287 (10th Cir. 2007) (citations omitted). If the defendant has sufficient contacts, the court then asks whether "exercise of jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice,'" that is, whether the exercise of jurisdiction is "reasonable" under the circumstances of a given case. *Id.* (citations omitted). "This analysis is fact specific." *ClearOne Commc'ns, Inc. v. Bowers*, 643 F.3d 735, 763 (10th Cir. 2011) (quoting *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1159 (10th Cir. 2010)).

    1. *Minimum Contacts*

The "minimum contacts" test may be met pursuant to either of two ways – general jurisdiction or specific jurisdiction. Plaintiff in this case has asserted the Court's specific personal jurisdiction over the Defendants. The Supreme Court has articulated the criteria for establishing specific jurisdiction as follows: "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'" *Walden*, 571 U.S. at 283-84 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)). The "defendant's suit-related conduct must create a substantial connection with the forum state," and "the relationship must arise out of contacts that the defendant *himself* creates with the forum State"... with the "minimum contacts analysis look[ing] to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* at 284

(citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) and *Int'l Shoe Co. v. State of Wa.*, 326 U.S. 310, 319 (1945)). The "plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connections with the forum State" to support the basis for specific jurisdiction. *Id.* at 285 (citing *Burger King*, 471 U.S. at 478).

Accordingly, even in the absence of "continuous and systematic" contacts, a state's courts may exercise specific jurisdiction over a defendant who "purposefully directed" activities at the state's residents if the cause of action arises out of those activities. *Burger King Corp.*, 471 U.S. at 472-73. Thus, "[u]nder the specific-jurisdiction requirement, a plaintiff satisfies the minimum-contacts standard by showing that (1) the defendant has purposefully availed itself of the privilege of conducting activities or consummating a transaction in the forum state, and (2) the litigation results from the alleged injuries that arise out of or relate to those activities." *Bartile Roofs, Inc.*, 618 F.3d at 1160; *see also Benton* 375 F.3d at 1076 ("A defendant's contacts are sufficient if the defendant purposefully directed its activities at residents of the forum, and the plaintiff's claim arises out of or results from actions by the defendant himself that create a substantial connection with the forum state.") (internal quotation marks and citation omitted).

          a. Did Defendant Loving Purposefully Direct Activities at a Colorado Resident?

To establish purposeful direction, a plaintiff must demonstrate more than mere foreseeability of causing injury in another state. *Old Republic Ins. Co. v. Continental Motors, Inc.*, 877 F.3d 895, 905 (10th Cir. 2017) (citing *Burger King*, 471 U.S. at 474). The plaintiff's demonstration will succeed "where the defendant deliberately has engaged in significant activities within a State, ... he manifestly has availed himself of the privilege of conducting business there." *Id.* Supreme Court Associate Justice Neil Gorsuch, in an opinion reviewing an order by this Court,

stated: "In this arena, the Supreme Court has instructed that the 'minimum contacts' standard requires, first, that the out-of-state defendant must have 'purposefully directed' its activities at residents of the forum state, and second, that the plaintiff's injuries must 'arise out of' defendant's forum-related activities. *Dudnikov*, 514 F.3d at 1071. It is clear that Defendant Loving's conduct has met this requirement in light of the well-pleaded allegations of the Complaint by her direct, face-to-face negotiations with Plaintiff while she was physically present in Colorado.

In further support of specific jurisdiction, the Tenth Circuit has equated emails to "phone calls, faxes, and letters made or sent by out-of-state defendants to forum residents." *Shrader,* 633 F.3d at 1247. Moreover, the court noted that these methods of transmission have been found sufficient to support specific personal jurisdiction when they directly give rise to the cause of action. *Id.* This is especially true when the sender of the email knew that the recipient was in the forum state. *Id.* at 1247-48. According to Plaintiff, Loving sent numerous emails concerning the very transaction at issue in this case, all while knowing Plaintiff resided in Colorado.

In this case, Plaintiff has demonstrated sufficient purposeful activity directed at Colorado to justify personal jurisdiction over Loving. This includes the solicitation of Plaintiff's business, the negotiation of a contract by phone, email and an in-person meeting in Colorado, the receipt of $186,000.00 from Plaintiff, and the alleged misrepresentations that go to the heart of the claims here. These activities are sufficient to meet the first prong necessary to establish specific personal jurisdiction over Loving.

b.  Did Plaintiff's Injuries Arise out of Loving's Forum-Related Activities?

The assertion of specific jurisdiction also requires that a plaintiff prove its injuries "ar[o]se out of' [the] defendant's forum-related activities." *Anzures v. Flagship Rest. Grp.*, 819 F.3d 1277, 1280 (10th Cir. 2016) (quoting *Dudnikov*, 514 F.3d at 1071); *see also Bartile Roofs, Inc.*, 618 F.3d

at 1160 (a plaintiff must show "the litigation results from the alleged injuries that arise out of or relate to those activities."). Courts have interpreted this language to require "some sort of" causal connection between a defendant's contacts and the plaintiff's claims. *Dudnikov* 514 F.3d at 1078. According to the Tenth Circuit, "[s]pecific jurisdiction is premised on something of a *quid pro quo:* in exchange for 'benefitting' from some purposive conduct directed at the forum state, a party is deemed to consent to the exercise of jurisdiction for claims related to those contacts." *Id.* In *Dudnikov*, rather than identify a specific causation test by which to determine the second prong, the court determined that the plaintiff sufficiently met both the but-for and the proximate causation tests to support a determination that the plaintiffs' cause of action arose from the defendants' contact(s) with Colorado. *Id.* at 1079.

