IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-02381-LTB-MEH

Walter Charnoff,

      Plaintiff,

v.

Nancy Loving d/b/a Artsuite NY, Art Port,
LLC, Studio 41, LLC, David Hinkelman,
Martin St. Pierre, Alicia St. Pierre, and
ISP Holdings, Inc.,

      Defendants.

---

## MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND FAILURE TO STATE A CLAIM

---

Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6), Defendants Martin St. Pierre ("Martin"), Alicia St. Pierre ("Alicia"), and ISP Holdings, Inc. ("ISP," and collectively, the "Movants"), through counsel, move to dismiss the claims against them:

## I.     INTRODUCTION

Plaintiff Walter Charnoff ("Charnoff") purchased $186,000 worth of abstract art from Defendant Art Port, LLC ("Art Port") in 2016 and 2017. Unhappy with his purchase, Charnoff has sued everyone he can find regardless of whether they had anything to do with his purchase. As shown below, however, Charnoff's claims against the Movants should be dismissed because Charnoff cannot make a prima facie case of personal jurisdiction over the Movants. Charnoff's unjust enrichment should also be dismissed for failure to state a claim.

Charnoff admits the Movants are New Jersey residents that lack minimum contacts with Colorado. The Movants never communicated with Charnoff about his art purchase and they never traveled to Colorado. The Movants did even not learn about Charnoff's purchase until he filed this lawsuit. To overcome this problem, Charnoff asserts agency jurisdiction, but his agency allegations are conclusory and inadequate. Charnoff has not alleged facts from which the Court can infer that an agency relationship existed between any of the Movants, on the one hand, and any of the remaining Defendants, on the other hand. It would thus violate due process to force the Movants to defend Charnoff's claims in Colorado.

Regarding his failure to state a claim, Charnoff asserts the Movants, as investors in Art Port, were unjustly enriched because they received a financial benefit from Charnoff's purchase. But Charnoff's unjust enrichment claim ignores the concept of corporate separateness and Charnoff has not alleged any facts to pierce Art Port's LLC veil to hold Movants directly liable for Art Port's business dealings. Charnoff also has not alleged facts to pierce ISP's corporate veil to reach Martin and Alicia personally. Charnoff has, therefore, failed to state a claim for unjust enrich and this claim should be dismissed.

## II.   **FACTUAL BACKGROUND**[1]

### A.   THE PARTIES

Charnoff is a Colorado resident. (Doc. # 64 ¶ 1.) Nancy is a New York resident who operates an art gallery in New York known as Artsuite. (Doc. # 64 ¶ 2.) Artsuite acted

---

[1] The following background is based on allegations in Charnoff's Second Amended Complaint, except where noted otherwise.

as an agent of Studio 41, LLC ("Studio 41"), which is a Delaware entity used by painter Harold Garde ("Garde") to transact business. (Doc. # 64 ¶¶ 3&5.) Art Port is an LLC organized under New York law with a principal address in New York. (Doc. # 64 ¶ 4.) Alicia and Martin are New Jersey residents. (Doc. # 64 ¶¶ 6&7.) ISP is a corporation organized under New Jersey law with its sole office in New Jersey. (Doc. # 64 ¶ 8.) Martin and Alicia own ISP. (Doc. # 64 ¶ 8.) Defendant David Hinkelman ("David") is a New York resident. (Doc. # 64 ¶ 9.) David is Nancy's life partner and a one-time owner of Art Port. (Doc. # 64 ¶ 9.)

## B.    THE ISP INVESTMENT

ISP made an investment in Art Port in the form of a loan. The loan is documented by a Limited Membership Investment Agreement. (*See generally* Limited Membership Investment Agreement (the "Investment Agreement"), attached as **Exhibit 1** to Aff. of Martin St. Pierre.) Under the Agreement, ISP would obtain a membership interest in Art Port once Art Port had repaid ISP's loan. (Investment Agreement ¶ 1.C). The loan has not been repaid. (Doc. # 21-3, Hinkelman Declaration ¶ 4.)

