# COMMERCIAL REAL ESTATE LEASE

Landlord:   466 Piermont LLC                    Tenant:   Art Port, LLC
            PO Box 154                                    75 Wall Street PHD3
            Closter New Jersey 07624                      New York, New York 10005
                                                          EIN # ▮▮▮▮▮▮▮▮
                                                              &
                                                          Nancy Loving
                                                          26 Covlee Drive
                                                          Norwalk, CT 06855
                                                          SS# ▮▮▮▮▮▮▮▮
                                                              &
                                                          Alicia St. Pierre
                                                          11 Lambs Lane
                                                          Crestkill, NJ 07626
                                                          SS# ▮▮▮▮▮▮▮▮

Date of Lease:  April 4, 2018

The Landlord leases to the Tenant and the Tenant rents from the Landlord the following Described premises:

> Rental Space: Retail Unit First Floor 466 Piermont Ave. Piermont NY 10968 and adjacent Parking Area. The ground level basement unit is not included.

For a term of Two (2) YEARS totaling twenty-four (24) months with a Three (3) Year Option commencing on May 1, 2018, and ending on April 30, 2020, to be used and occupied only and for no other purpose other than as an art gallery.

For the total rental sum of $ 57.600.00 (Fifty-seven thousand six hundred USD) for the full term of the lease. Payable as follows:

> YEAR ONE (1) of $ 2,300.00 (Two thousand three hundred USD) per month or $ 27,600.00 (twenty seven thousand six hundred USD) per annum due on the first day of each month beginning May 1, 2018.

> Year Two (2) of $ 2,500.00 (Two thousand five hundred USD) per month or  $ 30,000.00 (Thirty thousand USD) per annum due on the first day of each month beginning May 1, 2019.

The first and last month's rent will be paid at lease signing.

Late payments will be addressed pursuant to paragraph 5 of this agreement.

**EXHIBIT 1**

Option:
No later than October 1 ,2019 prior to the lease termination date of April 30, 2020 the Tenant must inform the Landlord in writing via regular, and certified mail that they intend to exercise the lease option and extend the lease for an additional Three (3) years. Should the Tenant fail to comply with this notice requirement the option will automatically expire without written notice by the Landlord.  The rent for each year of the option period shall be agreed upon within 30 days after receipt by the Landlord of the Tenant's decision to exercise the option. If the Landlord and Tenant cannot agree on the new rental rate the lease will expire on April 30, 2020. If the Landlord and Tenant agree on a rental rate all other lease terms will remain the same and the current lease conditions will remain in effect. The Tenant will be required to sign a new lease or a lease extension. This lease or lease extension must be delivered and signed by both parties within 30 days of notification by the Tenant that they intend to exercise the option.

Upon the following Conditions and Covenants:

1. **Possession and Use:** Landlord hereby grants permission to the Tenant for the use and occupancy of the Rental Space during and for the Term. Tenant shall take possession and use the Rental Space for the purpose stated above. Tenant may not use the Rental Space for any other purpose without the written consent of the Landlord. No pets allowed.

   Tenant shall not allow the Rental Space to be used for any unlawful or hazardous purpose. Tenant is satisfied that the Rental Space is zoned for the Use stated. Tenant shall obtain any building permits and necessary certificate of occupancy or other certificate permitting Tenant to use the Rental Space for that Use.

   Tenant shall not use the Rental Space in any manner that results in (a) an increase in the rate of fire and liability insurance or (b) cancellation of any fire and liability insurance policy on the Rental Space. Tenant shall comply with all requirements of the insurance companies insuring the Rental Space.  Tenant shall not abandon the Rental Space during the Term of this Lease or permit it to become vacant for a period of one week.

2. **Delay in Giving Possession:** This paragraph applies if (a) Landlord cannot give possession of the Rental Space to Tenant on the beginning date and (b) the reason for the delay is not Landlord's fault. Landlord shall not be held liable for the delay. Landlord shall then have (30) days in which to give possession. If possession is given within that time, Tenant shall accept possession and pay the Rent from that date. The ending date of the Term shall not change. If possession is not given within that time this Lease may be canceled by either party on notice of the other.

