**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 19-cv-2381-LTB-MEH

WALTER CHARNOFF

      Plaintiff,

v.

NANCY LOVING d/b/a ARTSUITE NY, ART PORT LLC,
STUDIO 41, LLC, ALICIA ST. PIERRE, MARTIN ST. PIERRE,
ISP HOLDINGS, INC., and DAVID HINKELMAN

      Defendants.

---

**PLAINTIFF'S MOTION FOR LEAVE TO SUPPLEMENT COMPLAINT**
---

Walter Charnoff, ("Plaintiff") by and through his undersigned counsel of record, The Law Office of Ian T. Hicks, LLC, hereby respectfully files his Motion for Leave to Supplement Complaint, as follows

Certificate of Conferral: Undersigned counsel conferred with opposing counsel, who stated the relief sought is opposed.

## I.      INTRODUCTION

Plaintiff respectfully requests that he be permitted to supplement the Second Amended Complaint ("SAC") to add allegations regarding two categories of wrongful conduct that occurred after this civil action was commenced, pursuant to Fed. R. Civ. P. 15(d), and for which Plaintiff was not aware until recently.  First, Plaintiff wishes to supplement regarding (1) a defamatory email sent by David Hinkelman ("Mr. Hinkelman") that was sent on August 1, 2019,

but was not disclosed until May 29, 2020[1], (2) damage to the subject art while in the care, custody, or control of Defendants Nancy Loving ("Ms. Loving"), ArtPort LLC ("AP"), or their agents, and (3) the failure of Ms. Loving to obtain proper, or any, insurance coverage for the now-damaged art.  More specifically, Plaintiffs intend to add factual allegations regarding the damage to the art and failure to insure, since the existing claims would cover that damage, and to add both factual allegations and two claims for defamation to cover the defamatory email sent by Mr. Hinkelman.[2]  Two claims are necessary because some of the statements in the email are defamatory per se, and some may only be defamatory, as pled in the alternative.

The matters sought to be added by way of supplement were not known until recently, as disclosures of documents, photographs, and communications—although within the scope of discovery requests that were answered on February 28, 2020—have been provided over the past several months in a multitude of productions.  Therefore, although the information technically existed before the last pleading was filed, it was not known and reasonably comprehended until after that time, in conformance with the letter and the spirit of Fed. R. Civ. P. 15(d).  And although this appears to be a clear situation where supplementation for post-filing events is proper, rather than an amendment for prelitigation events under Fed. R. Civ. P. 15(a), under either standard, Plaintiff should be permitted to plead as requested.

Further, to the extent the case management order needs to be modified, which Plaintiff does not believe is necessary for a supplementation, good cause exists.  Justice is best served by permitting the full scope of facts, issues, claims, and damages to be tried on the merits in one

---

[1] Defendants other than Alicia and Martin St. Pierre and ISP Holdings, Inc., served responses to Plaintiff's First Written Discovery on February 28, 2020.  One of the requests was for any communications involving the Defendants relating to the transactions and events alleged in the pleadings.  Thus, this email should have in all fairness been provided much earlier.
[2] The fraudulent misrepresentation and breach of contract claims would cover the art damage and insurance issues.

combined proceeding, especially given the potential of possible claim preclusion if Plaintiff's relief is denied and he is thereby forced to split his causes of action.  Finally, no prejudice will accrue to any party, given that trial is not until 2021 and no depositions have yet occurred.

The proposed Third Amended Complaint is filed concurrently herewith as <u>Exhibit A</u>, in redline format, and in clean format as <u>Exhibit B</u>.  Both versions include a request for exemplary damages as well, to incorporate the Court's recent Order permitting exemplary damages against Nancy Loving and Art Port LLC.

## II.    LEGAL STANDARD

Rule 15(d) of the Federal Rules of Civil Procedure states that the court may "upon such terms as are just, permit [a] party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented."

Leave to supplement a complaint with "post-complaint transactions, occurrences or events ... should be liberally granted unless good reason exists for denying leave, such as prejudice to the defendants."  *Walker v. United Parcel Serv., Inc*., 240 F.3d 1268, 1278 (10th Cir. 2001) (internal quotation marks omitted). Similarly, for motions to amend, "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2); *see Minter v. Prime Equip. Co*., 451 F.3d 1196, 1208 (10th Cir.2006) ("in general permission is liberally granted where there is no prejudice" (internal quotation marks omitted)); *Hardin v. Manitowoc–Forsythe Corp.,* 691 F.2d 449, 456 (10th Cir. 1982) ("Rule 15 was promulgated to provide the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties.").

