IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-02381-LTB-MEH

Walter Charnoff,

Plaintiff,

v.

Nancy Loving d/b/a Artsuite NY, Art Port, LLC, Studio 41, LLC, David Hinkelman, Martin St. Pierre, Alicia St. Pierre, and ISP Holdings, Inc.,

Defendants.

---

## REPLY IN SUPPORT OF MOTION TO DISMISS

---

Defendants ISP Holdings, Inc., Martin St. Pierre, and Alicia St. Pierre (the "St. Pierre Defendants"),[1] through counsel, reply as follows in support of their Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim (the "Motion to Dismiss"):

### I.  INTRODUCTION

Plaintiff Walter Charnoff purchased nearly $200,000 worth of art from Art Port in 2016 and 2017. He apparently regrets his purchase now, and he has sued anyone he could locate with any connection to Art Port, no matter how peripheral, including the St. Pierre Defendants. The problem with Charnoff's sue-everyone approach is that the St.

---

[1] Unless noted otherwise, capitalized terms in this reply have the same meanings as set forth in the Motion.

Pierre Defendants have no connection to his art purchase and no minimum contacts with Colorado. Charnoff tries to overcome these fatal defects in personal jurisdiction using agency law, but Charnoff cannot establish that the St. Pierre Defendants controlled or managed the other defendants' operations. Thus, as set forth in the Motion to Dismiss, Charnoff cannot establish the agency relationship necessary to acquire personal jurisdiction over the St. Pierre Defendants. His claims should therefore be dismissed.

Charnoff does not try to rebut the defects in his agency jurisdiction theory in his response and supplemental response to the Motion to Dismiss.[2] In fact, Charnoff ignores the concept of agency jurisdiction entirely. Charnoff instead tries to persuade the Court to overlook his deficient allegations against the St. Pierre Defendants and to infer minimum contacts where none exist. As explained below, however, the Court should not be misled by Charnoff's many attempts to muddy the factual waters. The operative complaint and affidavits, including Charnoff's own affidavits, prove the St. Pierre Defendants have no minimum contacts with Colorado and no ability to control the operations or actions of the other defendants. Thus, there is no general, specific, or

---

[2] Charnoff filed a response brief on April 20, 2020. (Doc. 89.) After obtaining jurisdictional discovery, he filed a supplement to his response on August 4, 2020. (Doc. 126.) Rather than address any new facts revealed in the jurisdictional discovery, Charnoff's supplement simply rehashes his prior arguments made in the initial response brief. Neither brief saves his claims from dismissal.

It is also should be noted that Charnoff requested additional document production from the St. Pierre Defendants in response to his jurisdictional discovery requests, but that Magistrate Judge Hegarty overruled that request during a telephone conference on July 14, 2020.

agency jurisdiction here and it would violate due process to require the St. Pierre Defendants to litigate in Colorado.

In the alternative to dismissal for lack of jurisdiction, Charnoff's unjust enrichment claim should be dismissed under Fed. R. Civ. P. 12(b)(6). The Motion to Dismiss shows that Charnoff cannot pierce the relevant LLC and corporate veils to hold the St. Pierre Defendants liable for the acts of the other defendants. He has not even tried to allege a plausible veil-piercing theory in his operative complaint and Charnoff thus has failed to create a plausible issue of fact on that claim.

## II.    ANALYSIS

### A.    CHARNOFF CANNOT ESTABLISH AGENCY JURISDICTION

#### 1.    CHARNOFF MISCONSTRUES THE LAW ON AGENCY JURISDICTION

Charnoff concedes he never communicated with the St. Pierre Defendants and that the St. Pierre Defendants never traveled to Colorado. Martin and Alicia testified that they had not heard of Charnoff until he filed suit and Charnoff's own affidavits submitted in this case show that Charnoff did not even know Martin and Alicia's last name when he first filed this case.[3] Thus, Charnoff's sole basis for personal jurisdiction over the St. Pierre Defendants is agency jurisdiction, which he pleads in the operative complaint. (*See* Doc. 64 ¶ 10.) To survive the Motion to Dismiss challenging agency jurisdiction, Charnoff must make out a prima facie agency relationship between the St. Pierre Defendants, on the one hand, and another defendant that has minimum contacts to

---

[3] *See* Doc. 15-1 ¶ 32, n.1 (stating that "Allie Lapierre (with her husband)" were investors in Art Port and stating that the "exact spelling" of the St. Pierres last names is "unknown").

