**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 19-cv-2381-LTB-MEH

WALTER CHARNOFF

    Plaintiff,

v.

NANCY LOVING, d/b/a ARTSUITE NY, ART PORT LLC,
STUDIO 41, LLC, ALICIA ST. PIERRE, MARTIN ST. PIERRE,
ISP HOLDINGS, INC. and DAVID HINKELMAN

    Defendants.

---

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO COMPEL REGARDING WRITTEN DISCOVERY RESPONSES OF DEFENDANTS NANCY LOVING, ARTPORT LLC, ARTSUITE NY, AND STUDIO 41, LLC**

---

Plaintiff, Walter Charnoff, ("Mr. Charnoff" or "Plaintiff") by and through his undersigned counsel, The Law Office of Ian T. Hicks, LLC, hereby respectfully files his Reply, as follows:

### I. INTRODUCTION

The defense of this case has been, to date, reflective of the complexity of the facts underlying Plaintiff's claims for relief. Plaintiff served written discovery on January 28, 2020 and again on July 9, 2020. Since their first production of documents in connection with their initial disclosures—and after having to repeatedly convince Defendants' counsel that information disclosed Fed. R. Civ. P. 26(a)(1) must be made available for review upon request—there have been ten separate document productions, and far more conferral emails, phone calls, and discussions.

1

Defendants' initial written discovery responses did not provide even a minimal effort at compliance with the letter or the spirit of the discovery rules, and were characterized by matters such as boilerplate general objections, vague reference to unknown documents without any bates pages or description, missing responses, and a nonexistent verification from one of the parties. As stated in Plaintiff's Motion to Compel, there remain a broad array of disputes over precontractual fraudulent misrepresentations and omissions, conflicts regarding what art was promised to, traded for, and reserved to the Plaintiff, and even whether the identity of art shipped (without notice) to the Plaintiff was the art he selected.

These are not casual observations treated as fact. And Plaintiff is not the only one whose dealings with the art gallery run under the name Art Port, LLC and its proprietor, Nancy Loving, have ripened into litigation. Studio 41, LLC, ("S41") presently has an active civil case against Art Port, LLC, ("AP"), and it is now clear that the allegations in that case relate directly to the allegations in the instant litigation, and involve the same art, and the same funds paid by Plaintiff and owed in part to Harold Garde, the artist, as well as the failure of AP and Ms. Loving to provide accurate records and accountings.

There are literally hundreds of text messages, emails, and phone calls between the parties to this discovery dispute, which stretch across the span of at least two years, as well as numerous visits by the parties to New York and Colorado.

It remains disputed by the parties (1) what art was selected, promised to, and reserved to the Plaintiff, (2) whether the items shipped to Plaintiff after he filed litigation are in fact authentic pieces or the same pieces he selected, (3) where the art was stored, how it was cared for, and whether Defendants used his funds to pay to store just his art, as promised, in a single storage unit, or instead charged him to pay for multiple storage units to house other art, in effect subsidizing AP's entire business costs with Plaintiff's money, (4) the tracing, payment, and location of

Plaintiff's payment funds, (5) whether Defendants had the financial ability to undertake the promotional activities necessary to increase the value of Plaintiff's art, and (6) even which Defendants, between Mr. Hinkelman, Ms. Loving, Ms. St. Pierre, and ISP Holdings, Inc., had interests in AP, the nature of those interests, their knowledge of the disputed transactions, and the extent of their management in AP.

Plaintiff specifically identified the precise categories of precontractual misrepresentations and omissions made by Ms. Loving, the post-contractual wrongful acts and omissions of all of the Defendants, where those allegations appear in the operative pleading, and how the requested discovery would tend to prove or disprove those allegations. And while there is complexity inherent in this case given the number of communications, transactions, misrepresentations and omissions, the number of artworks in dispute, and the amount of time involved, it is an inherently simple discovery dispute. None of the information requested is being withheld on the basis of privilege, Defendants have failed to articulate with particularity and concrete facts why the alleged burden, if any, of producing the information outweighs Plaintiff's critical need for that discovery, or why any such burden is undue under the circumstances.

