IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-02381-LTB-MEH

WALTER CHARNOFF,

    Plaintiff,

v.

NANCY LOVING d/b/a ARTSUITE NY,
ARTPORT, LLC,
STUDIO 41, LLC,
DAVID HINKELMAN,
ISP HOLDINGS, INC.,
ALICIA ST. PIERRE, and
MARTIN ST. PIERRE,

    Defendants.

_____

### RECOMMENDATION OF UNITED STATE MAGISTRATE JUDGE
_____

**Michael E. Hegarty, United States Magistrate Judge**.

Plaintiff Walter Charnoff ("Plaintiff") asserts eleven claims in his operative Second Amended Complaint ("SAC") against Defendants. ECF 64. Defendants Alicia St. Pierre ("Ms. St. Pierre"), Martin St. Pierre ("Mr. St. Pierre"), and ISP Holdings, Inc. ("ISP") (collectively, "St. Pierre Defendants") have filed the present "Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim" ("Motion"), primarily seeking dismissal based on the alleged lack of personal jurisdiction. ECF 77. Plaintiff brings a claim for unjust enrichment against the St. Pierre Defendants, and claims for civil conspiracy and intentional interference with contractual relations against ISP and Ms. St. Pierre. The St. Pierre Defendants request that the Court dismiss the unjust enrichment claim if it denies their Motion on personal jurisdiction. The Motion is fully briefed

and has been referred to this Court for a report and recommendation by the Honorable Lewis T. Babcock. As set forth below, this Court respectfully recommends **granting** Defendants' Motion for lack of personal jurisdiction.

## BACKGROUND

The following are relevant factual allegations (as opposed to legal conclusions, bare assertions, or merely conclusory allegations) which are taken as true for analysis under Fed. R. Civ. P. 12(b)(2) pursuant to *OMI Holdings, Inc. v. Roayl Ins. Co.*, 149 F.3d 1086, 1091 (10th Cir. 1998).

### I. The Parties

Plaintiff is a resident of Colorado. SAC at ¶ 1. Defendant Nancy Loving ("Ms. Loving") is a resident of New York. *Id.* at ¶ 2. Ms. Loving operates an art gallery located in New York known as Artsuite NY ("Artsuite"). *Id.* at ¶ 3. Ms. Loving is also the chief operating officer of Defendant Art Port, LLC ("Art Port"), a New York limited liability company. *Id.* at ¶ 4. Defendant Studio 41, LLC ("Studio 41") is a Delaware limited liability company that is utilized by Harold Garde ("Mr. Garde"), an American painter, for business. *Id.* at ¶ 5. Defendant David Hinkelman ("Mr. Hinkelman") is a resident of New York, Ms. Loving's "life partner," and former owner of Art Port. *Id.* at ¶ 9. Defendants Alicia St. Pierre and Martin St. Pierre are residents of New Jersey. *Id.* at ¶¶ 6–7. They own and manage Defendant ISP Holdings, Inc., a New Jersey Corporation. *Id.* at ¶ 8.

### II. The Investment Agreement

ISP invested in Art Port through a loan. Affidavit of Martin St. Pierre, Exh. 1 (found at ECF 76-1). A Limited Membership Investment Agreement ("Investment Agreement") memorializes the loan, stating that ISP "wishes to make an investment in Art Port in exchange for

2

a percentage of Art Port Membership specific to the Studio 41 Agreement solely, after recoupment of the Initial Investment and/or the Additional Investment." *Id.* As of September 30, 2019, ISP's loan had not been repaid. *See* ECF 21-3, Hinkleman Declaration ¶ 4.

