**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 19-cv-2381-MEH

WALTER CHARNOFF

    Plaintiff,

v.

NANCY LOVING d/b/a ARTSUITE NY, STUDIO 41, LLC, DAVID HINKELMAN, ISP HOLDINGS, INC., ALICIA ST. PIERRE, MARTIN ST. PIERRE

    Defendants.

---

**PLAINTIFF'S OBJECTION TO MAGISTRATE RECOMMENDATION TO GRANT MOTION TO DISMISS FOR LACK OF JURISDICTION PURSUANT TO FED. R. CIV. P. 12(b)(2) FILED BY DEFENDANTS ISP HOLDINGS, INC., ALICIA ST. PIERRE, AND MARTIN ST. PIERRE**

---

Plaintiff, Walter Charnoff, ("Plaintiff" or "Plaintiff") by and through his undersigned counsel, The Law Office of Ian T. Hicks, LLC, hereby respectfully files his Objection:

### I.    INTRODUCTION AND PROCEDURAL HISTORY

Defendants ISP Holdings, Inc., Alicia St. Pierre, and Martin St. Pierre (the "ISP Defendants") filed a Motion to Dismiss for Lack of Jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(2), supported by two affidavits, marked Exhibits A and B. Plaintiff filed a Response, supported by his own affidavit, marked as Exhibit A, which included Exhibits 1-21. Plaintiff sought and obtained limited jurisdictional discovery, filed a Supplement to the Response, supported by Exhibits 1-6, and the ISP Defendants filed a Reply with Exhibits A-B. Magistrate

Judge Hegarty issued a Recommendation, which recommended that the Court grant the ISP Defendants' Motion under Fed. R. Civ. P. 12(b)(2).  No evidentiary hearing was held.

## II.   BASIS FOR OBJECTIONS TO MAGISTRATE RECOMMENDATION AND REQUEST FOR DE NOVO REVIEW

Plaintiff respectfully objects to the Recommendation on the following grounds:

(1) it erroneously concluded that evidence of Ms. St. Pierre's statements to Nancy Loving, which were then repeated to Plaintiff, constituted inadmissible hearsay for which Plaintiff lacked personal knowledge[1] and (2) it applied the incorrect legal standard to Plaintiff's Response, by requiring Plaintiff to provide "conclusive" proof of an agency relationship.[2]

When these issues are resolved, it becomes clear that based on the facts alleged in Plaintiff's Affidavit, Exhibits 1-21 to that Affidavit, Exhibits 1-6 of the Supplement, the uncontested allegations in the Second Amended Complaint ("SAC") then operative, and the arguments presented in the Response and Supplement, Plaintiff stated a prima facie case of specific personal jurisdiction over the ISP Defendants on several grounds.

More specifically, Plaintiff demonstrated that (1) Ms. Loving was acting as an agent of the ISP Defendants and AP with respect to the factual basis of the claims against those Defendants, and (2) the ISP Defendants purposefully directed their activities at Colorado through their conspiracy with Ms. Loving and AP.

---

[1] The Recommendation, inconsistent with this determination, relied upon statements made by Ms. Loving in her written discovery responses to Plaintiff, which the ISP Defendants attached to their Reply, as evidentiary support for the ISP Defendants' arguments.  This inconsistency allowed the ISP Defendants to rely upon statements by Ms. Loving but precluded Plaintiff from relying upon the same type of evidence.

[2] The ISP Defendants' Reply contained new arguments, new exhibits, and new theories because they were forced to wholly abandon the central legal and evidentiary premise of their Motion to Dismiss when it was shown to be supported by false statements made under oath, primarily in the Affidavit of Ms. St. Pierre, which was <u>Exhibit B</u> to the Motion.

Plaintiff further respectfully requests that the Court conduct a de novo review of the Motion to Dismiss, Response, Supplement, and Reply, and enter an order overruling the Recommendation and deny the Motion to Dismiss.

## III. FACTUAL AND EVIDENTIARY BACKGROUND

The claims against the ISP Defendants are inextricably intertwined with the claims against the remaining Defendants—AP, Ms. Loving, Mr. Hinkelman, and Studio 41, LLC ("S41")—over whom the Court previously determined it had personal jurisdiction.[3]

This case arises out of the purchase of art created by Harold Garde, which were solicited and sold by Ms. Loving and unlawfully retained until after this civil action was filed. Ms. Loving, during the events alleged in the SAC, was doing business through AP, under the fictitious name ArtSuite ("AS"), while acting as the exclusive agent for Mr. Garde, who does business through his entity S41. Ms. Loving, on behalf of AP, as the Court previously found, travelled to Colorado to solicit Plaintiff's purchases on several different occasions, formed a contract with Plaintiff for the first and second purchases of art in Colorado, and repeatedly communicated with Plaintiff while he was physically located in Colorado. Mr. Hinkelman was likewise part and parcel of these solicitation efforts, and then communicated with Plaintiff throughout the parties' ongoing disputes on behalf of AP.

