# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-2381-MEH-REB

WALTER CHARNOFF

    Plaintiff,

v.

NANCY LOVING d/b/a ARTSUITE NY, et al.

    Defendants.

---

## DECLARATION OF WALTER CHARNOFF
---

I, Walter Charnoff, being over the age of eighteen, and with personal knowledge of the facts stated herein, do hereby declare the following on this 16th day of October, 2020 under penalty of perjury:

1. My name is Walter Charnoff. I am the Plaintiff in this civil action against Nancy Loving ("Ms. Loving"), Art Port LLC ("AP"), David Hinkelman ("Mr. Hinkelman"), and Studio 41, LLC ("S41"). I understand that Liza Getches is the attorney of record for the Defendants, and has been since this action was filed in Boulder County District Court and removed to Federal District Court for the District of Colorado, where it is presently situated.

2. Ms. Getches has previously represented me in two separate legal matters. The first matter was On May 1, 2014, when Eric Taylor filed a Complaint against me personally and

1

against my company, RentRange, LLC.  I understand the case number to be 1:14-cv-01251-REB-MJW (the "Taylor Litigation"), based on my recent review of the Complaint filed in that action.  I am not an attorney, but I understand that his lawsuit was generally an employment matter wherein he claimed to be owed money for a performance bonus.

2. Ms. Getches acted as the lead attorney in the Taylor Litigation, from its initial filing through its dismissal.  I, along with RentRange, filed an Answer and Counterclaim, denying the material allegations of the Complaint and asserting counterclaims for breach of contract and breach of fiduciary duty.  The counterclaim was supported by allegations that Mr. Taylor stole corporate opportunities to enrich himself and misappropriated intellectual property owned by RentRange.

3. During her representation of both myself and RentRange in the Taylor Litigation, I attended several meetings, had several phone calls, and transmitted several emails with Ms. Getches.  During these communications, Ms. Getches learned a broad array of facts regarding my management of RentRange, its corporate structure, its line of business, and its activities in the marketplace.  Ms. Getches would become even more involved in advising me and RentRange as their primary counsel over the next several years, in both litigation and transactional matters.

4. More importantly, as a consequence of her representation of both myself and RentRange in the Taylor Litigation, Ms. Getches requested and received a wealth of privileged and confidential information concerning my unique personal characteristics, including but not limited to my strengths and weaknesses as a witness, and the circumstances likely to cause me stress, annoyance, and frustration.

5. For example and without limitation, I informed Ms. Getches that (1) I am uniquely private regarding my business, financial, and personal affairs, (2) I am highly protective of my

wife and family, and I seek to distance them from my business dealings, (3) that my employment as an investor, manager, and entrepreneur for start-up companies requires that I maintain a public profile of someone who is emotionally stable, law-abiding, and trustworthy, and (4) that I have a strong disdain for being pointed at.

6. Ms. Getches also requested and was provided confidential and privileged information regarding the underlying facts and outcomes of various traffic tickets, business dealings, civil cases, and an arbitration. Ms. Getches requested and received this information because, as she informed me expressly, some attorneys will attempt to use a litigant's prior involvement with the courts to attack their character. As instructed, I provided Ms. Getches with the facts, circumstances, and outcomes of various traffic tickets, civil cases, business dealings, some of which were not public record and not discernable from any public record.

7. With respect to each of these prior matters, I was consulted and advised by Ms. Getches that none of them had any relevance to my character, none of them had any merit, and there would be no basis for Mr. Taylor's counsel to attempt to use them for any purpose in the Taylor Litigation. Ms. Getches also advised me that the Taylor Litigation was frivolous. Ultimately, the Taylor Litigation was resolved through a confidential settlement whereby I received approximately $1 million dollars in returned stock, and dismissal of the parties' claims with prejudice.

8. I asked Ms. Getches whether he should seek attorneys' fees or stock in the settlement, and Ms. Getches expressly informed ne that it would be better to accept stock, for a variety of reasons. I accepted Ms. Getches' legal advice, and she drafted the settlement agreement, which included a written promise to keep its terms confidential, absent limited exceptions not applicable to Ms. Getches' representation of Defendants. Yet, at my deposition,

3

Ms. Getches asked me about the content and terms of that settlement agreement, and whether I got legal fees, when she advised me not to take legal fees at all for a variety of reasons.