There is no question that Plaintiff has met this prong of the personal jurisdiction test, as described in the preceding paragraphs. Therefore, this Court recommends that Judge Babcock find Plaintiff has shown Defendant Loving's minimum contacts with Colorado by demonstrating her purposefully directed activities at a Colorado resident, and that Plaintiff's causes of action arise out of those activities.

2. *Traditional Notions of Fair Play and Substantial Justice*

In addition to examining a defendant's minimum contacts with Colorado, the Court must analyze whether the exercise of personal jurisdiction offends "traditional notions of fair play and substantial justice" in this case. *ClearOne Commc'ns, Inc.*, 643 F.3d at 764. This inquiry requires a determination of whether personal jurisdiction over a defendant with minimum contacts is reasonable in light of the circumstances surrounding the case. *Id.* In assessing reasonableness, a court considers: (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate

judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Id.*

A defendant "bears the burden of presenting a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Bartile Roofs,* 618 F.3d at 1161 (internal quotation marks and brackets omitted). Regarding the first factor, while it is not dispositive, "the burden on the defendant of litigating the case in a foreign forum is of primary concern in determining the reasonableness of personal jurisdiction." *Id.* at 1096.

In both the motion and reply, Defendants argue only that it would be a "burden" on them to litigate in Colorado, particularly on the principal of Studio 41 who is elderly, and that Plaintiff is more easily able to litigate this matter in New York. To the extent the Defendants claim this lawsuit was filed in Colorado with the sole purpose of placing them at a disadvantage, they have provided no evidence to support this contention. In fact, Defendants were ably represented by qualified counsel at the October 28, 2019 hearing before this Court. Moreover, there is no dispute (at this stage) that the alleged injuries occurred in Colorado where the Plaintiff resides and seeks relief. The remaining factors do not persuade the Court to either position. Thus, the Court's consideration of the reasonableness factors demonstrates the Defendants have failed to present a compelling argument that requiring them to defend this case in Colorado would render jurisdiction unreasonable.

This Court recommends that Judge Babcock find the Plaintiff has made a prima facie showing that the Court should exercise specific personal jurisdiction over Loving in this case.

B. <u>Specific Jurisdiction over the Entity Defendants</u>

Because Defendant Loving is the sole member of Art Port, LLC, and because that is an entity through which Loving engaged in the sale of art to Plaintiff, Art Port, LLC is amenable to

jurisdiction in Colorado to the same extent as Loving. Indeed, Loving alleges that Plaintiff's interest in Garde's artwork was first piqued during a visit to the Art Port gallery in October 2015. Loving Aff. ¶ 17, 19.

Specific jurisdiction over Garde's entity, Studio 41, is a slightly different matter. The allegations in this case establish, for purposes of this Motion, that Loving was the sole sales agent for Studio 41. Studio 41 was identified as one of the contracting parties on the second purchase of Garde's art, although that contract does not identify Studio 41 as an actual signatory or as the "seller" (only Art Port, LLC is defined as the seller). In any event, given that Plaintiff's burden is to make a prima facie showing of personal jurisdiction, I believe that standard has been met by evidence that Loving certainly had at least apparent authority as an agent of Studio 41. "To establish this agency theory of personal jurisdiction under Colorado's long-arm statute, the jurisdictional facts must connect the actions of the agent to the principal by either 'the transaction of any business' or 'the commission of a tortious act' within the state." *Goettman v. N. Fork Valley Rest*, 176 P.3d 60, 67 (Colo. 2007) (en banc). "[A] plaintiff need only make a prima facie showing of the connection between the actions of the agent and the principal to defeat a motion to dismiss for lack of personal jurisdiction." *Id.* at 68. The documentary evidence here, particularly the contract itself, meets the Colorado Supreme Court's standard for showing that Loving was an agent for purposes of entering into contracts for Studio 41. Garde's artworks for sale were displayed in Loving's gallery, Art Port, and even in Loving's home. Loving Aff. ¶ 25. Moreover, Garde himself, accompanied by Loving, met with Plaintiff after Plaintiff expressed interest in purchasing Garde's works. *Id.* ¶¶ 19, 21. Finally, the record contains no implication whatsoever that Garde or Studio 41 either (1) limited the geographical target for his works or art or (2) lacked knowledge that Loving was free to sell Garde's works anywhere in the world.

11

This evidence, as with the analysis for Defendant Loving, establishes the basis for personal jurisdiction and that the exercise of such jurisdiction does not offend "traditional notions of fair play and substantial justice" in this case.  Therefore, this Court recommends that Judge Babcock find the Plaintiff has made a prima facie showing that the Court should exercise specific personal jurisdiction over the entity Defendants in this case.

## IV. Conclusion

Plaintiff has proffered sufficient evidence to demonstrate this Court has specific personal jurisdiction over the Defendants, who purposefully directed sales efforts at a Colorado resident, including during face-to-face visits in Colorado, and the Plaintiff's claims arise out of those sales. For this reason, the Court respectfully recommends that the District Court **deny** Defendants' Motion to Dismiss for Lack of Personal Jurisdiction [ECF 11].[5]

Dated at Denver, Colorado this 6th day of November, 2019.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge

---

[5] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  Fed. R. Civ. P. 72.  The party filing objections must specifically identify those findings or recommendations to which the objections are being made.  The District Court need not consider frivolous, conclusive or general objections.  A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1).  Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual and legal findings of the Magistrate Judge that are accepted or adopted by the District Court.  *Duffield v. Jackson*, 545 F.3d 1234, 1237 (10th Cir. 2008) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)).