Neither Martin nor Alicia were ever employed by Art Port and the Movants were never members or managers of Art Port. (**Exhibit A**, Aff. of Martin St. Pierre ¶¶ 16-18, 20; **Exhibit B**, Aff. of Alicia St. Pierre ¶¶ 12-14.) The Limited Membership Investment Agreement also makes it clear that none of the Movants had managerial or corporate control over the actions of Nancy or Art Port, except for material expenditures by Art Port in excess of $50,000. (Investment Agreement ¶ 2.) The Agreement states that ISP:

> shall not be involved in the day to day operations of Art Port, nor shall there
> be a requirement for Art Port and its Managers/Officers to apprise [ISP] of

3

day to day nor overall operations. [ISP] acknowledges that Art Port will run autonomously from [ISP] and without accountability to [ISP] other than as set forth herein.

(Investment Agreement ¶ 1.B.)

## C.   PLAINTIFF PURCHASES ART IN TWO INSTALLMENTS

In 2016, Nancy began soliciting Charnoff to purchase paintings by Garde. (Doc. # 64 ¶ 13.) When communicating with Charnoff, Nancy used the Artsuite, Art Port, and Studio 41 names. (Doc. # 64 ¶¶ 15, 16, & 18.) Nancy exchanged emails with Charnoff and traveled to Colorado in June 2016 to meet with Charnoff. (Doc. # 64 ¶¶ 23-25.) During this meeting, Nancy and Charnoff agreed on terms for the first purchase of certain pieces. (Doc. # 64 ¶ 26.) David also communicated with Charnoff regarding Garde's work and other matters related to Charnoff's purchase. (Doc. # 64 ¶¶ 30-33.) Charnoff wired the purchase price for his first purchase in August 2016. (Doc. # 64 ¶ 35.) The Movants were **not** involved in any of these meetings or communications and the Movants had no role in the sale or shipping discussions. (**Ex. A**, Aff. of Martin St. Pierre ¶¶ 22-24; **Ex. B**, Aff. of Alicia St. Pierre ¶¶ 17-19, 21-24.)

At some point in 2017, Charnoff traveled to David's home. (Doc. # 64 ¶ 40.) While there, Charnoff noticed damage to one of the pieces he had purchased, a painting known as "Two Vessels." (Doc. # 64 ¶¶ 43-46.) Charnoff nevertheless remained interested in, and ultimately purchased, additional Garde works from Art Port, including a journal and other paintings. (Doc. # 64 ¶ 53.) Nancy and David exchanged email, telephone calls, and text messages with Charnoff regarding Charnoff's second purchase. Once again, the Movants did **not** participate in any of these communications with Charnoff and the

Movants had no role in negotiating the sale or shipment. (**Ex. A**, Aff. of Martin St. Pierre ¶ 22-24; **Ex. B**, Aff. of Alicia St. Pierre ¶¶ 17-19, 21-24.)

## D.    BUYER'S REMORSE LEADS TO LITIGATION

Charnoff continued to communicate with Nancy about the art and Charnoff eventually asked Nancy to ship the art to him in Colorado. (Doc. # 64 ¶ 68.) Nancy did not ship the art, but instead said the art had increased in value and she suggested that Charnoff resell the art for a profit. (Doc. # 64 ¶ 74.) Charnoff alleges that Nancy told Charnoff that Alicia had told Nancy not to ship the art (Doc. # 64 ¶ 82), but Alicia had no communications with Nancy and Alicia disputes this allegation. (**Ex. B**, Aff. of Alicia St. Pierre ¶¶ 17, 21.) In fact, the first time Alicia or Martin learned about the sale of art to Charnoff was when Charnoff filed this lawsuit. (**Ex. A,** Aff. of Martin St. Pierre ¶ 30; **Ex. B**, Aff. of Alicia St. Pierre ¶ 21.)

Charnoff's relationship with Nancy deteriorated to the point where he filed suit against Nancy and Artsuite in Colorado state court in 2019. Charnoff's lawsuit has grown since then and he now asserts eleven claims for relief against eight defendants, including three claims against the Movants. As shown below, however, the claims against the Movants should be dismissed.