3. **No Assignment or Subletting:** Tenant may not do any of the following without Landlord's written consent: (a) assign this Lease (if Tenant is a corporation, the sale of a majority of its shares shall be treated as an assignment); (b) sublet all or

any part of the Rental Space; or (c) permit any other person or business use the Rental Space.

4. **Rental and Additional Rent:** Tenant shall pay the Rent on the first day of each month to the Landlord at Landlord's address or to the Landlord's property manager. If Tenant fails to comply with any term contained in this Lease after receiving written notice, Landlord may do so on behalf of the Tenant. Landlord may charge customary and reasonable costs to comply, including reasonable attorney's fees, to Tenant as "additional rent". The additional rent shall be due and payable as Rent with the next monthly Rent payment. Non-payment of additional Rent shall give Landlord the same rights against Tenant as if Tenant failed to pay the Rent.

5. **Late Payments and Non-Sufficient Funds.** Tenant shall pay a late charge equal to five (5) percent of the Rent payment as additional rent for each monthly rent payment that is not paid within seven (7) days after the due date for such late payment. If rent continues to be delinquent and is not received by the fifteenth (15th) day an additional ten (10) percent shall be incurred by the Tenant and paid immediately as additional rent. Tenant shall be charged $100.00 for each check that is returned to Landlord for lack of sufficient or uncollected funds.

6. **Security.** Tenant has given Landlord the Security in the amount of three month of the monthly rent. On each anniversary of the lease renewal, the Tenant shall pay not only the new rental amount but shall increase the amount of security so that at all times there is at least three full months of security being held by the Landlord. Should the Tenant fail to make the payment of additional security, the Tenant shall then incur a TEN percent penalty amount, of the monthly rent as additional rent until said security is paid in full.

The Security shall be held by the Landlord during the Term of this Lease. Landlord may deduct from the security any expenses incurred in connection with the Tenant's violation of any agreement in this Lease. If the amount of damage exceeds the Security, Tenant shall pay the additional amount to the Landlord on demand.

If Landlord uses the Security or any part of it during the Term, Tenant shall on demand pay Landlord for the amount used. The amount of the Security is to remain constant throughout the Term increasing on the anniversary as described above. The Security is not to be used by Tenant for the payment of Rent. Landlord shall repay to Tenant any balance remaining within a reasonable time after the termination of this lease. Tenant shall not be entitled to interest on the Security and it shall be held in the Landlords operating account.

If Tenant fails to pay his initial three months Security or fails to make additional payments when the rental payment increases, Landlord may file a complaint in

tenancy for nonpayment of Security .If Landlord's interest in the Rental Space is transferred, Landlord shall turn over the Security to the new Landlord. Landlord shall notify Tenant of the name and address of the new Landlord. Notification must be given within (5) days after the transfer, by registered or certified mail. Upon confirmation of receipt by the new Landlord the current Landlord shall then no longer be responsible to Tenant for the return of the Security in accordance with the terms of this Lease.

7. **Parking.** The adjacent parking area is to be used exclusively by the Tenant for the parking of Tenant's customers/guests motor vehicles and as included in this Lease. The Tenant indemnifies the Landlord for any and all claims associated with the use of the parking lot and will include this area as part of the rental space when obtaining insurance. The Tenant will be allowed to store one vehicle overnight but no long-term parking over seven consecutive days, will be allowed. The gate must be keep locked nightly to avoid any damage. Any vehicle left overnight must not obstruct access to the lot, or building, including access to the back door, fire escape garbage and recycle bins. No snow plowing of the parking area is allowed, the snow must be removed by a snow blower, and or removed manually by hand.

8. **Hours of Operation:**  The agreed upon hours of operation are 9 AM- 9 PM Monday – Sunday. Tenant must comply with all local, state and federal laws and ordinances including but not limited to hours of operation. Landlord is not responsible for any and all restrictions that may be imposed upon the Tenant by the regulating authorities including but not limited to the Village of Piermont.

9. **Furnishings**. This Lease of the Rental Space includes items such as a ductless air conditioning unit and other Landlord's furnishings including but not limited to HVAC units.  These are provided to the Tenant in "As Is" condition and the Landlord makes no written or implied guarantees or warrantees as to their condition. The Landlord is allowing the Tenant to use this equipment without charge or liability to the Landlord. Tenant may not remove any of the supplied equipment or permanently installed equipment during or at the termination of the lease term. The Tenant may only remove their personal items at the end of the Term and the premises shall be in "broom" clean condition having removed all personal property and garbage as the Tenant received the space at the beginning of the Term, reasonable wear and tear expected.