Indeed, supplementation is especially appropriate where the pleader seeks to add a new claim, because otherwise he will be forced to file a second action and seek consolidation, which is permitted by the Rules of Civil Procedure but increases the court's workload.  *See Arp v.*

*United States*, 244 F.2d 571, 574 (10th Cir. 1957) ("Had the court refused permission to file [the supplemental complaint], the Government could have proceeded by an original complaint in an independent action, and the identical issues would have been presented and determined. We find no abuse of discretion by the trial court [in allowing supplementation under Rule 15(d) instead]."); *see also* 6A Charles A. Wright et al., Federal Practice and Procedure § 1506 (3d ed. 2010) ("[T]he usual effect of denying leave to file a supplemental pleading because it states a new cause of action is to force [the] plaintiff to institute another action and move for consolidation under Rule 42(a) in order to litigate both claims in the same suit, a wasteful and inefficient result."

With respect to a motion to amend, shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). This is a "mandate . . . to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Leave to amend is a matter committed to the court's sound discretion and is not to be denied without the court giving some reason or cause on the record. *Fed. Ins. Co. v. Gates Learjet Corp.*, 823 F.2d 383, 387 (10th Cir. 1987). Leave may be denied when the amendment would cause undue prejudice to the opposing party, when the movant has unduly delayed in requesting leave, when the movant acts on a bad faith or dilatory motive, or when the amendment would be futile. *Foman*, 371 U.S. at 182; *State Distribs., Inc. v. Glenmore Distilleries*, 738 F.2d 405, 416 (10th Cir. 1984).

In exercising its discretion, the court must be mindful that the Federal Rules of Civil Procedure are designed to facilitate decisions on the merits rather than on pleading technicalities. *Koch v. Koch Indus.*, 127 F.R.D. 206, 209 (D. Kan. 1989). Indeed, in terms of undue delay, delay itself is not sufficient, it must be a delay that has no adequate explanation, in consideration of the time periods typically encountered in federal litigation. *See, e.g., Minter v. Prime Equip. Co.,* 451 F.3d 1196, 1204 (10th Cir. 2006). "Specifically, the . . . Tenth Circuit has determined that

district courts should grant leave to amend when doing so would yield a meritorious claim."
*Burleson v. ENMR–Plateau Tel. Co-op.,* 2005 WL 3664299, at *2 (D.N.M. Sept.23, 2005)
(Browning, J.) (citing *Curley v. Perry,* 246 F.3d 1278, 1284 (10th Cir. 2001)).

A motion to amend under Rule 15(d) is addressed to the sound discretion of the court,
and leave to serve a supplemental pleading "should be liberally granted unless good reason exists
for denying leave, such as prejudice to the defendants." *Walker v. United Parcel Service,* Inc.,
240 F.3d 1268, 1278 (10th Cir.2001) (quoting *Gillihan v. Shillinger,* 872 F.2d 935, 941 (10th
Cir. 1989)).

### III.     LEGAL ARGUMENT

### A.     Supplementation Should be Permitted with Respect to Mr. Hinkelman's Defamation

On May 29, 2020, Mr. Hinkelman disclosed an August email between himself, Keith
Garde and Amy Garde—who are members of Studio 41, LLC, the entity through which the artist
who created the art at issue in this case, Harold Garde, does business—Ms. Loving, and Bill
Hohns, who apparently served in some form of mediator role between Ms. Loving, Studio 41,
LLC, and Harold Garde.  *See* August 1, 2019, email, bates stamped Loving 2102, attached as
Exhibit C.