Colorado. (*See* Motion to Dismiss, Doc. 77 at 6-7 (citing *SGI Air Holdings II LLC v. Novartis Int'l, AG*, 192 F. Supp. 2d 1195, 1198 (D. Colo. 2002) and *First Horizon Merchant Servs., Inc. v. Wellspring Capital Mgmt., LLC*, 166 P.3d 166, 178-79 (Colo. App. 2007)).

Charnoff has not made that showing in this case. On the contrary, Charnoff misapprehends how agency jurisdiction works and he completely ignores agency law. Instead of showing that the St. Pierre Defendants exercised the requisite degree of control over the other parties, which would establish an agency relationship, Charnoff focuses instead on the irrelevant concept of the fiduciary shield doctrine and whether a corporate officer can be held personally liable for the officer's tortious activity. (*See* Doc. # 89 at 18-20.) Neither of Charnoff's arguments have any application in this case.

The fiduciary shield doctrine precludes an individual's contacts with a forum while acting as a representative of a corporate entity from being used to establish personal jurisdiction over the individual in their personal capacity. *See Otimo Music, Inc. v. Royalty Exchange, Inc.*, 2018 WL 6697073, *5 (D. Colo. Dec. 2018) (cited in Charnoff's Response brief). Colorado has not adopted the doctrine and thus, Charnoff argues that it cannot be used to support the Motion to Dismiss in this case. But the St. Pierre Defendants do not rely on the fiduciary shield doctrine in their Motion to Dismiss, so Charnoff's argument is red herring.

Unlike in *Otimo*, where the defendant had minimum contacts with Colorado while acting as a corporate representative, Charnoff admits that none of the St. Pierre Defendants have minimum contacts with Colorado in any capacity. The operative

Second Amended Complaint alleges the St. Pierre Defendants are subject to jurisdiction solely as a result of "the wrongful acts and omissions committed against Charnoff *by the remaining Defendants, especially Nancy and AP, who were acting as their agents for purposes of transactions at issue in this litigation.*" (Doc. 64 ¶ 10 (emphasis added).) Thus, unlike the defendant in *Otimo* who dealt directly with the plaintiff in Colorado, the St. Pierre Defendants do not have minimum contacts to create personal jurisdiction in Colorado. Charnoff's reliance on *Otimo* is misplaced.

Citing *Hoang v. Arbess*, Charnoff also contends that personal jurisdiction is appropriate here under a theory he refers to as the "corporate officer responsibility doctrine." (*See* Doc. 89 at 19 (citing 80 P.3d 863 (Colo. App. 2003)). But *Hoang* did not decide issues of agency or personal jurisdiction. *Id.* Rather, *Hoang* discusses whether a corporate officer can be held liable for his own tortious behavior notwithstanding the existence of corporate tortious behavior. *See id.* at 867-68 (deciding whether officer of defendant could be held liable for negligence when corporation also committed negligence). *Hoang* does not apply here and it is another red herring.

Charnoff also cites *Oaster v. Robertson*, but *Oaster* is again inapposite. (*See* Doc. 89 at 23 (citing 173 F. Supp. 3d 1150 (D. Colo. 2016).)[4] *Oaster* declined to dismiss tort claims where the plaintiff alleged that the defendants had purposefully availed themselves of the law Colorado by contracting directly with the plaintiff, a Colorado resident, and doing busines with the plaintiff in Colorado for approximately ten years.