Instead, Defendants rely upon unsupportable mischaracterizations of Plaintiff's claims as sounding in contract and focusing on post-contractual events, when they plainly do not and arguing that responding would pose an undue burden when there are no facts to support such an assertion. What this fundamentally boils down to is the fact that the Defendants believe they are entitled to pick and choose, and decide, what information they will provide and won't provide, based on their adversarial view of what is and is not "relevant," under a narrow and constricted view of that term divorced from the Rules of Civil Procedure and interpretive law. Plaintiff's Motion should be granted in its entirety.

## II.     LEGAL ARGUMENT

A. **Defendants Mischaracterize the Pleadings and the Nature of Plaintiff's Claims.**

Defendants yet again attempt to characterize the operative Complaint as sounding in contract and only dealing with post-contractual acts and omissions. Where Defendants obtain this reading is unclear; Plaintiff's Motion specifically cited to a broad array of discrete pre-contractual misrepresentations and omissions made to induce the purchase of the subject art, and the fact that that only one of the ten operative claims for relief is a contractual claim.

Indeed, of the underlying substantive claims, three of the five are tort claims, one is equitable, and only one is for breach of contract. Regardless, Defendants mischaracterization is moot, because even the breach of contract claim implicates the discovery sought, as it deals with what art was sold to, promised, and selected for Plaintiff, whether the art shipped to him has in fact been improperly switched out for other art, how it was cared for, where it was stored, and whether it was properly insured. Indeed, because of today's order granting Plaintiff's Motion to Supplement and Amend, introducing insurance and damage to the art as issues into the case specifically, the scope of discovery as broadened, not lessened.

Furthermore, as a result of depositions of AP, Ms. Loving, and Mr. Hinkelman that just occurred (no transcript is yet available) this week, it is even more clear that the identity of what was shown to Plaintiff, what was promised to and sold to him, and what was shipped to him, is the subject of vigorous dispute. Only through obtaining the financial and business records of AP can Plaintiff be reasonably able at trial to prove that he was defrauded and that promises to sell him particular artworks were breached, because those works were instead sold to other parties, were not in AP's possession when they were sold, or were otherwise what was represented.

Defendants further deny that discovery regarding AP's financial condition was requested, but this is false; it was in fact sought through multiple interrogatories (numbers 2, 3, 5, and 21) and

4

requests for production (numbers 2 and 8), per Exhibit A attached to Plaintiff's Motion. The information should be provided, and it is critical to Plaintiff's claims for relief.

**B.     Defendant's Productions have been Incomplete and They do not Decide Relevance.**

The overarching thread throughout this case and the Defendants' Response is the contention that Defendants get to pick and choose what portions of their records are relevant, to decide if they have been complete in their responses to discovery, and what is and is not the subject of discovery. In essence, Defendants have handled discovery as if they are the final arbiters of what is true, what is accurate, and what is complete. This is antithetical to the basic principles underlying our Rules of Civil Procedure and the broad scope of discovery afforded under the Rules.

Plaintiff is not required to take Defendants' word for it when they answer a discovery request for a deposition question, but may further inquire of records and information that might show whether that answer to discovery is truthful and complete. *See, e.g., Berger v. Weinstein*, 2008 WL 191172, at *6 (E.D. Pa. Jan. 23, 2008) ("The purpose of the additional discovery was to give Plaintiff the opportunity to trace exactly how Defendant Weinstein spent his money, rather than relying on Weinstein's assurances that he "credited" Plaintiff with certain investments"); *Bautista v. Fantasia Enterprises, Inc.,* 2013 WL 12124616, at *2 (S.D. Fla. July 30, 2013) ("Discovery is in its very early stages and Plaintiff has stated his intent to validate, through discovery, the accuracy of Defendants' tax records and other relevant evidence concerning FLSA coverage. Plaintiff is well within his rights to seek out such validation through discovery."); *Rogue Advocates v. Mountain View Paving, Inc.,* 2017 WL 6540047, at *3 (D. Or. Jan. 31, 2017) ("Moreover, it is impossible for Plaintiff or the Court to verify Defendant's contention without obtaining necessary discovery. Defendant cannot avoid its discovery obligations under the federal rules by claiming it is innocent of any wrongdoing; such an interpretation would eviscerate the need for discovery or litigation in the first place . . . Simply stating that something does not fall

under the permit's coverage without permitting Plaintiff to evaluate and verify this claim undermines the very purpose of discovery.").