### III.    Plaintiff Purchases Artwork

Beginning in 2016, Ms. Loving and Plaintiff engaged in conversations regarding the purchase of Mr. Garde's artwork. SAC at ¶ 13. Ms. Loving communicated with Plaintiff through Artsuite, Art Port and Studio 41. *Id.* at ¶¶ 15–16, 18. Plaintiff paid for his first purchase of art in August 2016. *Id.* at ¶ 35. The next year, while visiting Mr. Hinkleman and Ms. Loving, Plaintiff noticed damage to one piece of art he had purchased, a painting referred to as "Two Vessels." *Id.* at ¶¶ 43–46. Plaintiff apparently reached an agreement with Ms. Loving concerning some form of credit for the damage done to "Two Vessels." *Id.* at ¶ 47. Nevertheless, Plaintiff purchased additional artwork from Ms. Loving. *Id.* at ¶ 53. In total, Plaintiff spent approximately $186,000 on his purchases. *Id.* at ¶ 66. Plaintiff's lawsuit primarily stems from the alleged damage done to paintings, delays or refusals in shipping the artwork, and misrepresentations made to him. *Id.* at ¶¶ 87–119.

## LEGAL STANDARDS

### I.    Dismissal Pursuant to Fed. R. Civ. P. 12(b)(2)

"Jurisdiction to resolve cases on the merits requires . . . authority over the parties (personal jurisdiction), so that the court's decision will bind them." *Gadlin v. Sybron Int'l Corp.*, 222 F.3d 797, 799 (10th Cir. 2000) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999)). When no evidentiary hearing is held "the plaintiff need only make a prima facie showing that jurisdiction exists." *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995); *see also Old Republic Ins. Co. v. Continental Motors, Inc.*, 877 F.3d 895, 900 (10th Cir. 2017). "The plaintiff

3

may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *OMI Holdings, Inc.*, 149 F.3d at 1091 (10th Cir. 1998); *see also Old Republic Ins. Co.*, 877 F.3d at 900.

> The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits.  If the parties present conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party.  However, only the well ple[a]d[ed] facts of plaintiff's complaint, as distinguished from mere conclusory allegations, must be accepted as true.

*Wenz*, 55 F.3d at 1505 (citations and internal quotation marks omitted).  "[T]o defeat a plaintiff's prima facie showing of jurisdiction, a defendant must present a compelling case demonstrating that the presence of some other considerations would render jurisdiction unreasonable." *OMI Holdings, Inc.*, 149 F.3d at 1091 (citation and internal quotations omitted).  "If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." *Behagen v. Amateur Basketball Ass'n of U.S.A.*, 744 F.2d 731, 733 (10th Cir. 1984).

## ANALYSIS

### I.    Specific Jurisdiction

"The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Walden v. Fiore*, 571 U.S. 277, 283 (2014).  The law of the forum state and constitutional due process limitations govern personal jurisdiction in federal court. *Intercon, Inc. v. Bell Atl. Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000); *see* Fed. R. Civ. P. 4(k)(1)(A).  Colorado's long-arm statute, Colo. Rev. Stat. § 13–1–124, extends jurisdiction to the Constitution's full extent. *Benton v. Cameco Corp.*, 375 F.3d 1070, 1075 (10th Cir. 2004); *Mr. Steak, Inc. v. District Court*, 574 P.2d 95, 96 (1978) (en

4

banc). Thus, the specific personal jurisdiction analysis here is a single due process inquiry. *See Benton*, 375 F.3d at 1075.

When evaluating personal jurisdiction under the due process clause, the Tenth Circuit conducts a two-step analysis. At the first step, the court examines "whether the non-resident defendant has 'minimum contacts' with the forum state such 'that he should reasonably anticipate being haled into court there.'" *TH Agric. & Nutrition, LLC v. Ace European Grp., Ltd.,* 488 F.3d 1282, 1287 (10th Cir. 2007) (citations omitted). If the defendant has sufficient contacts, the court then asks whether "exercise of jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice,'" that is, whether the exercise of jurisdiction is "reasonable" under the circumstances of a given case. *Id.* (citations omitted). "This analysis is fact specific." *ClearOne Commc'ns, Inc. v. Bowers*, 643 F.3d 735, 763 (10th Cir. 2011) (quoting *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1159 (10th Cir. 2010)).