The claims against these Defendants focus on two distinct time periods, including before the art was purchased, which was characterized by fraudulent misrepresentations and omissions used to induce Plaintiff's purchase, and after the art was purchased, a time characterized by refusals to ship the art for over a year—despite payment—injecting new terms into the parties'

---

[3] The evidence supporting this factual background is found in the statement of material facts and supporting Exhibits in Plaintiff's Response, at pages 5-13.

agreement, repeated physical damage to the art, efforts to bait and switch the purchases, and a maddening litany of ever-changing promises. Once Ms. Loving, Mr. Hinkleman, AP, and S41 separated Plaintiff from his purchase funds in the amount of $186,000.00—while continuing to retain the art, despite payment, in an effort to extract further non-bargained for concessions—the ISP Defendants conspired with Ms. Loving, Mr. Hinkleman, and AP to steal additional money from the Plaintiff and retain art that belonged to the Plaintiff, in an effort to maximize and protect their investment in AP at Plaintiff's expense.

In fact, Plaintiff's Affidavit filed with his Response establishes that Ms. Loving expressly and repeatedly told him that the very reason AP was breaching its contractual obligations to him, by, for example, (1) refusing to ship the art unless Plaintiff signed a written contract containing an as-is clause that was not even presented until months after the contract had been consummated and (2) refusing to trade in a damaged piece of art for a piece that had been promised to Plaintiff by Ms. Loving previously, was <u>precisely because Ms. St. Pierre refused to let AP comply with its contractual obligations</u>. Thus, for purposes of the post-contractual wrongful acts, Plaintiff's Affidavit establishes that it was Ms. St. Pierre who was the decision-maker. Moreover, the evidence in the record, namely bank statements from the ISP Defendants and Ms. Loving's statements to Plaintiff, demonstrate that the ISP Defendants actually received a financial benefit from AP's fraud and breaches of contract, AP's failures to perform at Ms. St. Pierre's specific direction, and that the ISP Defendants received these benefits knowing they had been wrongfully obtained from the Plaintiff.

And while the ISP Defendants made much of the fact that they were not involved in the formation of the contract, the fact remains that even until the filing of this lawsuit, in July of 2019, Plaintiff had (1) paid $186,000.00 in purchase funds, (2) had not received the shipment of his art

4

despite repeated demands, and (3) that both his art and his purchase funds were being wrongfully and tortiously withheld from him.  Thus, whether the ISP Defendants were involved in the initial fraudulent misrepresentations and omissions, the fact remains the harms to the Plaintiff were in fact a long series of events over a period of years, and the ISP Defendants were involved in at least the second half of those series of wrongful acts, in the second time period reflecting post-purchase misconduct with which they were directly involved.

### IV. LEGAL ARGUMENT REGARDING OBJECTIONS

#### 1. The Recommendation Erroneously Determined that Plaintiff's Affidavit Contained Inadmissible Evidence

The Recommendation erroneously excluded what it described as the "potentially strongest" evidence of Ms. St. Pierre's conspiracy and agency relationship as the principal over Ms. St. Pierre, which were a variety of statements that Ms. St. Pierre made to Ms. Loving, which Ms. Loving then repeated to the Plaintiff.  Recommendation, p. 5, citing ¶ 55 of Pl.'s Ex. A.  It did so on the grounds that Plaintiff lacked personal knowledge of these statements.  This holding, however, improperly conflates the concepts of hearsay and personal knowledge, and would lead to the absurd result that anytime someone engages in a conspiracy and doesn't leave eye or earwitnesses to their misconduct, they cannot be liable.

There was sufficient evidentiary foundation in the record to establish that Ms. Loving and Ms. St. Pierre were both working for AP, Ms. Loving as the owner and Ms. St. Pierre as the Director of Sales, and they are both unquestionably parties opposing the Plaintiff.  Under the personal knowledge standard, an affidavit is inadmissible if "'the witness could not have actually perceived or observed that which he testifies to.'" *United States v. Sinclair*, 109 F.3d 1527, 1536 (10th Cir. 1997).