9. Ms. Getches, while employed by MW, also provided advice and guidance on the formation, management, and sale of certain assets between OnIt, REI, and RentRange. One of the specific areas of advice and guidance was with respect to whether OnIt had title to certain intellectual property that was initially known as Investorloft, and could therefore license Investorloft, under the name Investability, to REI.

10. Ms. Getches, in association with another attorney at MW, drafted a detailed opinion letter advising that OnIt had clear title to Investorloft, and therefore could license it to REI, and that RentRange could transfer the name Investability to REI, on my personal behalf, lawfully and in compliance with the various entities' and my legal obligations.

11. Moreover, when I received a litigation demand letter from Bob Ladd and Ladd Partners, an investor in RentRange, alleging that the very conduct advised by Ms. Getches and MW as being lawful was in fact a violation of a variety of statutory and common-law duties owned by me, OnIt, REI, and RentRange, Ms. Getches advised me that the demand letter was meritless and no action was required. Yet, Ladd Partners filed suit in Denver District Court, based on the same allegations in the demand letter.

12. Those claims survived a motion to dismiss and summary judgment, and initially resulted in an adverse jury verdict. Ultimately, the Ladd Litigation lasted three years, and cost me significant attorneys' fees and costs, and was ultimately resolved through a confidential settlement, which resulted in the claims against me being dismissed with prejudice and declared void *ab initio* by the trial court, and reflected by a settlement agreement. I have received advice

from an attorney other than Ian Hicks that the legal advice given by Ms. Getches and MW was negligent.

13. I understand that Ms. Getches listed my wife, Brande Charnoff, as a party with knowledge of the facts supporting the parties claims or defenses, even though she has no meaningful information regarding this lawsuit.

14. At my recent deposition, Ms. Getches asked me about many of the same matters we had discussed during her two representations of me and my companies, including but not limited to my prior traffic cases, civil cases, an arbitration, and my business dealings. I was surprised and offended that she asked me these questions, because her tone and the content of her questions indicated to me that she was seeking to attack my character merely because of these prior matters, even though she told me when she was my attorney that they were irrelevant to my character as a party to litigation.

15. I was also offended and surprised that she asked me about the Ladd Litigation, in an effort to attack my character, because she had previously advised me that the situation that led to the Ladd Litigation did not support any legal claims against me. I relied upon her legal advice and counsel in taking the actions that me and my companies took, and her advice appears to have been a substantial factor in causing the Ladd Litigation. When she asked me about the Ladd Litigation, it was as if she was criticizing me for following her legal advice previously. I was unaware and remain dismayed that attorneys can do this, and makes me apprehensive about the legal system as a whole.

16. During my deposition, Ms. Getches also asked me numerous questions about the structure and management of my various companies, which she also represented and advised me about when she was my attorney. I was confused and remain shocked that my former attorney

would, while representing an adversary in litigation, ask me to reveal information that was at the core of our prior attorney-client relationship. She also asked me about various allegations made by one of the companies involved with my investments, which is not a matter of public record, and my communications with Mr. Hinkelman and any other investors regarding the Ladd Litigation, which is also not a matter of public record.

17. In my lengthy discussions during the course of Ms. Getches' representation of myself and my companies, I informed Ms. Getches that two types of behavior by lawyers made it significantly more difficult for me to focus. This includes eye-rolling or sarcasm, and being pointed at, either with a finger or an object. Ms. Getches repeatedly engaged in these behaviors during the course of my deposition. She also apparently late disclosed an email from Mr. Hinkelman where he threatened to sue me for my actions in managing RentRange, and asked me questions about RentRange that appear unrelated to this lawsuit but helpful to Mr. Hinkelman's potential claims against me, even though those claims have no merit.

18. As previously stated, I also informed Ms. Getches during their many attorney-client privileged discussions that another unique characteristic of my personality was that I am extremely private about my financial affairs, because I grew up poor and it made me extremely uncomfortable to discuss such matters. Yet again, Ms. Getches took this privileged information and used it against me, by spending substantial time at my deposition on specific questions regarding the types of watches I owned, the types of cars I owned, how much I paid for those items, and my assets in general.

19. I am surprised that Ms. Getches would represent my adversary and in the course of that representation, seek to hold our previous attorney-client relationship and the information I provided to her in confidence, the advice she gave me, and the actions I took in reliance on that

advice, against me in this litigation. It calls into question my beliefs that attorneys are supposed to owe a duty of loyalty and good faith towards their clients.

Signed by _____/s/ Walter Charnoff_____ this 16th day of October, 2020.
                   Walter Charnoff