## III.    <u>ARGUMENT</u>

## A.    PLAINTIFF CANNOT ESTABLISH PERSONAL JURISDICTION OVER THE MOVANTS

### 1.    <u>LEGAL STANDARD UNDER FED. R. CIV. P. 12(b)(2)</u>

A plaintiff must establish personal jurisdiction over each defendant. *Soma Medical Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir. 1999). To survive a

motion to dismiss, a plaintiff must present allegations, affidavits or other written materials with facts that, if true, demonstrate a prima facie case of jurisdiction over all defendants. *See OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998). A defendant can defeat a plaintiff's prima facie showing by presenting "a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'" *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

   2.   <u>PLAINTIFF CANNOT ESTABLISH AGENCY JURISDICTION OVER THE MOVANTS</u>

   In a diversity case, a plaintiff must show (1) jurisdiction is permissible under the forum state's law and (2) the exercise of jurisdiction comports with due process. *SGI Air Holdings II LLC v. Novartis Int'l, AG*, 192 F. Supp. 2d 1195, 1198 (D. Colo. 2002). Colorado's long-arm statute extends personal jurisdiction to the fullest extent of due process under *International Shoe Co. v. Washington*, 326 U.S. 310 (1945). *See* C.R.S. 13-1-124. Thus, in Colorado, "the Court's analysis collapses into a single inquiry as to whether the exercise of personal jurisdiction over [the defendants] comports with due process." *SGI*, 192 F. Supp. 2d at 1198. In a typical case, to satisfy due process, a plaintiff must show each defendant had "certain minimum contacts" with Colorado "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *See International Shoe*, 326 U.S. at 316 (quotations omitted)).

   In this case, however, Charnoff does not rely on the Movants' contacts with Colorado because there are no contacts. Rather, Charnoff asserts that the Court has personal jurisdiction over the Movants based on agency law. (Doc. # 64 ¶¶ 10-11.) As the Court previously recognized, an agency theory of personal jurisdiction is allowed in limited

circumstances. *See* Doc. # 44, p. 11 (citing *Goettman v. North Fork Valley Restaurant*, 176 P.3d 60, 67 (Colo. 2007)). Under agency jurisdiction, the court imputes the forum contacts of an agent to the principal to exercise jurisdiction over the principal. *Id.*

To sustain agency jurisdiction, the plaintiff must make a prima facie showing of an agency relationship. *SGI Air*, 192 F. Supp. 2d at 1200. Failure to do so results in dismissal. *First Horizon Merchant Servs., Inc. v. Wellspring Capital Mgmt., LLC*, 166 P.3d 166, 178-79 (Colo. App. 2007). To establish an agency relationship, the plaintiff must plead facts showing "the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." *Filho v. Rodriguez,* 36 P.3d 199, 200 (Colo.App.2001) (quoting *City & County of Denver v. Fey Concert Co.,* 960 P.2d 657, 660 (Colo. 1998)). "Such a relationship cannot be presumed but must be clearly demonstrated." *Shepherd v. United States Olympic Committee,* 94 F. Supp. 2d 1136, 1142 (D. Colo. 2000) (citations omitted); *see also Drywave Techs. USA, Inc. v. Massage Int'l, Ltd.*, 2017 WL 3086623, *4 (D. Colo. March 27, 2017) (granting motion to dismiss when plaintiff failed to adequately allege existence of agency relationship); *Scott v. Honeywell Int'l Inc.*, 2016 WL 1077264, *3 (D. Colo. Mar. 18, 2016) (same). ***A conclusory allegation of agency is not enough to create minimum contacts or personal jurisdiction.*** *See Fairbrother v. American Monument Foundation, LLC*, 340 F. Supp. 2d 1147, 1154-55 (D. Colo. 2004); *First Horizon*, 166 P.3d at 178-79.

In this case, Charnoff has not alleged facts to demonstrate a prima facie agency relationship between the Movants and the other Defendants. Thus, Charnoff cannot obtain personal jurisdiction over the Movants under Colorado law.

First, regarding Martin, Charnoff alleges that Martin owns ISP, but Charnoff has not put forth any facts showing an agency relationship existed between Martin, on the one hand, and Art Port, Artsuite, Nancy, or David, on the other hand. There is no contract between Martin and Art Port, Artsuite, Nancy, or David relating to art or Charnoff. Charnoff also has not alleged that Martin exercised any management or control over Art Port, Artsuite, Nancy, or David. Martin first learned of the sale to Charnoff when Charnoff filed suit and Martin's sole connection to the events in this case is as an owner of a separate corporate entity, ISP, that loaned money to Art Port. Martin could not reasonably foresee how his ownership of a New Jersey corporation that made a passive investment in a New York LLC would result in him being compelled to litigate in Colorado.