10. **Liability Insurance.** Tenant shall obtain, pay for and keep in effect for the benefit of Landlord and Tenant public liability insurance on the Rental Space, by a reputable insurance company reasonably acceptable to Landlord. Tenant shall maintain liability insurance with a minimum coverage of 2 million dollars ($2,000,000.00 USD ) per incident.  Said insurance shall include coverage for the parking area, exterior area, signage and glass breakage. Said insurance will include a binder naming the LLC, its members, partners. agents, and assignees as additional insured.

All policies shall state that the insurance company cannot cancel or refuse to renew without at least thirty (30) days written notice to the Landlord.

Prior to the Tenant's occupancy Tenant shall deliver the original policy to Landlord with proof of payment of the first year's premiums. Tenant shall deliver a renewal policy to Landlord with proof of payment not less than fifteen (15) days before the expiration date of each policy.

11. **Unavailability of Fire Insurance, Rate Increases**. If due to the Tenant's use of the Rental Space, Landlord cannot obtain and maintain fire insurance on this building in an amount and form reasonably acceptable to Landlord, Landlord may cancel this Lease on thirty (30) days notice to the Tenant. If due to Tenant's use of the Rental Space the fire insurance premium is increased, Tenant shall pay the increase in the premium to Landlord on demand.

12. **Water Damage.**  Landlord shall not be liable for any damage or injury to any persons or property caused by the leak or flow of water from or into any part of the building except due to Landlord's gross negligence or unlawful act.

13. **Liability of Landlord and Tenant.**
Tenant is liable for any loss, injury or damage to any person or property caused by the action or neglect of Tenant or Tenant's employees. The Tenant agrees to and shall save, hold and keep harmless and indemnify the Landlord from and for any and all payments, expenses, costs, reasonable attorney fees and from and for any and all claims and liability for losses or damage to property or injuries to persons occasioned wholly or in part by or resulting in acts or omissions by the Tenant the Tenants agents, employees, guests, licensees, invitees,  subtenants, assignees or successors, or for any cause or reason whatsoever arising out of or by reason of the occupancy of the Tenant and the conduct of the Tenant's business. Landlord shall not be liable for injury or damage to any person or property unless it is due to Landlord's action or neglect

14. **Real Estate/Property Taxes.**  Taxes attributable to the property shall be allocated as follows:  all 2017-2018 base Taxes are included in the base year rental rate. Tenant shall be responsible by any increase or tax escalation above the 2017-2018 base year,
Tenant shall be responsible for sixty (60) percent of the increase in Taxes over the 2017-2018 base year. After the Taxes have been established for each year, the Landlord shall compute the taxes in excess of the base year and shall send a bill for the amount of the increase to the Tenant for payment as additional rent. Tenant shall be responsible to pay the Taxes within fifteen (15) days of Tenants receipt of the Landlord's invoice and if not paid the Landlord shall charge Five (5) percent as additional rent. The term real Real Estate/Property taxes includes but is not limited to all Property and school taxes as assessed by the Village of Piermont, School District and County Property taxes collectors.

15. **Acceptance of Rental Space.** Tenant has inspected the Rental Space and agrees that the Rental Space is in satisfactory condition. Tenant accepts the Rental Space "as is".

16. **Quiet Enjoyment.** Landlord has the right to enter this Leased space and Tenant shall provide the Landlord with a key for emergency use. If Tenant complies with this Lease, Landlord must provide Tenant with undisturbed possession of the Rental Space during the term of the lease and any extended term or renewal.

17. **Utilities and Services.** Tenant shall arrange and pay for all utilities and services required for the Rental Space, including but not limited to heat, water, 2 meters, sewer, landscaping, snow removal for the parking area, walkways, rear entrance, front entrance and porch, refuse/garbage removal, electric (2 meters) and gas. If premises are not separately metered Tenant shall pay as additional rent to be determined but will not be less than twenty five (25) percent of the water and sewer bill for the entire building within fifteen (15) days after notification from the Landlord of the outstanding bill or bills. Landlord is not liable for any inconvenience or harm caused by any stoppage or reduction of utilities and services beyond the control of the Landlord. This does not excuse the Tenant from paying Rent. Tenant is responsible to contract and pay for refuse/garbage removal and recycling by a private local hauler of their choice. Tenant is responsible for all garbage removal and related costs. Tenant is responsible for all landscaping and snow removal.