In this email, Mr. Hinkelman, who worked at one time for Plaintiff as a consultant, makes
the following false and defamatory statements:

1.     "we are dealing with a deeply troubled person. Since we sold him the initial
collection of your work in 2016--He has been in and out of treatment for mental
and emotional issues"

2.     "[he] lost a major lawsuit over the last company he founded and sold (which we
were investors in and were financially and personally impacted by his
misrepresentations that we uncovered a few weeks ago)"

3.     "he attempted to bully her and blackmail Artport"

4.     "filed for Bankruptcy . . . [h]e is highly unpredictable"

Defamation is a communication holding an individual up to contempt or ridicule that causes the individual to incur injury or damage. *Keohane v. Stewart,* 882 P.2d 1293, 1297 (Colo. 1994); *Gordon v. Boyles*, 99 P.3d 75, 78 (Colo. App. 2004). To be defamatory, a statement need only prejudice the plaintiff in the eyes of a substantial and respectable minority of the community. *Ramsey v. Fox News Network, L.L.C*., 351 F. Supp. 2d 1145, 1150 (D. Colo. 2005); *Burns v. McGraw–Hill Broadcasting Co., Inc.,* 659 P.2d 1351, 1357 (Colo. 1983).

A finding that statements were defamatory must be predicated on the context of the entire story and the common meaning of the words used.  *Wilson v. Meyer*, 126 P.3d 276, 279 (Colo. App. 2005).  Defamation per se is actionable without proof of special damages. *Inter–State Detective Bureau, Inc., v. Denver Post, Inc*., 484 P.2d 131, 133 (1971). Such a statement must be, on its face and without extrinsic proof, unmistakably recognized as injurious and specifically directed at the plaintiff.  *Wilson v. Meyer*, 126 P.3d 276, 279 (Colo. App. 2005) (quoting *Lininger v. Knight,* 226 P.2d 809, 813 (1951)).  "[W]hether a statement is characterized as a 'fact' or 'opinion' is no longer a relevant inquiry in determining whether it may be constitutionally privileged . . . [r]ather, the relevant inquiry is whether the statement could be reasonably understood as declaring or implying a provable assertion of fact."  *Keohane v. Wilkerson,* 859 P.2d 291, 296 (Colo. App. 1993).

A statement is defamatory per se if its subject matter imputed that the plaintiff was guilty of a criminal offense, had a loathsome disease, had engaged in sexual misconduct, or concerned a matter incompatible with the individual's business, trade, profession, or office.  *See, e.g., Boyles,* 99 P.3d at 79; *Pagosa Hot Spring, Inc. v. Arnold,* 493 P.2d 383, 385 (Colo.App.1972) ("It is libel per se to make false statements attacking a merchant's credit or imputing insolvency,

financial difficulties or embarrassment").  Even if a statement is not defamatory in some circumstances, under the use of different words in conjunction with the same statement, it may be defamatory.  *See, e.g., Cinquanta v. Burdett*, 388 P.2d 779, 781 (Colo. 1963) ("[T]he words which the plaintiff contends are actionable per se must be taken in context and in the light of all the circumstances attendant upon the utterances.").  Here, three if the statements were defamatory per se, and the fourth was defamatory.

The first statement, says that Plaintiff is a "deeply troubled person" who has been "in and out of treatment for mental and emotional issues."  Mr. Hinkelman makes this statement in connection with Plaintiff's business, trade, or profession by tying those alleged mental and emotional issues to a company that he founded and sold, and which he and Ms. Loving were investors in, which caused them to suffer negative financial impacts.  This is a statement of fact, indicating that Plaintiff is mentally unstable, and has unable to effectively control those mental and emotional issues despite persistent treatment.  Furthermore, this was stated as the causal factor as to why the instant lawsuit was filed—not because of a potentially legitimate dispute, but because Plaintiff is just so out of balance   mentally that he files frivolous cases.

And it is beyond dispute that a statement that someone is mentally unstable, especially when combined with additional purportedly factual statements that the instability had negative business, financial, and legal consequences, is defamatory per se. *See, e.g., Manley v. Manley*, 353 S.E.2d 312, 315 (Ct. App. 1987) ("because of the ridicule or contempt involved and the likelihood that the person charged will be deprived of social intercourse, it is actionable per se, to impute to another in writing that he suffers from mental illness."); *Recant v. New York Presbyterian Hosp.*, 901 N.Y.S.2d 910, 2009 WL 3490940, at *5 (N.Y. Sup. Ct. N.Y. Co. 2009) (statement that physician had "a long history of depression, manic depression, borderline personality disorder, and Percocet abuse" was actionable as defamation per se as tending to

7

impugn physician in her profession).  The statement is also false, because Plaintiff has never received any treatment for mental and emotional issues.