---

[4] Charnoff does not provide a full citation for *Oaster* and wrongly states that the case was decided by the 10th Circuit Court of Appeals. In fact, *Oaster* was decided by Magistrate Judge Mix in the District Court.

*See Oaster*, 173 F. Supp. 3d at 1164. It was the defendants' own repeated minimum contacts with Colorado that created specific personal jurisdiction, not an agency relationship between the defendant and other parties. *Id.* In this case, unlike in *Oaster*, Charnoff (1) never contracted with the St. Pierre Defendants; (2) never communicated with the St. Pierre Defendants; and (3) did not know their names until after this suit was filed. The St. Pierre Defendants likewise had not heard of Charnoff until he filed suit.

Charnoff's reliance on *Otimo, Hoang,* and *Oaster* is misplaced. He cannot convert the minimum contacts of the other defendants into minimum contacts by the St. Pierre Defendants and his complete failure to address agency jurisdiction a tacit admission that he cannot establish the necessary elements of that theory. His claims should be dismissed for this reason alone.

2. <u>CHARNOFF HAS NOT ESTABLISHED AN AGENCY RELATIONSHIP BETWEEN THE ST. PIERRE DEFENDANTS AND THE OTHER DEFENDANTS</u>

As noted above, Charnoff must establish a prima facie agency relationship to avoid dismissal of his claims, but he cannot do so here. To create an agency relationship, the principal and agent must agree the agent will act on behalf of the principal and be subject to the principal's control. *See Stortroen v. Beneficial Fin. Co. of Colo.*, 736 P.2d 391, 395 (Colo. 1987). A written contract is not required, but the critical element of consent between principal and agent must exist. *See id.*; *see also* CJI-Civ. 8:1 *Agency Relationship – Defined* (2020 ed.). Proof of an agency relationship requires proof that the principal can exercise some degree of control over the agent's operations and interactions with third parties. *See SGI Air*, 1199-201 (concluding that defendant

parent company lacked control over subsidiary for purposes of agency jurisdiction); *see also* Doc. 77 at 7 (citing cases).

In this case, Charnoff has not made the requisite showing of control to establish an agency relationship between the St. Pierre Defendants and the others. The affidavits attached to the Motion to Dismiss and the Investment Contract prove the St. Pierre Defendants did not control the operations of the other Defendants and thus, lacked the agency relationship to sustain personal jurisdiction in Colorado. Instead of providing evidence to rebut the lack of control, Charnoff provides a lengthy recitation of facts relating to the other defendants and a smattering of documents that post-date his art purchase by a year or more, but Charnoff's assertions are not compelling.

      a.    **Martin Should be Dismissed for Lack of Jurisdiction**

First, regarding Martin, the affidavit attached as Exhibit A to the Motion to Dismiss shows that Martin never managed, directed, or controlled the operations of Art Port, Art Suite, Studio 41, Nancy, or David. (*See* Doc. 77-1 ¶¶ 17-20.) Martin makes it clear that he had no role in the sale of artwork to Charnoff and did not know Charnoff existed until this lawsuit was filed. (*See* Doc. 77-1 ¶¶ 22-23, 30.) Charnoff has not come forward with any evidence to rebut Martin's affidavit. Charnoff has not shown that Martin controlled the other parties' operations or that Martin explicitly or implicitly authorized Art Port, Nancy, David, or Studio 41 to act on his behalf. Charnoff's *only* allegation regarding Martin is that Nancy told Charnoff Martin knew Alicia had tried to prevent shipment of the art to Charnoff. (Doc. 89-1 ¶ 53.) This allegation is inadmissible

hearsay,[5] but even if this allegation were admissible and true, and it is neither, the allegation that Martin knew his wife discussed the shipping of Charnoff's art does not show that Martin ***controlled*** the other defendants or agreed to create an agency relationship. The Court lacks jurisdiction over Martin and to compel him to litigate in Colorado based on Charnoff's whisper-thin and implausible allegations would offend traditional notions of fair play and substantial justice.