Indeed, in the deposition context, which is of course still discovery, Courts have recognized that lawyers responding to discovery do not get to sift through discovery requests, redefine what is being asked or what the case is about, and then preclude the release of potentially damaging information:

> Since the underlying purpose of a deposition is to find out what a witness saw, heard or did, the question and answer conversation must take place between the deposing lawyer and the witness. There is no proper need for the witness's own lawyer to act as an intermediary, interpreting questions, deciding which questions the witness should answer, and helping the witness to formulate answers.
>
> "The witness comes to a deposition to testify, not to indulge in a parody of Charlie McCarthy, with lawyers coaching or bending the witness's words to mold a legally convenient record . . . rather a lawyer must accept the facts as they develop."

*See Vestin Realty Mortg. II, Inc. v. Klaas,* 2010 WL 4259946, at *3 (S.D. Cal. Oct. 25, 2010) (quoting *Hall v. Clifton Precision*, 150 F.R.D. 525, 528 (E.D. Pa. 1993)).

But that is precisely what Defendants have advocated, and in fact, practiced, throughout this litigation. Their Response characterizes this as a contract case, where there is only one contractual claim, three tort claims, and one equitable claim. They falsely claim financial records were never requested, when they were requested many times in different discovery requests specified to different areas of inquiry, across a broad spectrum of facts, times, and subject areas. And their history in defending this case fails to quell the Plaintiff's concerns of incomplete disclosure; when Defendants claimed not to have a copy of the lease, which they said was irrelevant, four months later they produced it, then produced it signed, and it showed that Alicia St. Pierre was on the lease and personally guaranteed its performance, which not only validated Plaintiff's assertions of Ms. Loving's statements that she had signed the lease, but also showed

6

that Ms. St. Pierre was far from a passive investor through an entity, with no business or personal relationship to Ms. Loving or the gallery.

The bullet points provided by Defendants on pages 4-5 of their Response are without merit. First, Defendants claim that investments and transfer of funds into and out of AP are not relevant, but earlier in the case they claimed no monies went to the St. Pierres and in fact there were funds that went to them, as was later learned.  Plaintiff is entitled to discover the full tracing of his funds into and out of the same account, if any, that paid the St. Pierres for purposes of unjust enrichment.

Moreover, and more importantly, the financial records will show what art was sold, whether Plaintiff's art was switched out for other art and sold to other parties as alleged (the monetary amounts paid will help with business records to identify and track inventory and what artworks were sold and what was in AP's possession when Plaintiff was shown various pieces of art to solicit his purchase), and whether insurance monies were paid to insure the art as promised, now that it is unquestionably damaged and that damage is part of the case.  Second, the internal communications of the business are a basic category of information that could prove or disprove the same facts, and whether Ms. St. Pierre was involved in the decisions to breach contractual obligations to the Plaintiff, as Ms. Loving told Plaintiff she was.  Third, Defendants yet again misrepresent that no communications were requested, but this is refuted by interrogatories numbered 1, 2, 3, 6, 18 and request for production 1, 4, 5, 8, 12, 13, and 23.

The word "communication" is used 22 separate times in the discovery requests, yet Defendants contend that information was never sought.  Bullet points 4-6 have been addressed already.  Bullet point seven states that all storage receipts have been produced.  Only the receipts for one unit was produced, and it involved a storage unit that was obtained and rented several months before Plaintiff bought any art, so it clearly does not relate to his art.  All Defendants have

7

to do is obtain invoices for the three storage units Plaintiff saw, physically, and this is likely to be no mor than 20 pages of documents, from the storage facility.