    A.    <u>Ms. St. Pierre and ISP</u>

Plaintiff's claims against Ms. St. Pierre and ISP sound in tort. SAC at ¶¶ 110–119 (civil conspiracy and intentional interference with contractual relations). "Under the Colorado long arm statute, a person is subject to the jurisdiction of the courts of Colorado, 'concerning any cause of action arising from the commission of a tortious act within [the] state.'" *Oaster v. Robertson*, 173 F. Supp. 3d 1150, 1166 (D. Colo. 2016) (citing *AST Sports Sci. Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054, 1060 (10th Cir. 2008)). Thus, the Court must consider two questions. First, the Court must "determine whether the [complaint] alleges the commission of a tortious act within the state." *Id.* Second, "the Court must 'undertake a particularized inquiry as to the extent to which the defendant has purposefully availed [him]self of the benefits of the forum's laws.'" *Id.* (quoting *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1199–1200 (Colo. 2005)).

5

A tortious act "implies the total act embodying both the cause and its effect." *Classic Auto Sales, Inc. v. Schocket*, 832 P.2d 233, 235 (Colo. 1992) (citation omitted). "[H]owever, it is not necessary that both the tortious conduct constituting the cause and the injury constituting the effect take place in Colorado. Instead, [Colorado courts] have held the statute to be satisfied when only the resulting injury occurs in this state." *Id.* at 235–36 (citations omitted); *see AST Sports Sci.*, 514 F.3d at 1060–61 ("The threshold jurisdictional requirement is established when it is demonstrated . . . that tortious conduct in another state ultimately caused injury in Colorado . . .") (citation and quotation marks omitted). In this case, Plaintiff allegedly paid for artwork that he would place in his Colorado home. Plaintiff alleges he spent over $186,000 but did not receive the full bargain of his payment due, in part, to the conduct of Ms. St. Pierre and ISP. The Court finds this sufficient to establish that Plaintiff's alleged injury occurred in Colorado. Thus, the Court has jurisdiction over Ms. St. Pierre and ISP, "provided that exercising jurisdiction over [them] comports with due process." *AST Sports Sci.*, 514 F.3d at 1061.

Next, the Court considers the extent to which Ms. St. Pierre and ISP have purposefully availed themselves "of the benefits of the forum's laws." *Archangel*, 123 P.3d at 1200. Put differently, the Court looks to whether "a defendant has 'purposefully directed' his activities toward the forum state, and if the lawsuit is based upon injuries that 'arise out of' or 'relate to' the defendant's contacts with the state." *Oaster*, 173 F. Supp. 3d at 1163 (quoting *Burger King Corp. Rudzewicz*, 471 U.S. 462, 472 (1985)).

Ms. St. Pierre has never been to Colorado. ECF 77-2, Affidavit of Alicia St. Pierre at ¶ 6. She has never communicated directly with Plaintiff. *Id.* at ¶ 22. Plaintiff does not dispute these assertions. In fact, Plaintiff admits in his SAC that "the St. Pierres, personally or through ISP, did not travel to Colorado." SAC at ¶ 10. Rather, Plaintiff argues the St. Pierre Defendants "are

6

nevertheless subject to specific personal jurisdiction in Colorado because their liability arises out of the wrongful acts and omissions committed against the Plaintiff by the remaining Defendants, especially [Ms. Loving] and [Art Port], who were acting as their agents for purposes of transactions at issue in this litigation." SAC at ¶ 10. Additionally, Plaintiff does not address independent minimum contacts by the St. Pierre Defendants in his response; that is, Plaintiff discusses any contact with this forum in the context of the other Defendants. Resp. at 14  As such, the Court will presume Ms. St. Pierre and ISP independently lack minimum contacts with Colorado and will focus instead on Plaintiff's agency theory of jurisdiction.

"To establish this agency theory of personal jurisdiction under Colorado's long-arm statute, the jurisdictional facts must connect the actions of the agent to the principal by either 'the transaction of any business' or 'the commission of a tortious act' within the state." *Goettman v. N. Fork Valley Rest*, 176 P.3d 60, 67 (Colo. 2007) (en banc). "[A] plaintiff need only make a prima facie showing of the connection between the actions of the agent and the principal to defeat a motion to dismiss for lack of personal jurisdiction." *Id.* at 68. In establishing the agency relationship, the plaintiff must plead facts evincing the "manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." *Filho v. Rodriguez*, 36 P.3d 199, 200 (Colo. App. 2001) (quoting *City & Cty. Of Denver v. Fey Concert Co.*, 960 P.2d 657, 660 (Colo. 1998)). "Such relationship cannot be presumed but must be clearly demonstrated." *Shepherd v. U.S. Olympic Committee*, 94 F. Supp. 2d 1136, 1142 (D. Colo. 2000).