5

Here, Plaintiff's Affidavit <u>was not testifying to what Ms. St. Pierre said as if he heard it directly, instead, it was testifying to what Ms. Loving said, and both statements are excluded from the hearsay rule</u> as admissions of a party-opponent, adoptive admissions because both were employees of the same company concerning a matter within the scope of their employment, and admissions of a co-conspirator. *See* Fed. R. Evid. 801(2). He had personal knowledge of this evidence, Ms. Loving's statement, and it is admissible even if it is hearsay within hearsay. Under the Recommendation's theory, all hearsay that involves a third-party statement, or a statement that the person testifying did not personally hear, would fail on the basis of a lack of personal knowledge.

Plaintiff's Affidavit is still evidence, and many cases and criminal convictions relied upon hearsay. What the Recommendation really identified was a question of weight, not admissibility, which is not germane given the procedural posture of the Motion to Dismiss here. A correct application of an exclusion of an affidavit on lack of personal knowledge would be where someone testifies that a company never terminated a female employee in a specific time period, where they had know underlying basis, through hearsay or otherwise, to have received this information. *See Argo v. Blue Cross & Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1200 (10th Cir. 2006). That is not the situation here.

This holding excluded crucial evidence, which established that (1) Ms. Loving was acting as an agent for Ms. St. Pierre, communicating that AP would not perform because Ms. St. Pierre would not allow it to perform, (2) Ms. St. Pierre was the reason and controlling principal who made the decision for AP so that it would not perform, (3) the existence of a principal and agent

6

relationship between Ms. St. Pierre, as principal, and Ms. Loving, as agent[4], and (4), perhaps most critically, the existence of a conspiracy between the ISP Defendants and remaining Defendants, and the related jurisdiction under the conspiracy prong of purposeful direction personal jurisdiction under *Newsome v. Gallacher*, 722 F.3d 1257 (10th Cir. 2013), which held as follows, similar to the facts at issue in this case—an extra-territorial conspiracy involving harms to a forum resident:

> This case, instead, presents an unusual situation: a conspiracy that takes place entirely outside of the forum, but with the conspirators' knowledge that the forum would bear the brunt of the conspiracy's harmful effects. Outside of the conspiracy context, this sort of situation would pose no doctrinal problem. In *Calder v. Jones,* for instance, the Supreme Court permitted California to exercise jurisdiction over parties—in that case a newspaper editor and a reporter—acting entirely from Florida to cause injuries in California. 465 U.S. 783, 789–91, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). The question is whether the result should be different if a conspiracy is involved.
>
> We recognize parties could potentially stretch the conspiracy cause of action to subvert the due process principles that govern personal jurisdiction. *See generally* Ann Althouse, The Use of Conspiracy Theory to Establish In Personam Jurisdiction: A Due Process Analysis, 52 Fordham L.Rev. 234 (1983). We also acknowledge that personal jurisdiction requirements "must be met as to each defendant." *Rush v. Savchuk*, 444 U.S. 320, 332, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980).
>
> **But we cannot dismiss out of hand the jurisdictional theory Newsome presents. If three Kansans conspired to fire a cannonball into Oklahoma, we do not believe the Constitution would foreclose Oklahoma courts from exercising jurisdiction over the conspirators simply because they confined themselves to Kansas**.

1264–66 (10th Cir. 2013).

---

[4] The question of whether an agency relationship exists is a question of fact, and nothing in the law precludes an agency relationship from being transactional, that is, from existing for purposes of a single transaction or event. This cannot be resolved on a motion to dismiss in this procedural posture where Plaintiff's evidence must prevail over conflicting affidavits.

### 2. The Recommendation Applied the Incorrect Legal Standard with Respect to the Existence of an Agency Relationship.

The Recommendation applied the incorrect legal standard, by requiring that Plaintiff "conclusively demonstrate" the existence of an agency relationship. The legal standard imposed upon the Plaintiff here was a mere prima facie burden, more akin to a burden of production on summary judgment:

> When a district court rules on a Fed. R. Civ. P. 12(b)(2) motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, as in this case, the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion. *Kuenzle v. HTM Sport–Und Freizeitgerate AG*, 102 F.3d 453, 456 (10th Cir. 1996).
>
> The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant. In order to defeat a plaintiff's prima facie showing of jurisdiction, a defendant must present a compelling case demonstrating "that the presence of some other considerations would render jurisdiction unreasonable." *Burger King,* 471 U.S. at 477, 105 S.Ct. 2174; see also Rambo, 839 F.2d at 1419 n. 6.

*OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998). The burden on the plaintiff is light. *See Wenz v. Memery Crystal,* 55 F.3d 1503, 1505 (10th Cir. 1995). If the parties present conflicting affidavits, the court must resolve all disputed facts and draw all reasonable inferences in the plaintiff's favor. *See Behagen v. Amateur Basketball Ass'n of U.S.A.,* 744 F.2d 731, 733 (10th Cir. 1984).

Here, the application of the improper legal standard compounded the error in excluded Plaintiff's evidence at ¶ 55 of Exhibit A to his Response, his Affidavit as addressed in the previous section. Once that critical and admissible evidence was excluded, Plaintiff faced a burden of persuasion, which a prima facie burden is not, as it is more akin to a burden of production. The difference is that on a burden of production the fact finder is asked to determine facts and weigh evidence, along with making credibility determinations. *See, e.g., Bartunek v.*

*Fred Meyer, Inc.,* 271 F. App'x 815, 816 (10th Cir. 2008); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993) (discussing the prima facie standard in the context of a discrimination claim).

That is clearly impermissible under a prima facie standard. "In assessing whether plaintiff has made this prima facie showing [of personal jurisdiction], the court does not weigh the evidence." *Sunwest Silver, Inc. v. Intern. Connection Inc*., 4 F.Supp.2d 1284, 1285 (D.N.M. 1998) (citing *Ten Mile Indus. Park v. Western Plains Service Corp*., 810 F.2d 1518, 1524 (10th Cir. 1987)); *see also, e.g., Schumacher v. Winston*, 2000 WL 36740219, at *1 (D.N.M. Jan. 14, 2000).

In fact, "conclusive proof" is even higher than the burden Plaintiff would face at trial. *See Hennessy v. Schmidt*, 521 F.2d 1282, 1285 (7th Cir. 1975) ("At the outset, it is manifest from a reading of the conclusion of law numbered 6 that the District Court ignored the proper and valid rule or test for viewing and weighing Hennessy's evidence and making findings of fact in accordance with the "preponderance of the evidence" as recited in conclusion of law numbered 3, and erroneously viewed and weighed Hennessy's evidence and made its finding of fact under the non-applicable stricter rule or test of conclusive proof. The District Court by applying the stricter improper conclusive proof rule or test in this case placed a higher burden of proof upon Hennessy than is lawfully required.) (Citing *Hurzon v. Schmitz*, 262 Ill.App. 337 (1931); also 32A C.J.S. Evidence s 1020 (1964) at 641-43).

By excluding Plaintiff's Affidavit, and then requiring him to meet a burden of persuasion higher than he would have faced at trial, the Recommendation erected insurmountable hurdles that precluded him from demonstrating the existence of personal jurisdiction under an agency

9

theory and under a theory of purposeful direction through a conspiracy, under *Newsome v. Gallacher*, 722 F.3d 1257 (10th Cir. 2013).

## V.     CONCLUSION

Plaintiff respectfully requests the relief sought herein, and that the Recommendation be overruled and the Motion to Dismiss be denied, and subjected to a de novo review.

Dated this 22nd day of September, 2020

/s/ Ian T. Hicks, Esq.
Ian T. Hicks, Reg. No., 39332
The Law Office of Ian T. Hicks LLC
Attorney for Plaintiff
6000 East Evans Avenue, Suite 1-360
Denver, Colorado, 80222
Telephone: (720) 216-1511
Facsimile: (303) 648-4169
E-mail: ian@ithlaw.com

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 22nd day of September, 2020, the foregoing Objection was filed via CM/ECF, and served upon the following:

**Shoemaker Ghiselli + Schwartz, LLC**
Elizabeth H. Getches
Cynthia A. Mitchell
SHOEMAKER GHISELLI + SCHWARTZ LLC
1811 Pearl Street
Boulder, CO 80302
Telephone: (303) 530-3452
 FAX: (303) 530-4071
Email: lgetches@sgslitigation.com
Counsel for Defendants Nancy Loving d/b/a ArtSuite NY, Artport LLC, David Hinkelman, and Studio 41 LLC

Thomas H. Wagner, #38135
Anderson Law Group
7385 W. Highway 50
Salida, CO 81201
Telephone: (719) 539-7003
tom@anderson-lg.com
Counsel for Defendants Martin St. Pierre, Alicia St. Pierre, and ISP Holdings, Inc.


                                                *s/Ian T. Hicks, Esq.*