Second, Charnoff's allegations against Alicia are also deficient. There is no contract between Alicia and Art Port, Artsuite, Nancy, or David to create an agency. Nancy also never identified herself as Alicia's agent nor gave any other indication that Nancy or Art Port was acting as Alicia's agent. While Alicia may have communicated with Nancy about operation of the gallery in New York, Alicia had no authority of Nancy vis-à-vis Charnoff's purchase. The limited (and disputed) communications alleged in Charnoff's Complaint do not rise to the level of plausibility necessary create a prima facie agency relationship. Like her husband, Alicia first learned about the sale to Charnoff when Charnoff filed this lawsuit in 2019. It would violate due process to compel Alicia to litigate claims in Colorado.

Third, there is no plausible agency relationship between ISP and Art Port, Artsuite, Nancy, or David. ISP made a loan to Art Port, but a loan does not create an agency

relationship between lender and creditor. *See Graney Development Corp. v. Taksen*, 400 N.Y.S.2d 717, 720 (N.Y. Sup. Ct. 1978).[2] Charnoff also does not allege any facts from which the Court can infer that ISP controlled Art Port's actions vis-à-vis the sale or delivery of the artworks in question. In fact, the Limited Membership Investment Agreement states that ISP does ***not*** have the authority to control Art Port's day to day operations. ISP should therefore be dismissed because agency jurisdiction is lacking.

*First Horizon* is instructive here. In that case, the plaintiff sued various officers, directors, and owners of a corporation for fraud and other claims. 166 P.3d at 178. The plaintiff argued jurisdiction was proper under agency, alter ego, and conspiracy theories. *Id.* The plaintiff relied in particular on allegations that the defendants had "disregarded" corporate separateness and that the defendants had directly or indirectly controlled entities with contacts to Colorado. *Id.* The Colorado Court of Appeals dismissed the relevant defendants from the case for lack of jurisdiction because the plaintiff's agency allegations were conclusory and contradicted by affidavits from those defendants. *Id.*

The situation in *First Merchant* is akin to this case. Here, as in *First Merchant*, Charnoff makes only conclusory allegations about agency, and he fails to allege any facts to show an agency relationship existed between the Movants and the other defendants. Thus, the result here should be the same as *First Merchant*, dismissal.

*Fairbrother* is also persuasive. In that case, the plaintiff sought specific jurisdiction over a parent corporation based on an agency theory. *See* 340 F. Supp. 2d at 1153-54.

---

[2] Since Art Port is organized under New York law and since the Limited Membership Investment Agreement calls for New York law to apply, the issue of agency is governed by New York law.

The plaintiff in that case, like Charnoff here, made only a conclusory allegation that the non-resident parent company had acted in agency with the other defendants to injure the plaintiff in Colorado. *Id.* Magistrate Judge Boland dismissed the parent company because the plaintiff's conclusory allegation was insufficient to create agency jurisdiction. *Id.*

Charnoff will likely assert that agency jurisdiction is proper over the Movants because the Court previously found agency jurisdiction over Studio 41. But the allegations against the Movants are distinct from the allegations against Studio 41. Most notably, Nancy made express, written representations to Charnoff on multiple occasions that Nancy, Artsuite, and/or Art Port were Studio 41's agent. (Doc. # 64 ¶¶ 5, 15-16.) These specific factual assertions plausibly show agency between Nancy, Artsuite, and/or Art Port and Studio 41. Thus, the email statements provide a basis for agency jurisdiction over Studio 41. But Charnoff cannot make similar allegations of authority regarding the Movants and he cannot rest his case on the unsupported, conclusory allegations of "control" by the Movants over the "remaining Defendants . . . ." (Doc. # 64 ¶ 10.) There is no agency jurisdiction here and the Movants should be dismissed.

**B.  PLAINTIFF FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED[3]**

1.  <u>LEGAL STANDARD UNDER FED. R. CIV. P. 12(b)(6)</u>

Under Fed. R. Civ. P. 12(b)(6), dismissal is appropriate if a plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When deciding whether

---

[3] Movants seek dismissal under Fed. R. Civ. P. 12(b)(6) in the alternative to Fed. R. Civ. P. 12(b)(6) and nothing in this section of the motion should be construed as waiving the Movants' objection to personal jurisdiction.

to dismiss, courts should not "weigh potential evidence that the parties might present at trial but . . . assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003). At this stage, courts should accept well-pleaded allegations as true, but courts need not accept conclusory allegations as true. *Moffett v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1232 (10th Cir. 2002). Rather, to survive a motion under Fed. R. Civ. P. 12(b)(6), "a complaint must include 'enough facts to state a claim to relief that is plausible on its face.'" *TON Servs., Inc. v. Qwest Corp.*, 493 F.3d 1225, 1236 (10th Cir.2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 571-72 (2007)).