18. **Repairs, Maintenance and Compliance.** Tenant shall:
    a. Promptly comply with all laws, orders, rules and requirements of governmental authorities, insurance carriers, board of fire underwriters, or similar groups as they pertain to the Tenants use and occupancy
    b. Maintain the Rental Space including all equipment and fixtures therein, in good repair and appearance;
    c. Make all necessary repairs to the Rental Space and all equipment and fixtures therein, except structural repairs;
    d. Maintain the Rental Space in a neat, clean, safe, and sanitary condition, free from all garbage and refuse;
    e. Keep the walks, driveways, parking area, yard, entrances, hallways and stairs free from trash, debris, snow and ice;
    f. Use all electric, plumbing and other facilities in the Rental Space safely;
    g. Use no more electricity than the wiring or feeders to the Rental Space can safely carry;
    h. Promptly replace all broken glass including picture windows in the Rental Space;
    i. Do nothing to destroy, deface, damage or remove any part of the Rental Space;

j. Keep nothing in the Rental Space that is flammable, dangerous or explosive or which might increase the danger of fire or other casualty;
k. Promptly notify in writing Landlord when there are conditions which need repair;
l. Do nothing to destroy the peace and quiet of Landlord, other Tenants or persons in the neighborhood;
m. Avoid littering in the building or on its grounds;
n. Use no hazardous or flammable materials;
o. Make necessary replacements of the plumbing, cooling, heating and electrical systems, except when made necessary by the act or neglect of Landlord or Landlords employees; and
p. Maintain maintenance contracts for all services i.e. HVAC systems.

Tenant shall pay any expenses involved in complying with the above.

**19. Landlord's Repairs and Maintenance**.  Landlord shall:

q. Maintain the roof and exterior walls in good condition
r. Make all structural repairs unless these repairs are made necessary by the act or neglect of the Tenant, Tenant's employees, Tenants guests, invites, agents, contractors, or subcontractors;
s. Maintain the elevators and escalators in the building, if any.

20. **No Alteration.** Tenant may not make any changes or additions to the Rental Space without Landlord's written consent. Any changes or additions made without Landlord's written consent shall be removed by the Tenant on demand.
    Tenant must submit architectural plans for changes and/or renovations, to Landlord for its consent which consent shall not be withheld, conditioned or delayed unreasonably. All work shall be done with proper building permits and subject to municipal building codes. Said alterations shall not interfere with the other Tenants or with Landlord's ability to offer the other rental units to prospective Tenants. All work shall be conducted by a Licensed bonded and insured Contractors with Rockland county permit as required by law.
    All changes or additions made with Landlord's written consent shall become the property of the Landlord when completed and paid for by the Tenant. They shall remain as part of Rental Space at the end of the Term or Landlord may demand that Tenant remove any changes or additions at the end of the Term. Tenant shall promptly pay for all costs of any permitted changes or additions. Tenant shall not allow any mechanic's lien or other claim to be filed against the Building. If any lien or claim is filed against the Building, Tenant agrees to indemnify the Landlord shall have it promptly removed.

21. **Signs.** Tenant shall obtain Landlord's written consent before placing any sign on or about the Rental Space, which consent shall not be unreasonably withheld, conditioned or delayed. Signs must conform to all applicable municipal ordinances and regulations. Signage must conform to Landlord's requirements including but not limited to design, size, color and placement.

22. **Access to Rental Space.** Landlord shall have access to the Rental Space on reasonable notice to Tenant to (a) inspect the Rental Space (b) make necessary repairs, alterations or improvements (c) supply services, and (d) show it to prospective buyers, mortgage lenders, contractors or insurers. Landlord may show the Rental Space to potential renters, at reasonable hours on notice to Tenant within six (6) months before the end of the term. Landlord may enter Rental Space at any time without notice to Tenant in case of emergency. If the Tenant installs an alarm system Landlord must receive access code in case of emergency.