The second statement, that Plaintiff lost a major lawsuit over a company he founded and sold, and that he made misrepresentations, which caused Ms. Loving and Mr. Hinkelman is also defamatory per se.  It is unquestionable that being a fraudster who makes misrepresentations is a factual statement, which is incompatible with any form of business, trade, or profession, especially where it causes one to lose a lawsuit.  Restatement (Second) of Torts § 573, cmt. c. ("Statements concerning merchants that question their solvency or honesty in business come within the rule stated in this Section."); *S. Volkswagen, Inc. v. Centrix Fin., LLC,* 357 F. Supp. 2d 837, 843 (D. Md. 2005) ("It is without question that labeling an entity a "fraud" is a defamatory statement.") (Following rule set forth in the Rest. Second of Torts).

The problem with Mr. Hinkelman's statement is that it is false.  The lawsuit he is referring to actually resulted in a final order declaring any judgment entered to be void ab initio, and the parties dismissed their respective claims, with prejudice, and thus, as a matter of law, there was no "losing" of that lawsuit possible—it was dismissed with prejudice no different than any case that is dismissed without a final resolution.  Moreover, Plaintiff did not engage in any misrepresentations, and certainly none that caused Mr. Hinkelman damage—in fact, he made a million dollars because of the Plaintiff in their business dealings together.

Mr. Hinkelman's third statement, that Plaintiff attempted to blackmail Artport and acted like a bully, is also defamatory per se.  Blackmail is akin to extortion, which is a crime, and is commonly understood to mean that one utilizes unlawful pressure to exert a result or concession to which they are not lawfully entitled.  This too, in addition to being inconsistent with Plaintiff's business, trade, or profession, also denotes criminal behavior.  *Scheel v. Harris,* 2012 WL 3731263, at *5 (E.D. Ky. Aug. 28, 2012) ("Because the Court has determined Harris's

8

"blackmail" statement to be defamatory per se, Scheel need not affirmatively prove the special damages caused by that comment.").

Mr. Hinkelman's fourth statement, that Plaintiff declared bankruptcy, is defamatory per or at least defamatory. Rest. (Second) of Torts § 573, cmt. c. ("Statements concerning merchants that question their solvency or honesty in business come within the rule stated in this Section."); *See Van-Go Transp. Co. v. New York City Bd. of Educ.,* 971 F. Supp. 90, 99 (E.D.N.Y. 1997); *McCann v. Shell Oil Co.,* 551 A.2d 696, 698 (R.I. 1988) ("A statement that a company is insolvent is defamatory"). In the context in which it is stated, it is meant to be understood that Plaintiff declared bankruptcy because of his purported mental instability, which is allegedly so severe it has been untreatable.

The statement also indicates the existence of hidden factual matter, that is, that Plaintiff is insolvent or is uncreditworthy, and that is why he filed the instant civil action, just like how he sued his home contractor. Notably, the statement regarding the lawsuit against the home contractor is a false statement because that lawsuit was not filed until the year 2020. Plaintiff's bankruptcy was strategically filed and then dismissed, and it was of no legal effect. He was not at any time insolvent, uncreditworthy, and he certainly did not have a short-lived strategic bankruptcy case, or any involvement in any prior lawsuit because of, or even in relation to, the purported mental health issues.

Further, Plaintiff should be permitted to supplement his complaint and to the extent necessary, modify the case management order because good cause exists. Plaintiffs did not receive the defamatory email until May 29, 2020 in disclosures, although they requested all Defendant to Defendant communications in their written discovery, the answers to which were served on February 28, 2020. Taken together, the email attached as Exhibit A gives rise to a plausible claim for defamation per se, and at a minimum, defamation.

**B.**      <u>**Plaintiff Should be Permitted to Supplement Regarding Insurance and Art Damage**</u>

Plaintiff should also be permitted to supplement regarding the failure to obtain adequate insurance and physical damage to the art.  Both of these factual issues are intertwined—the failure to properly insure is not actionable unless the art was damaged, because that is an insurable loss that without said insurance reduces the value of what was paid for and deprives plaintiff of the benefit of his bargain.