### b.  ISP Holdings Should be Dismissed for Lack of Jurisdiction

Second, regarding ISP, there is a written contract, the Investment Agreement, between ISP and Art Port expressly precluding ISP from controlling the operations of Art Port. That contract states in relevant part that Art Port will "run autonomously from [ISP] and without accountability to [ISP] . . . ." (*See* Doc. 89-19 ¶ 1.B.) The Investment Agreement also states that ISP will not become an owner of Art Port until certain sales goals are met, but they were never met. Indeed, ISP's one-time receipt of $10,000.00 from Art Port is the only payment that ISP ever received in this case. (*See* **Exhibit A**, Bank Statements at Bates No. ISP Holdings 00005 (showing only one payment from Art Port to ISP in September 2016). And while it may be true that ISP invested hundreds of thousands of dollars in Art Port, an agreement to share in the proceeds of a sale is not sufficient to establish an agency relationship. *See Real Equity Diversification, Inc. v. Coville*, 744 P.2d 756, 759 (Colo. App. 1987) (agreement by buyer's broker and seller's

---

[5] In addition to hearsay problems, the allegation is fraught with credibility issues. For example, Plaintiff filed previous affidavits stating that he did not know the exact spelling of the St. Pierres' last name, but in his new affidavit, he has now learned intimate details about what Martin knew or did not know about his wife's activities vis-à-vis Art Port. (*See* Doc. 15-1, Charnoff Aff. ¶ 32, n.1.)

broker to split sales commission did not create agency between seller and buyer's broker). Art Port had no authority to act on ISP's behalf and ISP had no authority to control Art Port's daily operations. ISP is distinct from Studio 41, which had an express contract authorizing Art Port to be Studio 41's agent for the purpose of marketing and selling Garde's paintings. ISP had no minimum contacts to Colorado and should therefore be dismissed.

### c. Alicia Should be Dismissed for Lack of Jurisdiction

Third, regarding Alicia, Charnoff tries to muddy the factual waters by alleging that Nancy told Charnoff at an unknown point in time that Alicia had instructed Nancy to not ship Charnoff's art to him. Once again, this allegation is inadmissible hearsay with serious credibility problems,[6] but it in any event, does not establish an agency relationship.

It is not entirely clear, but Charnoff appears to contend that Nancy's statements to him created an apparent agency between Alicia and Art Port because Charnoff believed that Alicia had the authority to control shipping of his art. But in asserting that Nancy's statements created an apparent agency, Charnoff flip-flops the role of principal and agent. Under Colorado law, an apparent agency can arise when the principal, *i.e.*, Alicia, takes an action that leads a third party, *i.e.*, Charnoff, to believe that the agent, *i.e.*, Nancy, has authority to act on behalf of the principal. *See State Farm Mut. Auto.*

---

[6] It strains credulity to believe that Nancy told Charnoff many specific things about Alicia's supposed role in shipping the art or not shipping the art when Charnoff did not even know her name at the outset of this case.

*Ins. Co. v. Johnson*, 396 P.3d 651, 655-56 (Colo. 2017). In this case, if Charnoff's affidavit is to be believed, it was the agent in the relationship, *i.e.*, Nancy, that made the statements to Charnoff. To allow Nancy's statements to create an agency relationship without the consent of the principal, Alicia, would violate longstanding principals of agency law. Thus, to the extent Charnoff asserts Nancy's statements can form the basis for an agency relationship with Alicia, those assertions must be rejected.

Charnoff also contends that jurisdiction exists over Alicia because she (1) signed as a guarantor on a lease for the Art Suite gallery in April 2018 and (2) described herself as a "Sales Director" of the Art Suite Gallery in 2018 and 2019. None of the documents that Charnoff attaches to his response brief, however, demonstrate that Alicia could control Art Port's operations and thus none of these documents create an agency relationship between Alicia and Art Port to sustain personal jurisdiction.