<u>This is absolutely critical, because the reason Defendants refused to ship the art was precisely because the allegation Plaintiff did not pay for his storage fees</u>, but if in fact Defendants were seeking to make Plaintiff pay for the storage of his art and other art, then he breached no obligation because his storage unit was only supposed to be for his art.  And, in turn, a false pretextual reason for not shipping the art turns that retention of the art into civil theft both of the art and Plaintiff's $186,000.00..[1]  Defendants are seeking to recover storage costs through their counterclaim, as well, and Plaintiff should be entitled to discovery of all three storage units from 2015 through the commencement of this action in July of 2019.

Finally, the request for tax returns will validate, support, or verify a broad array of allegations in the operative Complaint, including who was and was not a member of AP at various times (Mr. Hinkelman admitted at his deposition that he filed a declaration in this case that stated in several places, falsely and under oath, that he was not a member or was a member of AP at various times), what amounts were received, what income was made, the tracing of Plaintiff's funds, and whether certain expenditures were written off but then later used as a basis to refuse to ship Plaintiff's art.  Proving negatives and taking Defendants' word for it simply aren't the purposes or the goals of discovery.  It is intended instead to avoid surprise at trial, level the playing field, and permit the parties to have equal access to information.

It is also notable that the same business records and financial records Plaintiff is seeking are the subject of a pending civil suit by S41 against AP in Florida.  *See* Complaint, attached as <u>Exhibit A</u>.  That suit implicates the same records sought here, and in fact appears to apply to the

---

[1] The civil theft statute applies not just to takings that are unauthorized in the first instance, but also the retention of monies or items of value after that retention becomes clearly unauthorized due to the occurrence of subsequent events.  *See* C.R.S. §§ 18-4-401 and 405.

same artworks and payments made by Plaintiff, which indicates there is a dispute over how Plaintiff's monies and artworks were handled and reported to S41.  That the Defendants are litigating over the same information implicating the same subject-matter as Plaintiff's claims demonstrates, compellingly, the need for the discovery requested.  Plaintiff needs to confirm the veracity of the allegations in that suit and to confirm the relative culpability between the various Defendants for purposes of settlement negotiations and pretrial preparations.

### III.  CONCLUSION

The scope of discovery is broad, the information sought is not privileged, and any need for confidentiality as to third parties can be addressed through a stipulated protective order.  Plaintiff critically needs the information to prove his claims and defend the counterclaim.  The Motion to Compel should thus be granted.

Dated this 28th day of August, 2020

*/s/ Ian T. Hicks, Esq.*
Ian T. Hicks, Reg. No., 39332
The Law Office of Ian T. Hicks LLC
Attorney for Plaintiff
6000 East Evans Avenue, Suite 1-360
Denver, Colorado, 80222
Telephone: (720) 216-1511
Facsimile: (303) 648-4169
E-mail: ian@ithlaw.com

### **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 28th day of July, 2020, the foregoing Reply was

filed via CM/ECF, and served upon the following:

**Shoemaker Ghiselli + Schwartz, LLC**
Elizabeth H. Getches
Cynthia A. Mitchell
SHOEMAKER GHISELLI + SCHWARTZ LLC
1811 Pearl Street
Boulder, CO 80302
Telephone: (303) 530-3452
FAX: (303) 530-4071

Thomas H. Wagner, #38135
Anderson Law Group
7385 W. Highway 50
Salida, CO 81201
Telephone: (719) 539-7003
tom@anderson-lg.com
Counsel for Defendants Martin St. Pierre, Alicia St. Pierre, and ISP Holdings, Inc.

<u>s/Ian T. Hicks, Esq.</u>

Email: lgetches@sgslitigation.com
Attorney for Defendants

Thomas H. Wagner, #38135
Anderson Law Group
7385 W. Highway 50
Salida, CO 81201
Telephone: (719) 539-7003
tom@anderson-lg.com
Counsel for Defendants Martin St. Pierre, Alicia St. Pierre, and ISP Holdings, Inc.

*s/Ian T. Hicks, Esq.*