Plaintiff has presented evidence that he claims shows Ms. St. Pierre is a director for ArtSuite Gallery, an entity Plaintiff claims is a fictious name for Art Port. *See* Resp., Exh. 13 (acknowledging "Nancy Loving and Aly St. Pierre . . . through their gallery ArtSuite"); Exh 14

7

(magazine article labeling Nancy Loving and "Aly St. Pierre" as "ArtSuite's Gallery Directors"); Exh. 15 (event description noting Nancy Loving and "Aly St. Pierre" were "gallery directors" of "ArtSuite Gallery"). The Court notes that each cited exhibit is dated 2018 or later. Exh. 13 (2019); Exh. 14 (September/October 2018); Exh. 15 (September 21, 2018). Plaintiff's purchases of art occurred earlier. *See* SAC at ¶¶ 11 (first purchase in 2016); 13 (second purchase in 2017). Plaintiff has provided no evidence, then, of Ms. St. Pierre's involvement as a director during the relevant times in his SAC.

Plaintiff alleges Ms. St. Pierre is "an owner of [Art Port]" and has "joint control and coequal decision-making authority over [Art Port's] business operations." SAC at ¶ 6. Plaintiff supports this assertion by representing in a declaration that "Ms. Loving informed [him] that she had two business partners, Alicia and Martin St. Pierre." Resp., Exh. A at ¶ 53. Moreover, Plaintiff contends that Ms. Loving told him that "the St. Pierres were aware of the terms of the first and second purchase[s]" and "Ms. St. Pierre comanaged the business of [Art Port], had equal decision-making authority, and as a director of sales had to approve all sales and the related terms of those sales." *Id.*

Despite these assertions, Plaintiff has not demonstrated a prima facie agency relationship between Ms. St. Pierre and the other Defendants. To impute the contacts of Nancy Loving and Art Port to Ms. St. Pierre, Plaintiff needs to clearly demonstrate that Ms. Loving or Art Port were the agents of Ms. St. Pierre. *Shepherd*, 94 F. Supp. 2d at 1142. Plaintiff has produced no formal contract establishing such an agency relationship. Ms. Loving never identified herself as the agent of Ms. St. Pierre. Even accepting as true Plaintiff's assertions that Ms. St. Pierre was Ms. Loving's business partner, comanaged the business of Art Port, and was aware of Plaintiff's purchases, these allegations alone do not establish that Ms. Loving or Art Port acted as agents of Ms. St. Pierre.

>Plaintiff's potentially strongest allegations are that Ms. Loving told him that Ms. St. Pierre
>
>(1) refused to trade back the painting Two Vessels, as previously promised, because it was more valuable than the painting [Plaintiff] and Ms. Loving agreed [he] could trade, (2) would not allow [Art Port] to cover shipping costs, despite Ms. Loving's previous promise to do so, unless [he] agreed to pay an extra $5,000.00 [he] did not ow, (3) told Ms. Loving not to ship the art, unless [he] paid an extra $1,500.000 that I did not owe, and (4) tried to force me to sign the contract containing the 'as-is' clause, which would mean [he] was essentially accepting any defects or damage in the art.

Resp., Exh. A at ¶ 55.  Essentially, Plaintiff implies that Ms. St. Pierre exercised authority over Ms. Loving in a principal-agent relationship through the alleged conduct.  However, Plaintiff only has personal knowledge over what Ms. Loving told him; in other words, Plaintiff does not have personal knowledge that what Ms. Loving told him was actually said to her by Ms. St. Pierre. "Affidavits submitted in support of or in opposition to the motion to dismiss for lack of jurisdiction must comply with the requirements of Rule 56(e)." *Consumer Crusade, Inc. v. JD&T Enterprises, Inc.*, 05-cv-00211-EWN-MJW, 2005 WL 8178491, at *3 (D. Colo. Oct. 17, 2005).  Part of the requirements of Fed. R. Civ. P. 56(e) is "personal knowledge." *Id.*  When the affidavit is not based on personal knowledge, the Court may disregard the assertions made. *Id.* at *4 (Court declined "to accept . . . affidavit consisting of hearsay statements on important facts relating to personal jurisdiction.").  Since the allegations in paragraph 55 do not stem from Plaintiff's personal knowledge, the Court will not consider them.