## 2.   PLAINTIFF CANNOT STATE A CLAIM AGAINST THE MOVANTS FOR UNJUST ENRICHMENT

In claim two for unjust enrichment, Charnoff asserts the Movants "received a benefit in the form of a substantial portion of Charnoff's $186,000 in purchase funds . . . ." (Doc. # 64 ¶ 81.) Yet, Charnoff asserts that Art Port, not the Movants, sold the art. Thus, to hold the Movants liable for Art Port's actions, Charnoff must pierce the Art Port LLC veil. He cannot do so here, and this claim should be dismissed.

### a.   Art Port's LLC Veil Shields Movants' from Art Port's Corporate Liabilities

The law of the state of incorporation determines whether a corporate veil should be pierced. *See Cascade Energy & Metals Corp. v. Banks*, 896 F.2d 1557, 1575 n. 18 (10th Cir. 1990) (citing and quoting 17 Fletcher Cyc. Corp. § 8326 at 120 (1987) ("[T]he liability of a stockholder for corporate debts and the extent and character of that liability are to be determined by the law of the state under the laws of which the corporation was

created...."). Thus, New York law applies because Art Port is organized under New York law. *Id.* To pierce an LLC veil under New York law, a claimant must show (1) "the owner exercised complete domination over the corporation with respect to the transaction at issue" and (2) "that such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil." *Mike Bldg. & Contracting, Inv. v. Just Home, LLC*, 27 Misc. 3d 833, 849-50 (N.Y. Sup. Ct. 2010) (applying test from *Thrift Drug, Inc. v. Universal Prescription Adm'rs*, 131 F.3d 95, 97 (2d Cir. 1997) to LLC veil piercing). An LLC veil can only be pierced to "prevent fraud, illegality, or to achieve equity." *Mike Bldg.*, 27 Misc. 3d at 850 (quoting *Treeline Mineola, LLC v. Berg*, 21 A.D.3d 1028, 1029 (N.Y. App. Div. 2005)). This is true even if the entity is controlled or dominated by a single owner. *Id.*

Courts look at ten factors to determine if an owner exercised complete domination:

(1) the absence of the formalities and paraphernalia that are part and parcel of the corporate existence, *i.e.,* issuance of stock, election of directors, keeping of corporate records and the like, (2) inadequate capitalization, (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes, (4) overlap in ownership, officers, directors, and personnel, (5) common office space, address and telephone numbers of corporate entities, (6) the amount of business discretion displayed by the allegedly dominated corporation, (7) whether the related corporations deal with the dominated corporation at arms length, (8) whether the corporations are treated as independent profit centers, (9) the payment or guarantee of debts of the dominated corporation by other corporations in the group, and (10) whether the corporation in question had property that was used by other of the corporations as if it were its own.

*Wm. Passalacqua Bldrs., Inc. v. Resnick Dev. S., Inc.*, 933 F.2d 131, 139 (2d Cir. 1991).

In this case, Charnoff has not alleged any facts from which the Court could plausibly conclude that the Movants dominated Art Port, e.g., no co-mingling of funds, no lack of corporate formalities, no common office space, no undercapitalization, etc. *See id.*

Moreover, the Limited Membership Investment Agreement proves that ISP did not have any day-to-day control or domination over Art Port's operations.

With regard to the second element of veil piercing, Charnoff has not alleged any facts from which the Court could conclude that the Movants used Art Port to perpetrate a fraud or wrong on Charnoff. *See Morris v. New York State Dep't of Taxation & Fin.*, 623 N.E.2d 1157, 1160-61 (N.Y. App. 1993) ("The party seeking to pierce the corporate veil must establish that the owners, through their domination, abused the privilege of doing business in the corporate form to perpetrate a wrong or injustice against that party such that a court in equity will intervene.") (citations omitted). Charnoff's sole allegation is that ISP made an investment into Art Port, and that because Martin and Alicia owned ISP, the Movants stood to benefit from Charnoff's purchase. There is no allegation that the Movants used the corporate form to hide assets or induce Charnoff to make any of the purchases at issue. Accordingly, Charnoff has presented no facts to justify holding the Movants liable for the liability of Art Port, a distinct LLC. Indeed, Charnoff's theory of unjust enrichment would completely obliterate the corporate veil that protects LLC owners from entity liabilities like the one alleged by Charnoff here.