23. **Fire and Other Casualty.**  Tenant shall notify Landlord at once of any fire or other casualty in the Rental Space. Tenant is not required to pay Rent when the Rental Space is unusable. If Tenant uses part of the Rental Space, Tenant must pay Rent pro-rata for the usable part. If the Rental Space is partially damaged by fire or other casualty, Landlord shall repair it as soon as possible. This includes the damage to the Rental Space and fixtures installed by Landlord. Landlord need not repair or replace anything installed by Tenant unless same is damaged by the act or negligence of the Landlord.
    Either party may cancel this Lease if the Rental Space is so damaged by fire or other casualty that it cannot be repaired within ninety (90) days from the date of occurrence. If the parties cannot agree, the opinion of a contractor chosen by Landlord and Tenant will be binding on both parties. This Lease shall end if the Rental Space is totally destroyed. Tenant shall pay Rent to the date of destruction. If the fire or other casualty is caused by the act or neglect of Tenant or Tenant's employees, Tenant shall pay for all repairs and other damage and remains liable for rent regardless of the terms listed above.

24. **Compliance with Laws etc**. The Tenant shall comply with all laws, ordinances, rules, regulations, requirements, and directives of the Federal, State, Local municipal government; or Public authorities and all of their departments, bureaus, subdivisions, applicable to  and affecting the premises, their use and occupancy, for the correction, prevention and abatement of nuisances, violations or grievances in, upon or connected with the said premises, during the term thereof: and shall promptly comply with all orders, regulations, requirements, and directives of the Board of Fire Underwriters, or similar authority and of any insurance companies which have issued or are about to issue policies of insurance covering the property, building and rental space and its contents, for the prevention of fire or other casualty, damage or injury, at the Tenants own cost and expense.

25. **Air, Ground (including Mine/Sink Holes), flooding, and Water Pollution.** Tenant expressly covenants and agrees to indemnify, defend and save Landlord harmless against any claim, damage, liability, costs, penalties, or fines, which Landlord may suffer as a result of air, ground, mine, or water pollution caused by Tenant in its use of the Rental Space. Tenant covenants and agrees to notify Landlord immediately of any claim or notice served upon it with respect to any such claim Tenant is causing air, ground, mine or water pollution; and Tenant in any event, will take immediate steps to halt, remedy or cure any pollution of air, ground or water caused by Tenant by its use of the Rental Space. This covenant shall survive the expiration or earlier termination of this Lease.

26. **Environmental/ Medical.**  Tenant expressly covenants and agrees to fully comply with the provisions of all Federal, State, and Local laws and statutes as they relate to the environment or practice of any medically licensed related field including but not limited to acupuncture and massage therapy. Should any violations or environmental hazards or concerns be identified, that are triggered by the Tenants or its clients, representatives, contractors or any others, the Tenant agrees to remediate any and all violations immediately and indemnifies the Landlord from any and all claims as a result of these violations or concerns.  In particular, Tenant agrees that it shall comply with the provisions of any Federal, state and local environmental governments and provide the Landlord proof of compliance and remediation. In the event evidence of such compliance is not delivered to Landlord prior to surrender of the Rental Space, it is understood and agreed that Tenant shall be liable to pay to Landlord an amount equal to two (2) times the rent then in effect, pro-rated on a monthly basis, together with all applicable additional rent from the date of such surrender until such time as evidence of compliance by the Tenant  including any and all evidence from a governing body have been satisfied and has been delivered to Landlord. Should the Landlord incur any associated costs including but not limited to reasonable legal/attorney fees in enforcing Tenant's obligations, Tenant agrees to reimburse the Landlord for all such expenses immediately upon demand by the Landlord. In the event that any remediation of the Property is required in connection with the conduct by Tenant of its business at the Rental Space, Tenant expressly covenants and agrees that it shall be responsible for that portion of said remediation which is attributable to Tenant's use and occupancy. Tenant hereby represents and warrants that its Standard Industrial Clarification (SIC) Number is _____, and that Tenant shall not generate, manufacture, refine, transport, treat, store, handle or dispose of hazardous substances as the same are defined under Federal, State or Local ordinance and its regulations there under. Tenant hereby agrees that it shall promptly inform the Landlord of any change in its SIC Number or the nature of the business to be conducted in the Rental Space. This covenant shall survive the expiration or earlier termination of the Lease.