Prior to the sale of the art, Ms. Loving represented to Plaintiff that the art was in pristine condition.  She repeatedly told Plaintiff that it was insured against damage, and even when Plaintiff repeatedly requested information necessary so that he himself could obtain insurance, Ms. Loving refused to provide that information, stating that she would have it insured through shipping.  Ultimately, after sending the art without notice, which necessitated having it stored pursuant to Court order at an independent storage facility, Ship Art Terry Dowd, LLC, condition reports were obtained at great expense to Plaintiff, of over $10,000.00, which showed certain damage or deterioration to a substantial portion of the art.

"Colorado, like the majority of jurisdictions, recognizes that every contract contains an implied duty of good faith and fair dealing."  *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 498 (Colo. 1995), as modified on denial of reh'g (Jan. 16, 1996) (Citing § 4–1–203 of the Uniform Commercial Code, governing the sales of goods, stating "[e]very contract within this title imposes an obligation of good faith in its performance or enforcement.").  The good faith performance doctrine is generally used to effectuate the intentions of the parties or to honor their reasonable expectations. *See State Farm Mut. Auto. Ins. Co. v. Nissen*, 851 P.2d 165, 168 (Colo. 1993); *Davis v. M.L.G. Corp.*, 712 P.2d 985, 989 (Colo. 1986).

It is notable that the present claims, including for fraud and breach of contract, necessarily encompass the Defendants' inducement to purchase the art, as well as their failure to

10

perform under a contract for the two purchases.  It is axiomatic that any contract for the sale of goods necessarily includes as an implied condition that the goods not be damaged in a manner that compromises their value while in the care of the seller.  Moreover, it is a material fact upon which Plaintiff relied that the art actually was in good condition as represented.

Given the art's age, this had to be compared to photographs and condition reports of the art prior to its shipment to Plaintiff[3] to determine if these were in existence prior to the shipment, condition reports prepared by Ms. Loving's shipper, along with email and text communications relating to the insurance issues.  These categories of items were being disclosed as late as May 29, 2020 by Ms. Loving and AP.  Therefore, Plaintiffs should be permitted to supplement his Complaint with these allegations—failure to obtain insurance and physical damage to the art.

No unfair surprise or prejudice will accrue to any Defendant, given that it is an implied condition for the purchase of any good that it not be damaged by the seller prior to delivery to the purchaser, and the existing claim for breach of contract and further because no new claims for relief will need to be asserted—the fraud claim is already alleged and incorporates by reference all foregoing allegations of the SAC.  For these same reasons, there is good cause to modify the case management order, to the extent that is necessary for a supplement rather than an amendment to pleadings.

## IV.    CONCLUSION

Plaintiff respectfully requests that he be permitted to supplement the SAC with allegations concerning defamation, two defamation claims, and allegations concerning damage to the art and the failure to obtain proper insurance.

---

[3] Plaintiff did not accept delivery of the art given the circumstances of its shipping, the lack of notice and unfair surprise, and the peculiar manner in which it was shipped, as well as the fact that there was ongoing litigation.

Filed June 23, 2020.

Respectfully submitted,

THE LAW OFFICE OF IAN T. HICKS LLC

By_____*s/ Ian T. Hicks*_____
        Ian T. Hicks
        *Original Signature on File at The Law Office of
        Ian T. Hicks, LLC*

Certificate of Service

The undersigned certifies that on the date of this filing, the foregoing was served through

ECF upon Defendants' counsel, per the below, as required by Fed. R. Civ. P. 5 and any local

rules:

**Shoemaker Ghiselli + Schwartz, LLC**
Elizabeth H. Getches
Cynthia A. Mitchell
SHOEMAKER GHISELLI + SCHWARTZ LLC
1811 Pearl Street
Boulder, CO 80302
Telephone: (303) 530-3452
Email: lgetches@sgslitigation.com
Attorney for Defendants other than Martin St. Pierre, Alicia St. Pierre, and ISP Holdings, Inc.

Thomas H. Wagner, #38135
Anderson Law Group
7385 W. Highway 50
Salida, CO 81201
Telephone: (719) 539-7003
tom@anderson-lg.com
Counsel for Defendants Martin St. Pierre, Alicia St. Pierre, and ISP Holdings, Inc.

_s/Ian T. Hicks, Esq._