Most critically, none of Charnoff's exhibits contradict Alicia's sworn testimony that she never exercised any control over Art Port or Art Suite. Alicia may have described herself as a "Sales Director," but the titles used by the parties to describe the relationship are not dispositive. *See Moses v. Diocese of Colo.*, 863 P.2d 310, 324 (Colo. 1993). Charnoff puts forth no evidence that Alicia (versus Nancy's supposed statements to Charnoff) held herself out as being in control of the Art Suite Gallery. There is no email or contract, and it is undisputed that Charnoff never spoke with Alicia or relied on anything she said. Indeed, the only communication that Charnoff has identified in which Alicia is copied is an email from February 12, 2019 from a registrar at the University of Main stating that the registrar was looking forward to speaking with

Alicia about the upcoming Garde show. (*See* Doc. 89-22.) This email does not reflect that Alicia had authority to direct Art Suite Gallery or Nancy, and more importantly, the email is from years after Charnoff purchased his artwork.

Charnoff also overlooks the timing of events. Charnoff purchased his art in ***summer of 2016 and fall of 2017***. (*See* Doc. 11-1 ¶¶ 23 & 28 (Loving Affidavit stating that payments were received from Charnoff in July 2016 and Fall 2017).) Yet, all evidence relating to Alicia's role at the Art Suite Gallery is dated far later. For example,

- The LinkedIn screenshot states that Alicia volunteered as "Sales Director" at Art Suite Gallery beginning in **April 2018.** (*See* Doc. 89-17 (LinkedIn screenshot).)

- The lease guaranteed by Alicia for the Art Suite Gallery located at 466 Piermont Ave. commenced in **May 2018**. (*See* Doc. 98-4, (gallery lease commencing on May 1, 2018.)

- The article regarding the Art Suite Gallery that Charnoff attaches to his response brief also explains that the gallery grand opening is on **September 14, 2018**, one year after his last purchase. (*See* Doc. 89-15.)

- Charnoff attaches a brochure from a showing of Garde's art at the University of Maine that ran from **May 17 to August 31, 2019**, *i.e.*, almost two years after Charnoff had purchased his art. (*See* Doc. 89-14 at 5.)

Charnoff provides no evidence that the gallery on Piermont Ave., where Alicia volunteered as a "Sale Director" even existed when Charnoff purchased his artwork from Art Port in 2016 and 2017.

Lastly, there is no evidence from Loving, Art Port's manager, to suggest that Alicia consented to have Art Port or Loving act as agent for her or the other St. Pierre Defendants. On the contrary, Loving's discovery responses indicate that the relationship between the St. Pierre Defendants and the other Defendants was governed by the

11

terms of the Investment Agreement between ISP and Art Port. (*See* **Exhibit B,** Selected Discovery Responses, Response to Interrogatory No. 5 and Response to RFP No. 10.) There is no evidence of an agency relationship between the Alicia and the other parties and thus, there can be no agency jurisdiction over her.

**B.    CHARNOFF CANNOT STATE A CLAIM FOR UNJUST ENRICHMENT**

    1.    <u>CHARNOFF ERRS ON CHOICE OF LAW</u>

The Motion to Dismiss cites New York and New Jersey law since Art Port is a New York entity and ISP is a New Jersey entity. In his response brief, Charnoff disputes application of these states' laws, but Charnoff's dispute over applicable law is not grounded in the facts and he ignores precedent.[7] He contends that Colorado law must apply since ISP's business was to fund art that sold to Colorado but in reality, ISP invested over $500,000 in a New York entity that marketed and sold art strictly out of New York. The only physical gallery space where art was displayed and marketed was in New York. Other marketing and promotion efforts by Nancy and Art Port took place out of New York where Loving and Hinkelman live, and where Art Port was located. Further contrary to Charnoff's assertion, ISP was not formed solely to invest in Art Port. ISP was formed in November 2011, *i.e.*, two years before Art Port signed the Portfolio Management Agreement with Studio 41, and more than two years before ISP made its first investment into Art Port. ISP's investment into Art Port was one of many

---

[7] The Motion to Dismiss cites 10th Circuit case law and the Fletcher Cyclopedia of the Law of Corporations, the leading treatise on corporate matters, for the position that the law of the state of incorporation typically governs. (Doc. 77 at 11-12.)

investments by ISP into various matters. Thus, application of New York and New Jersey law is appropriate because any Colorado to ISP and the St. Pierres is purely tangential. Regardless of Charnoff's misapplication of choice of law principles, the result is the same under New Jersey, New York, or Colorado law: Charnoff's unjust enrichment claim should be dismissed.