Even if the Court accepted Paragraph 55 of Plaintiff's declaration, the allegations do not establish an agency relationship.  Ms. St. Pierre may have told Ms. Loving not to ship the art or to demand additional payments, but that does not conclusively demonstrate that Ms. Loving was the agent of Ms. St. Pierre.  The allegations alone do not show manifestation of consent by either party to be bound to an agency-type relationship. *Filho*, 36 P.3d at 200.  Thus, Plaintiff does not plead or provide evidence clearly demonstrating the existence of an agency relationship. *Shepherd*, 94

9

F. Supp. 2d at 1142. The Court finds Plaintiff has not established a prima facie showing of agency jurisdiction over Ms. St. Pierre.

Similarly, Plaintiff does not provide sufficient, independent minimum contacts[1] concerning ISP for the Court to assert personal jurisdiction over it as a New Jersey entity; rather, he relies on agency jurisdiction. SAC at ¶ 10. Like with Ms. St. Pierre, Plaintiff fails in establishing agency jurisdiction over ISP. The Investment Agreement memorializes the contractual relationship between Art Port and ISP. *See* Reply, Exh. B, Response to Interrogatory No. 5. The Investment Agreement provides that "Art Port's managers shall consult with [ISP] should there be a material operating expenditure required by Art Port in excess of Fifty Thousand ($50,000.00) dollars related solely to the Studio 41 Agreement. Notwithstanding anything else herein to the contrary, [ISP] hereby acknowledges that it shall not be involved in the day to day operations of Art Port." ECF 76-1 at 3. Though Art Port's managers must consult with ISP on deals exceeding fifty thousand dollars, there is no indication that ISP has any control in preventing Art Port from acting as it wishes. Moreover, although ISP gains a percentage of ownership of Art Port after the loan is repaid, ISP is explicitly prevented from involving itself in the day to day operations of Art Port.[2] ISP acknowledged "that Art Port will run autonomously from" it. *Id*. The Court finds there is no manifestation of consent between ISP and Art Port for the latter to act as the former's agent. Accordingly, the Court finds Plaintiff fails to establish a prima facie showing of agency jurisdiction over ISP.[3]

---

[1] This is true for the same reasons explained above with respect to Ms. St. Pierre.

[2] As of 2019, the loan still had not been repaid, suggesting that ISP did not have any ownership over Art Port at the time of Plaintiff's purchases of art. *See* ECF 21-3, Hinkleman Declaration ¶ 4.

[3] Because the Court finds there were no minimum contacts with Colorado or agency jurisdiction over Ms. St. Pierre and ISP, the Court did not engage in the second inquiry of whether exercising jurisdiction would offend "traditional notions of fair play and substantial justice." *TH Agric.,*

Therefore, the Court respectfully recommends that Judge Babcock grant the motion to dismiss as to Ms. St. Pierre and ISP for lack of specific personal jurisdiction.

B.     Mr. St. Pierre

Because the only claim brought against Mr. St. Pierre is a claim for unjust enrichment, which does not sound in tort, a separate analysis from Ms. St. Pierre and ISP is required. The Court must first address whether Mr. St. Pierre had minimum contacts with Colorado. *TH Agric.,* 488 F.3d at 1287. For similar reasons as explained above regarding Ms. St. Pierre, the Court finds there are insufficient contacts with Colorado to assert personal jurisdiction over Mr. St. Pierre. He has only ever been to Colorado when making a connecting flight at Denver International Airport. ECF 77-1 at ¶¶ 6–7. Mr. St. Pierre has not communicated "with anyone in Colorado regarding any business matters." *Id.* at ¶ 9. Plaintiff even admits that the "claims against Mr. St. Pierre are more limited." Resp. at 4 n.2. Plaintiff has not pleaded sufficient facts or provided evidence demonstrating Mr. St. Pierre's minimum contacts with Colorado. Hence, the Court finds it cannot exercise personal jurisdiction based on Mr. St. Pierre's independent contacts. *TH Agric.,* 488 F.3d at 1287.