### b. Charnoff Cannot Pierce the ISP Corporate Veil

In addition to the LLC veil that insulates the Movants from Art Port's liabilities, Martin and Alicia are further insulated by the ISP corporate veil. ISP is a New Jersey corporation and New Jersey law protects shareholders from corporate liabilities. *Casas del Toqui S.A. v. Big C Wines, LLC*, 2016 WL 556645, *2 (D.N.J. Feb. 10, 2016) (granting motion to dismiss for failure to pierce corporate veil). Only in extraordinary cases will a

shareholder be held liable for a corporate liability. *Id.* Charnoff has not alleged facts to demonstrate that this is such an extraordinary case.

To pierce the corporate veil of New Jersey corporation, the plaintiff must show two elements: (1) "such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist" and (2) "the circumstances must indicate that adherence to the fiction of a separate corporate existence would sanction a fraud or promote injustice." *Casas del Toqui S.A. v. Big C Wines, LLC*, 2016 WL 556645, *2 (D.N.J. Feb. 10, 2016) (granting motion to dismiss in case relating to corporate veil). Courts look at six factors when analyzing the first element:

> 1) gross undercapitalization; ... 2) failure to observe corporate formalities, 3) non-payment of dividends; 4) the insolvency of the debtor corporation; siphoning of funds of the corporation by the dominant stockholder; 5) non-functioning of other officers or directors; absence of corporate records; and 6) the fact that the corporation is merely a facade for the operations of the dominant stockholder[s].

*Id.* (quoting *Craig v. Lake Asbestos of Quebec, Ltd.,* 843 F.2d 145, 150 (3d Cir.1988)).

The wrong alleged to have been committed by the corporation must be something more than a simple inability to collect a judgment debt. *Id.* But in this case, Charnoff admits his claims against the Movants are based primarily on his concern that he will be unable to collect a judgment against the other Defendants. (*See* Charnoff's Motion for Leave to File Second Amended Complaint, Doc. # 56, p. 2.) This concern is not a basis to pierce corporate veil and Charnoff has not alleged facts, *e.g.*, undercapitalization, failure to observe corporate formalities, failure to keep corporate records, etc., to support piercing the ISP veil to hold Martin and Alicia personally liable

for ISP's investments. Charnoff's unjust enrichment claim against Martin and Alicia should therefore be dismissed.

### IV.   CONCLUSION

The Movants could never have reasonably expected they would be sued in Colorado by an art collector with buyers' remorse. Indeed, the Constitutional protections set forth in *International Shoe* and its progeny are designed to protect parties from exactly the type of unfair situation that Charnoff has created here.

Because Charnoff cannot establish a prima facie case of agency jurisdiction over the Movants, Charnoff's claims should be dismissed under Fed. R. Civ. P. 12(2). Charnoff also cannot pierce the LLC veil of Art Port or the ISP corporate veil. Thus, pursuant to Fed. R. Civ. P. 12(b)(6), his claim for unjust enrichment should be dismissed.

Dated: March 9, 2020

ANDERSON LAW GROUP

*/s/Thomas H. Wagner*
Thomas H. Wagner, #38135
Anderson Law Group
7385 W. Highway 50
Salida, CO  81201
Telephone: (719) 539-7003
tom@anderson-lg.com
*Counsel for Defendants Martin St. Pierre, Alicia St. Pierre, and ISP Holdings, Inc.*

## **CERTIFICATE OF SERVICE**

I certify that on March 9, 2020, I filed a copy of the foregoing Motion to Dismiss via CM/ECF, which will deliver electronic notice of the filing to the following:

Ian T. Hicks, Reg. No. 39332
The Law Office of Ian T. Hicks LLC
6000 East Evans Avenue, Building 1, Suite 360
Denver, Colorado, 80222
E-mail: ian@ithlaw.com

Counsel for Plaintiff Walter Charnoff

Elizabeth H. Getches
SHOEMAKER GHISELLI + SCHWARTZ LLC
1811 Pearl Street
Boulder, CO 80302
Telephone: (303) 530-3452
Email: lgetches@sgslitigation.com

Counsel for Defendants Nancy Loving
d/b/a Artsuite NY, Art Port, LLC, Studio
41, LLC, David Hinkelman

                                        *s/Thomas H. Wagner*
                                        Thomas H. Wagner