27. **Eminent Domain**. Eminent domain is the right of a government to lawfully condemn and take private property for public use. Fair value must be paid for the property. The taking occurs either by court order or by deed to the condemning party. If any part of the Rental Space is taken by eminent domain, either party may cancel this Lease on thirty (30) days' notice to the other. The entire payment for the taking shall belong to the Landlord. Tenant shall make no claim for the value of this Lease for the remaining part of the Term.

28. **Subordination to Mortgage.** In a foreclosure sale all mortgages which now or in the future affect the Building have priority over this Lease. This means that the holder of the mortgage may end this Lease on a foreclosure sale. Tenant shall sign all papers needed to give any mortgage priority over this Lease. If Tenant refuses, Landlord may sign the papers on behalf of Tenant.

29. **Tenant's Certificate.** At the request of Landlord, Tenant shall sign a certificate stating that (a) this Lease has not been amended and is in effect, (b) Landlord has fully performed all of Landlord's agreements in this Lease, (c) Tenant has no rights to the Rental Space except as stated in this Lease, (d) Tenant has paid all Rent to date, and (e) Tenant has not paid Rent for more than one (1) month in advance. This Certificate shall also list all the property attached to the Rental Space owned by Tenant.

30. **Violation, Eviction, Re-entry and Damages**. Landlord reserves a right of re-entry which allows Landlord to end this Lease and re-enter the Rental Space if Tenant violates any agreement in this Lease. This is done by eviction. Eviction is a court procedure to remove a Tenant. Eviction is started by the filing of a complaint in court and the service of a summons on a Tenant to appear in court. Landlord may also evict Tenant for any one of the other grounds for good cause provided by law. After a court order of eviction and compliance with the warrant of removal, Landlord may re-enter and take back possession of the Rental Space.

    If cause for eviction is non-payment of Rent, notice does not have to be given to Tenant before Landlord files a complaint. If there is any other cause to evict, Landlord must give to Tenant the notice required by law before Landlord files a complaint for eviction. If Landlord files a complaint for non-payment of Rent, Tenant shall be responsible for Landlord's attorney's fees and costs of lawsuit which shall be considered as additional rent.

    Tenant is liable for all damages caused by Tenant's violation of any agreement in this Lease. This includes any and all reasonable attorney's fees and costs.

    After the eviction, Tenant shall pay the Rent for the Term or until Landlord re-rents the Rental Space, if sooner. If Landlord re-rents the Rental Space for less than the Tenant's current rental rate as per the lease conditions described herein, Tenant shall pay the difference until the end of the Term. Tenant shall not be entitled to any excess resulting from the re-renting. Tenant shall also pay; (a) all

reasonable expenses incurred by Landlord in preparing the Rental Space for re-renting; and (b) commissions paid to a broker for finding a new Tenant.

31. **Default by Tenant**. Each of the following shall be deemed a default by Tenant And breach of this Lease:
    t. Filing of a petition by Tenant for adjudication as a bankruptcy, or for a reorganization, or for an arrangement under any federal or state statute;
    u. Dissolution or liquidation of Tenant;
    v. Appointment of a permanent receiver or a permanent trustee of all or substantially all of Tenant's property;
    w. Taking possession of Tenant's property by a governmental officer or agency pursuant to statutory authority for dissolution, rehabilitation, reorganization or liquidation of Tenant.
    x. Making by Tenant of an assignment for the benefit of creditors; or
    y. Abandonment, desertion or vacation of the Rental Space by Tenant

In addition, default in the payment of the Rent or additional Rent for a period of fifteen (15) days after same is due and payable shall be deemed a default by Tenant and breach of this Lease. A default by Tenant and breach of this Lease is also deemed if Tenant fails to perform any covenant or condition thirty (30) days after written notice. However, no default shall be deemed to exist if, after notice, steps shall have been commenced by Tenant to diligently rectify same.

If any of the above shall occur, Landlord may thereupon or at any time thereafter elect to cancel this Lease by ten (10) days notice to Tenant, and this Lease shall terminate on the day in such notice specified with the same force and effect as if that date were the date fixed herein for the expiration of the Lease.