    2.    <u>UNDER ANY APPLICABLE LAW, CHARNOFF'S UNJUST ENRICHMENT CLAIM FAILS</u>

The Motion to Dismiss explains that Charnoff must pierce both the Art Port LLC veil and the ISP corporate veil to state a claim for unjust enrichment. In his response brief, Charnoff contends that he need not pierce the veil because the St. Pierre Defendants personally participated in the actions giving rise to his unjust enrichment claim. Charnoff's argument is, however, contradicted by reality and the allegations of his complaint.

In particular, Charnoff alleges the St. Pierre Defendants obtained a benefit in the form of money that was "*fraudulently* obtained" from him by Art Port. (Doc. 64 ¶ 81 (emphasis added).) Yet, Charnoff has not sued any of the St. Pierre Defendants for fraud and Charnoff concedes that he never communicated with the St. Pierre Defendants. Without any false or misleading statements of fact on which Charnoff could rely, the St. Pierre Defendants could not have personally defrauded him. Charnoff's allegations are particularly deficient against Martin and ISP. He has not set forth any allegations involving these defendants that plausibly support holding them liable for unjust enrichment. And even his allegations against Alicia do not sound in fraud, since

13

Charnoff has not alleged that Alicia played any role in the representations by David and Nancy that induced Charnoff to make his purchases.

Charnoff's arguments regarding the unjust enrichment claim are another example of the internal inconsistencies throughout his claims in this case. He is wrong on the law and his positions lack plausibility. Thus, in the alternative to dismissal for lack of jurisdiction, the unjust enrichment claim should be dismissed for failure to state a claim.

### III.   CONCLUSION

Charnoff never once refers to agency jurisdiction in his briefing, despite alleging in his complaint that an agency doctrine is the only basis for establishing personal jurisdiction over the St. Pierre Defendants. Charnoff's allegations and arguments are internally inconsistent and his application of the law is riddled with errors. Thus, for the reasons above and those set forth in the Motion to Dismiss, the St. Pierre Defendants request that the Motion to Dismiss be granted and that they be awarded attorneys' fees and costs to the fullest extent permitted by law.

Dated: August 18, 2020

ANDERSON LAW GROUP

/s/Thomas H. Wagner
Thomas H. Wagner, #38135
Anderson Law Group
7385 W. Highway 50
Salida, CO  81201
Telephone: (719) 539-7003
tom@anderson-lg.com
Counsel for Defendants Martin St. Pierre, Alicia St. Pierre, and ISP Holdings, Inc.

## **CERTIFICATE OF SERVICE**

I certify that on August 18, 2020, I filed a copy of the foregoing Reply in Support of Motion to Dismiss via CM/ECF, which will deliver electronic notice of the filing to the following:

Ian T. Hicks, Reg. No. 39332
The Law Office of Ian T. Hicks LLC
6000 East Evans Avenue, Building 1, Suite 360
Denver, Colorado, 80222
E-mail: ian@ithlaw.com

Counsel for Plaintiff Walter Charnoff

Elizabeth H. Getches
SHOEMAKER GHISELLI + SCHWARTZ LLC
1811 Pearl Street
Boulder, CO 80302
Telephone: (303) 530-3452
Email: lgetches@sgslitigation.com

Counsel for Defendants Nancy Loving d/b/a Artsuite NY, Art Port, LLC, Studio 41, LLC, David Hinkelman

/s/Thomas H. Wagner
Thomas H. Wagner