As with the other St. Pierre Defendants, Plaintiff urges the exercise of agency jurisdiction over Mr. St. Pierre. Again, the Court finds Plaintiff fails to establish the agency relationship. Plaintiff argues that this Court should exercise jurisdiction, because he "provided specific factual evidence that [Mr. St. Pierre] knew he was gaining a financial benefit from wrongfully-obtained

---

488 F.3d at 1287. The Court notes, though, that this inquiry "evokes a sliding scale: the weaker the plaintiff's showing on [minimum contacts] the less a defendant need show in terms of unreasonableness to defeat jurisdiction." *AST Sports Sci.*, 514 F.3d at 1061 (quoting *Pro Axess, Inc. v. Orlux Distribution, Inc.*, 428 F.3d 1270, 1280 (10th Cir. 2005) (alterations in original)). Due to the lack of minimum contacts with Colorado, exercising jurisdiction over Ms. St. Pierre or ISP would likely violate the Due Process Clause for offending traditional notions of fair play and substantial justice.

funds." Resp. at 21.  This "evidence" is that Ms. Loving told Plaintiff about Ms. St. Pierre's telling Ms. Loving not to ship the art to Plaintiff.  Resp., Exh. A at ¶¶ 53, 55.  But simply being aware of Ms. St. Pierre's alleged actions does not imply that Mr. St. Pierre exercised any degree of control over Ms. Loving or Art Port.  There are no allegations or cited evidence that demonstrate a manifestation of consent for Ms. Loving or Art Port to act as Mr. St. Pierre's agents.  *Filho*, 36 P.3d at 200.  Without those, there is no basis for this Court to exercise agency jurisdiction over Mr. St. Pierre.[4]

Therefore, the Court respectfully recommends Judge Babcock grant the St. Pierre Defendants' Motion as to Mr. St. Pierre for lack of specific personal jurisdiction.

## II.     General Jurisdiction

Finally, having found there is no specific jurisdiction over the St. Pierre Defendants, the Court considers whether there is general jurisdiction over them.  "General jurisdiction exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state."  *Fairbrother v. Am. Monument Found., LLC*, 340 F. Supp. 2d 1147, 1153 (D. Colo. 2004) (quoting *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 618 (1st Cir. 2001)).  There must be "a substantial amount of contacts with the forum state."  *Id.* (quoting *Trierweiler v. Croxton and Trench Holding Corp.*, 90 F.3d 1523, 1533 (10th Cir. 1996)).  In this case, the Court did not find the existence of minimum contacts.  There is no basis, then, for the Court to find "continuous and systematic activity" by the St. Pierre Defendants in Colorado.  Accordingly, the Court respectfully

---

[4] For the same reasons stated in footnote 3, the exercise of personal jurisdiction over Mr. St. Pierre would also likely offend traditional notions of fair play and substantial justice.

recommends Judge Babcock also grant the St. Pierre Defendants' Motion for lack of general jurisdiction.[5]

## **CONCLUSION**

The Court respectfully RECOMMENDS that Judge Babcock **GRANT** the St. Pierre Defendants' Motion to Dismiss [filed March 9, 2020; ECF 77] pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction.[6]

Entered this 8th day of September, 2020, at Denver, Colorado.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge

---

[5] Since the Court recommends dismissal of the St. Pierre Defendants pursuant to Fed. R. Civ. P. 12(b)(2), the Court does not consider the St. Pierre Defendants' Fed. R. Civ. P. 12(b)(6) arguments.

[6] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted or adopted by the District Court. *Duffield v. Jackson*, 545 F.3d 1234, 1237 (10th Cir. 2008) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)).