32. **Notices.** All notices given under this Lease must be in writing. Each party must accept and claim the notices given by the other. Unless otherwise provided by law, they may be given by (a) regular mail, and (b) certified mail, return receipt requested. Notices shall be addressed to Landlord at the address written at the beginning of this Lease or to the Landlords designated representative Andreas Milliaressis Esq., Ansell Grimm & Aaron, 732.643.5295 and addressed to Tenant at the Rental Space. No notices can be made by email or any other method but those outlined above (regular mail and certified mail).

33. **No Waiver.** Landlord's failure to enforce any agreement in this Lease shall not prevent Landlord from enforcing the agreement for any violations occurring at a later time.

34. **Survival.** If any provision of this Lease is deemed unenforceable or contrary to law, the rest of the Lease shall remain in effect.

35. **End of Term.** At the end of the Term, Tenant shall (a) leave the Rental Space clean, (b) remove all of Tenant's property, (c) remove all signs and restore that portion of the Rental Space on which they were placed, (d) repair all damage caused by moving, and (e) return the Rental Space to Landlord in the same condition as it was as at the beginning of the Term except for normal wear and tear. If Tenant leaves any property in the Rental Space, Landlord may dispose of it and charge Tenant for the cost of disposal or keep it as abandoned property.

36. **Holdover.** If Tenant maintains possession of the Rental Space for any period after the termination of this Lease ("Holdover Period"), Tenant shall pay to Landlord Rent for the Holdover period based on the terms of this Lease. Such holdover shall constitute a month to month extension of this Lease. The Rental rate and all penalties will be doubled during the "Holdover Period" unless the Landlord has consented to the holdover period in writing. However Landlord may refuse consent without reason, cause or explanation.

37. **Personal Guarantee:** Should the Tenant fail to pay any rent due this lease will be considered personally guaranteed by all members of the LLC and those who have affixed their signatures below. Should the Tenant vacate at the request of the Landlord the Landlord continues to maintain all their rights, privileges and claims against the LLC and its members individually, as described in this lease and allowed by law. Nancy Loving, Alicia St. Pierre, and any members of Art Port LLC agree to be bound by the terms of this lease and personally guarantee the terms contained herein.

38. **Landlord's Liability.** If Landlord or any successor in interest or assignee shall be an individual, joint venture, tenancy, firm, corporation, trust, or partnership, it is specifically understood and agreed that there shall be no personal liability upon such individuals or members thereof, in respect to any of the covenants or conditions of this Lease. Tenant shall look solely to Landlord's equity in the Premises for the satisfaction of Tenant's remedies in the event of a breach by Landlord, or of any of the terms, covenants and conditions of this Lease to be performed by the Landlord.

39. **Binding.** This Lease binds Landlord and Tenant and all parties who lawfully succeed to their rights or take their places.

40. **Mechanic's Liens.** Neither Tenant nor anyone claiming through Tenant shall have the right to file mechanics liens or any other kind of lien or encumbrances on the Rental Space, building, or property. Tenant agrees to give actual advance notice to any contracts, subcontractors or suppliers of goods, labor or services that such liens will not be valid.

41. **Governing Law.** This Lease shall be construed in accordance with the laws of the State of New York.

42. **Signatures.** Landlord and Tenant agree to the terms of this Lease by signing below. If a party is a corporation, this Lease is signed by its proper corporate officers and its corporate seal is affixed.

43. **Full Agreement.** The parties have read this Lease. It contains their full agreement. It may not be changed except in writing signed by Landlord and Tenant.

Witnesses or attested by:

_____     _____
As to Landlord                                                      Landlord


_____     _____
As to Landlord                                                      Landlord


_____     _____
As to Tenant                                                          Tenant

_____
As to Tenant                                                          Tenant

_____
As to Tenant                                                          Tenant


Guarantors: (Jointly and Individually)


_____
Nancy Loving
26 Covlee Drive
Norwalk, CT 06855



_____
Alicia St. Pierre
11 Lambs Lane
Crestkill, NJ 07626


Page **13** of **13**     **Tenant initials**_____     **Landlord's Initials**_____
466/040418

**LOVING 2016**