**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.   19-cv-2381

WALTER CHARNOFF

        Plaintiff,

    v.

NANCY LOVING, d/b/a ARTSUITE NY,
ARTPORT LLC,
STUDIO 41, LLC,
ALICIA ST. PIERRE,
MARTIN ST. PIERRE,
ISP HOLDINGS, INC., and
DAVID HINKELMAN

        Defendants.

---

**NANCY LOVING, d/b/a ARTSUITE NY, ARTPORT LLC, STUDIO 41, LLC, AND
DAVID HINKELMAN'S RESPONSES TO PLAINTIFF'S FIRST SET OF WRITTEN
DISCOVERY**

---

      Defendants Nancy Loving, d/b/a ArtSuite NY, Art Port LLC, Studio 41, LLC, and David Hinkelman ("Defendants"), by and through their attorneys of record, Shoemaker Ghiselli + Schwartz LLC, submit the following Responses to Plaintiff's First Set of Written Discovery.

**GENERAL OBJECTIONS**

      Defendants make the following General Objections to Plaintiff's First Set of Written Discovery ("Discovery Requests") and incorporate the same into each of their individual responses:

1. Defendants object to all of Plaintiff's Definitions, Instructions, and Discovery Requests to the extent they seek to impose obligations greater than those imposed by the Federal Rules of Civil Procedure.

EXHIBIT 11

2. Defendants specifically object to Plaintiff's definition of "You" and use of the term to apply to five Defendants, comprised of three different entities and two different individuals.   Defendants generally respond below based on knowledge or information of Ms. Loving/ArtPort LLC as the remaining Defendants do not have separate or individualized knowledge or information responsive to many if not all of the Discovery Requests.

3. Defendants object to all of Plaintiff's Definitions, Instructions, and Discovery Requests to the extent they call for the disclosure of information protected by any applicable privilege, immunity, or exception, including but not limited to the attorney-client privilege and the attorney work product doctrine.  The production of any protected information or documents is inadvertent and without prejudice to Defendants' right to assert later that such information or document remains protected.

4. Defendants object to the Discovery Requests to the extent that they are overbroad, unduly burdensome and oppressive, seek information that is not reasonably calculated to lead to the discovery of admissible evidence and violate the proportionality requirements contained in F.R.C.P. 26.

5. Defendants object to the Discovery Requests because they call for information that is not limited to the issues and the time-period relevant to this action.

6. Defendants object to the Discovery Requests to the extent that they seek information or documents that are not within Defendants' possession, custody, or control or are within the possession, custody, or control of Plaintiff and/or third parties.

7. Investigation as to the matters that are the subject of the Discovery Requests is continuing. The documents produced in response to the Discovery Requests may not be exhaustive. Defendants reserve the right to introduce documents and other evidence subsequently obtained, whether obtained through investigative efforts, discovery or otherwise. Defendants reserve the right (a) to revise, correct, supplement or clarify any of its responses or objections to the Discovery Requests; (b) to recall any inadvertent responses to which any privilege is attached; and (c) to introduce at the time of hearing or trial any information or documents of which Defendants become aware as a result of its continuing investigation or discovery.

8. All specific responses to the Discovery Requests are provided without waiver of, and with express reservation of:  (a) all objections as to the authenticity, competency, relevancy, materiality, and admissibility of the responses and the subject matter thereof as evidence in any further proceedings in this action, including trial, or in any other action; (b) all privileges, including the attorney-

client privilege and the work product doctrine; (c) the right to object on any ground at any time to a demand or request for further responses to these or any other discovery requests; and (d) the right to move for a protective order to protect the confidentiality of any information disclosed or for any other purpose provided by law.

9. The General Objections are incorporated into each response below and shall be deemed to be continuing irrespective of whether they are expressly referenced in response to any individual request. Additional specific objections made in response to a particular request are not intended to, and do not, vitiate or limit these General Objections.

## ANSWERS TO INTERROGATORIES

1. Do you contend that you stored the Artwork at Plaintiff's request? If your answer is yes, please provide the following information:

      a.    the facts supporting your contention
      b.    all communications relating to your contention
      c.    all documents and data that relating to your contention; and
      d.    all persons with knowledge of those facts, communications, documents and data.

**RESPONSE**: Defendants object on the grounds the request calls for information equally within the possession of Plaintiff and contains impermissible, multiple subparts under F.R.C.P. 33(a)(1). Further, this interrogatory, sometimes referred to as a contention interrogatory, is overbroad. *See Felix v. City & County of Denver,* No. 08-cv-02228-MSK-KMT, 2009 WL 3838587 (D.Colo. 2009); *Grynberg v. Total S.A.*, No. 03-cv-01280-WYD-BNB, 2006 WL 1186836, at *6 (D. Colo. May 3, 2006) ("The nature of the federal discovery rules themselves suggests they are intended to facilitate reasonable discovery, not unduly burdensome, but selected by each party to fit the needs of the particular case. The discovery rules provide no absolute, unharnessed right to find out every conceivable, relevant fact that opposing litigants know…"). Subject to and without waiving any objection, Plaintiff requested that Ms. Loving/Art Port store the art Plaintiff purchased on multiple occasions. Plaintiff did not want his art shipped at or near the time of purchase. Communications were verbal, such as Plaintiff's requests that Ms. Loving not ship the art because his house was under construction and/or because she advised him that his barn would not be an appropriate place to store the art. Plaintiff also did not want the art shipped for one or all of the following stated reasons: health issues, family travel/vacations, the Altisource separation agreement/related issues, an investor lawsuit, and his personal bankruptcy. At one point in time, Plaintiff requested that the art be shipped and later told Ms. Loving via text message that he would be out of town and not to ship the art. After telling Ms. Loving she could ship

the art in February 2019, Ms. Loving made plans with the shipper to deliver the art to Colorado but Mr. Charnoff texted her on June 27, 2018 (produced previously) and told her not to ship the art. Ms. Loving/ArtPort incurred expenses despite Plaintiff's agreement to pay for the storage of his art. Some of the people who have knowledge of the facts and communications regarding the foregoing are: Dana Christie, Brande Charnoff, Walter Charnoff, Nancy Loving, Brianna, Charnoff and JoJo Charnoff.

     2.    From January 1, 2015 through the present, please identify all persons or entities who transferred monies or any thing of value to Artsuite/ArtPort, regardless of the purpose, whether as an investment, contribution, loan, purchase, or otherwise, and further identify the following:

       a.    all communications relating to the transfer;
       b.    all documents and data relating to the transfer;
       c.    who made the transfer; and
       c.[sic]  the value of the transfer and when it occurred.

**RESPONSE**: Defendants object on the grounds that this interrogatory contains impermissible, multiple subparts under F.R.C.P. 33(a)(1). Further, this interrogatory, sometimes referred to as a contention interrogatory, is overbroad. *See Felix v. City & County of Denver,* No. 08-cv-02228-MSK-KMT, 2009 WL 3838587 (D.Colo. 2009); *Grynberg v. Total S.A.*, No. 03-cv-01280-WYD-BNB, 2006 WL 1186836, at *6 (D. Colo. May 3, 2006) ("The nature of the federal discovery rules themselves suggests they are intended to facilitate reasonable discovery, not unduly burdensome, but selected by each party to fit the needs of the particular case. The discovery rules provide no absolute, unharnessed right to find out every conceivable, relevant fact that opposing litigants know…" ). Defendants object on the grounds Interrogatory number 2 has no relevance to the issues of dispute in this action or the damages requested or recoverable. Defendants further object on the grounds Interrogatory number 2 is unduly burdensome and violates the proportionality requirements contained in F.R.C.P. 26, and is solely for the purposes of harassment or abuse of process. Without waiving any objections and the General Objections, and specifically noting that the investments into ArtPort have nothing to do with the issues in dispute in this case, ISP invested $500k in ArtPort in 2014 to set-up, develop and operate ArtPort. ISP also made a cash contribution in the form of an investment in 2018 to set up and operate the new gallery in Piermont, New York. Mr. Hinkelman made a small contribution/investment in 2014 and other contributions from 2015 through 2018 to support the growth of the business. Documents evidencing the ISP investments are produced herewith: TD Bank Statement from February 2014 and June 2014 reflecting ISP's checks of $300,000 and $200,000, respectively. Ms. Loving took a salary only in 2014 and invested her time and work from 2014 and work to operate ArtSuite gallery from 2014 to present.

3.     From January 1, 2015 through the present, were there any transfers of monies or any things of value, regardless of the purpose, whether as an investment, contribution, loan, or otherwise, between any of the following persons or entities: Nancy, ArtSuite, the St. Pierres or either of them, David, ISP Holdings, Studio 41, ArtPort, or Harold?  If your answer is yes, please provide the following, for each such transfer:

    a.     the identity of the transferor and transferee;
    b.     the amount of the transfer or thing of value;
    c.     when the transfer occurred;
    d.     the purpose of the transfer; and
    e.     all communications and documents relating to the transfer.

**RESPONSE**: Defendants object on the grounds that this interrogatory contains impermissible, multiple subparts under F.R.C.P. 33(a)(1).  Further, this interrogatory, sometimes referred to as a contention interrogatory, is overbroad. *See Felix v. City & County of Denver,* No. 08-cv-02228-MSK-KMT, 2009 WL 3838587 (D.Colo. 2009); *Grynberg v. Total S.A.*, No. 03-cv-01280-WYD-BNB, 2006 WL 1186836, at *6 (D. Colo. May 3, 2006) ("The nature of the federal discovery rules themselves suggests they are intended to facilitate reasonable discovery, not unduly burdensome, but selected by each party to fit the needs of the particular case.  The discovery rules provide no absolute, unharnessed right to find out every conceivable, relevant fact that opposing litigants know…").  Defendants object on the grounds Interrogatory number 3 has no relevance to the issues of dispute in this action or the damages requested or recoverable.  Defendants further object on the grounds Interrogatory number 3 is overly broad and unduly burdensome, violates the proportionality requirements contained in F.R.C.P. 26, and for the purposes of harassment or abuse of process.  Without waiving said objection, see response and documents produced in response to Interrogatory number 3. See also 2019 Portfolio Marketing Management Agreement and 2013 Garde-ArtPort Agreement produced herewith for terms of payments between ArtPort and Studio 41, response to Interrogatory number 2, and bank statements produced herewith.  ArtPort LLC paid Studio 41 $13,989 on August 8, 2016 for Mr. Charnoff's first sale which represented Studio 41's 30% payment less expenses from the $45,120 Charnoff sale.  See email dated August 9, 2016 from Ms. Loving to Studio 41, attachments and copy of check produced herewith.

4.     Do you contend that the Two Vessels painting that is alleged to have been damaged with a pool cue by Plaintiff was repaired or restored?  If your answer is yes, please provide the identify of who performed the restoration and identify any documents relating to the restoration.

**RESPONSE**:  Subject to and without waiving any objection, no. Two Vessels was neither damaged by a pool cue nor was not professionally repaired or restored.  Instead, Two

Vessels was cleaned with a soft cloth to remove the dust that Plaintiff, a novice art purchaser, misapprehended as damage on a 1972 art piece painted on masonite.

5.   Did any of the following persons or entities have any ownership, membership, shares, equitable interest, or any other type of percentage or rights in Artsuite/ArtPort or its profits from January 1, 2015 through the present: Nancy, the St. Pierres or either of them, David, ISP Holdings, Studio 41, or Harold?

**RESPONSE**:  Defendants object on the grounds Interrogatory number 5 seeks information that is not relevant.  Without waiving said objections, see applicable documents produced herewith or previously produced related to ArtPort, LLC including ArtPort Limited Membership Investment Agreement, ArtPort Transfer of Equity Agreement Hinckleman/Loving, ArtPort Operating Agreement.  ArtPort contends that ISP has a contingent membership interest and that the contingency has not yet occurred. With respect to Studio 41 and Mr. Garde, no.

6.   If your answer to interrogatory 5 is yes, please provide the following:

   a.   explain the nature of the interest;
   b.   when such interest arose and if applicable, terminated;
   c.   identify the documents relating to such interest; and
   d.   identify the communications relating to such interest.

**RESPONSE**:  Defendants object on the grounds that this interrogatory contains impermissible, multiple subparts under F.R.C.P. 33(a)(1).  Further, this interrogatory, sometimes referred to as a contention interrogatory, is overbroad. *See Felix v. City & County of Denver,* No. 08-cv-02228-MSK-KMT, 2009 WL 3838587 (D.Colo. 2009); *Grynberg v. Total S.A.,* No. 03-cv-01280-WYD-BNB, 2006 WL 1186836, at *6 (D. Colo. May 3, 2006) ("The nature of the federal discovery rules themselves suggests they are intended to facilitate reasonable discovery, not unduly burdensome, but selected by each party to fit the needs of the particular case.  The discovery rules provide no absolute, unharnessed right to find out every conceivable, relevant fact that opposing litigants know…" ).  Defendants object on the grounds Interrogatory number 6 is overly broad, unduly burdensome, and not likely to lead to the discovery of relevant or admissible evidence.  Plaintiff's request that Defendants produce documents "relating to" various interests of managing members Loving and Hinkelman and investor/special membership holder, ISP Holdings is not relevant, may be protected by attorney client privilege and is overly broad and unduly burdensome violates the proportionality requirements contained in F.R.C.P. 26.  Subject to and without waiving any objection, see Response to Interrogatory Number 5 and documents identified therein.

7.   Please identify and describe Nancy's and/or ArtPort's/Artsuite's agreement with Harold and/or Studio 41, including the terms of the agreement and any documents

or communications relating to the agreement.

**RESPONSE**: Defendants object on the grounds Interrogatory number 7 is not relevant to the claims in this lawsuit nor likely to lead to the discovery of admissible evidence.  Subject to and without waiving any objection, see 2019 Portfolio Marketing Management Agreement and 2013 Garde-ArtPort Agreement produced herewith.  Communications "relating to" the agreements are not relevant to any dispute, overly broad, and are be protected by attorney-client privilege.

8.     For each agreement alleged in the pleadings:

    a.     identify all documents that are part of the agreement and, if you do not  have copies of all documents, for each document you do not have, state  the name, ADDRESS, and telephone number of each PERSON OR  ENTITY who has the DOCUMENT;

    b.     state each part of the agreement not in writing, the name, ADDRESS, and  telephone number of each PERSON OR ENTITY agreeing to that  provision, and the date that part of the agreement was made;

    c.     identify all DOCUMENTS that evidence each part of the agreement not in  writing and, if you do not not have copies of all documents, for each  document you do not have, state the name, ADDRESS, and telephone  number of each PERSON OR ENTITY who has the DOCUMENT; identify all DOCUMENTS that are part of each modification to the  agreement, and, if you do not have copies of all documents, for each  document you do not have, state the name, ADDRESS, and telephone  number of each PERSON OR ENTITY who has the DOCUMENT;

    d.     state each modification not in writing, the date, and the name, ADDRESS, and telephone number of each PERSON OR ENTITY agreeing to the  modification, and the date the modification was made;

    e.     identify all DOCUMENTS that evidence each modification of the agreement not in writing and, if you do not have copies of all documents, for each document you do not have, state the name, ADDRESS, and  telephone number of each PERSON OR ENTITY who has the  DOCUMENT.

**RESPONSE**:  Defendants object on the grounds that this interrogatory contains impermissible, multiple subparts under F.R.C.P. 33(a)(1).  Defendants object on the

grounds Interrogatory number 8 is overly broad, unduly burdensome, violates the proportionality requirements contained in F.R.C.P. 26 and not likely to lead to the discovery of relevant or admissible evidence. Subject to and without waiving any objection, there were, generally, agreements covering two topics: one agreement that forms the basis of Plaintiff's claims (Plaintiff's purchases of art from Defendant Loving/ArtPort. Defendant does not "allege" in the pleadings that it breached that agreement. The second agreement that Defendant is suing on (and that Defendant "alleges in the pleadings" relates to expenses associated with ArtPort's storage and shipment of the art. Defendants alleged that Plaintiff agreed to purchase art from Ms. Loving/ArtPort and later, after he did not desire to accept shipment of the art due to construction on his home and/or financial issues, personal bankruptcy, investor lawsuits, settlements, and health issues. He requested that Ms. Loving retain and store the art and further agreed to pay for expenses related to storage, insurance and crating of the art. After Mr. Charnoff later refused to pay for the agreed upon fees for storage, insurance and crating, the parties attempted to meet in the middle and Mr. Charnoff offered to make payments as a means of reaching resolution. Ms. Loving, in turn, offered to reduce or cover the costs of certain expenses such as crating, insurance and storage as a way of finding resolution. However, Plaintiff resorted to litigation in lieu of reaching amicable resolution. Various conversations occurred leading up to such agreements and documents produced herewith identify agreements between the parties. The text exchange between Ms. Loving and Mr. Charnoff where he agrees to pay for the storage, insurance and crating of the art was previously produced. On June 27, 2018 Mr. Charnoff texted Ms. Loving and told her not to ship the art.

9.      If there was a breach of any agreement alleged in the pleadings, for each breach  describe and give the date of every act or omission that you claim is the breach of the agreement.

**RESPONSE**:  Subject to and without waiving any objection, Plaintiff failed to pay storage fees, Plaintiff failed to insure the artwork, Plaintiff failed to pay for agreed-upon costs for crating the art, Plaintiff failed to allow Ms. Loving/ArtPort to ship the art in a reasonable time or manner, and Plaintiff failed to pay for monies owed related to his accounting error on August 16, 2017.  See response to Interrogatory number 8.  During this litigation, Plaintiff again refused to accept shipment of the art and, instead, required that Ms. Loving/ArtPort ship the art to Terry Dowd storage where the art is currently being stored. Communications related to that effort and refusal are in the custody or control of Ian Hicks, counsel for Plaintiff. *See* documents produced herewith demonstrating the foregoing.

10.      If performance of any agreement alleged in the pleadings was excused, identify each agreement excused and state why performance was excused.

**RESPONSE**: Defendants object on the grounds Interrogatory number 10 may call for

information that calls for a legal conclusion.  Subject to and without waiving any objection, to the extent Plaintiff claims Defendants breached the agreement by failing to ship the art, Defendants were excused from such obligation (and in fact prevented from performing) because Plaintiff requested that Defendants not ship the art. Plaintiff also would not respond to emails, text or phone calls.

11.     If any agreement alleged in the pleadings was terminated by mutual agreement, release, accord and satisfaction, or novation, identify each agreement terminated and state why it was terminated including dates.

**RESPONSE**:  *See* response to Interrogatory number 10.  Plaintiff requested that Defendants not ship the art but Defendants are without knowledge or information at this time regarding whether that constitutes release, accord and satisfaction or novation.

12.     If any agreement alleged in the pleadings is unenforceable, identify each unenforceable agreement and state why it is unenforceable.

**RESPONSE**:  Subject to and without waiving any objection, Defendants are without knowledge or information at this time to respond to this request.

13.     If any agreement alleged in the pleadings ambiguous, identify each ambiguous agreement and state why it is ambiguous.

**RESPONSE**: Subject to and without waiving any objection, Defendants are without knowledge or information at this time to respond to this request.

14.     Did ArtPort/ArtSuite at any time have an employee, agent, or other person performing services on its behalf of any kind, especially as a curator, with a first name of Edward?  If so, please provide identify said person, including name, address, and telephone  number.

**RESPONSE**:  Defendants object on the grounds Interrogatory number 14 is not relevant or likely to lead to the discovery of admissible evidence.  Subject to and without waving any objection, Edward Robinson was engaged as a project-based consultant and also as a guest curator for a 3 month exhibition in Boston, Massachusetts.  Defendants are not aware of Mr. Robinson's current address but his last known contact information at LACMA was 7928 Norton Avenue, No. 9, West Hollywood, California, 90046 (323) 336-1204.

15.     Please identify all employees that ArtPort/Artsuite has had from January 1, 2015  through the present.  The term "employees" is intended to include any person or entity that  performed services for ArtPort or Nancy in relation to any art-related matter, no matter how short  the period of time.

**RESPONSE**:  Defendants object on the grounds Interrogatory number 15 is overly broad, unduly burdensome, violates the proportionality requirements contained in F.R.C.P. 26  and not likely to lead to the discovery of any relevant or admissible evidence.  ArtPort/ArtSuite has not had any employees during the identified time period. ArtPort/ArtSuite has engaged hundreds of people to "perform services" including but not limited to as consultants, interns, volunteers, filmmaker assistants, caterers, sound techs, photographers, curators, librarians, advisors, gallerists, scanners, musicians, handlers, shippers, delivery people, landscapers, electricians, painters, archvists, framers, and packers.  Some such individuals who held more key roles as consultants, and whose names can be recalled at this time, include Sydney Farley, Jocelyn Magsumbol, Dana Magsumbol, Dana Christie, Rachel Christie, Ben Lenovitz, John Peterson, Debbie Nason, Carole Perry, Simon Alexander, Gerald L' Eculer, and Keith Camire.

16.     Please provide Nancy's employment history, from January 1, 2010, through the  present, including the name of the employer, her job duties, the dates of employment, and the  reasons for her separation from employment, and whether any agreements were reached  regarding any employment dispute, including but not limited to her employment on behalf of  Peter Lik.

**RESPONSE**:  Defendants object on the grounds this request is not relevant. Subject to and without waiving any objection, from 2010- 2013, Ms. Loving was a Sales Consultant and Director of Lik USA Gallery, Plaza Hotel New York City, Sales Consultant and Sales Director of the SoHo Gallery, New York Citym and Director of Business Development for Peter Lik USA and Director/Owner of ArtPort LLC.  The Business Development position was eliminated on 8/31/2013. Ms. Loving executed a separation agreement and her resignation was effective on 9/17/2013.  In the Fall of 2013 Ms. Loving pursued an opportunity to start a business, ArtPort LLC, and to be a representative for artists, including, but not limited to, American Modernist painter, Harold Garde from 2013 to present.

17.     January 1, 2015 through the present, please identify all facilities, buildings, persons, art galleries, or locations where any art was stored by ArtPort/ArtSuite or at ArtPort's/ArtSuite's direction or consent, even if the art had already been sold at the time of  storage, and further provide the following information for each such facility, building, person, art  gallery, or location storing such art:

      a.     identify precisely what art was stored by piece and artist;
      b.     the time periods when that art was stored;
      c.     identify any related documents, receipts, or invoices; and
      d.     identify any communications related to the storage.

**RESPONSE**: Defendants object on the grounds that this interrogatory contains

impermissible, multiple subparts under F.R.C.P. 33(a)(1). Further, this interrogatory, sometimes referred to as a contention interrogatory, is overbroad. *See Felix v. City & County of Denver,* No. 08-cv-02228-MSK-KMT, 2009 WL 3838587 (D.Colo. 2009); *Grynberg v. Total S.A.*, No. 03-cv-01280-WYD-BNB, 2006 WL 1186836, at *6 (D. Colo. May 3, 2006) ("The nature of the federal discovery rules themselves suggests they are intended to facilitate reasonable discovery, not unduly burdensome, but selected by each party to fit the needs of the particular case. The discovery rules provide no absolute, unharnessed right to find out every conceivable, relevant fact that opposing litigants know…"). Defendants object as this interrogatory violates the proportionality requirements contained in F.R.C.P. 26, and will not identify, "each and every facility, building, art gallery or location" where "any" art was stored by ArtPort/ArtSuite, or at its direction or consent as requests regarding *unrelated artwork* and *unrelated storage* have no bearing on any issue in dispute in this litigation and are solely intended for purposes of harassment and to further amplify this litigation. ArtPort/ArtSuite has moved, shopped, stored, exhibited, loaned, presented for preview, auctioned, gifted over 7,000 works of art in locations spanning from locations in and beyond Portugal to Wyoming to New York. The majority of art is stored at some point in time while not under exhibition by the owner, representative or borrower. Without waiving any objections, Harold Garde's art has primarily been stored in, but not limited to, ArtPort LLC in New York City, ArtPort offices in Norwalk Connecticut, Westy Storage in Norwalk, Connecticut, Cube Smart in Tappan New York, AAA Storage in New Smryna Beach, Shephard Storage in Thomason, Maine, the Studio of Harold Garde in New Smyrna Beach, the Harold Garde Studio in Belfast, Maine. The art Plaintiff purchased was stored at Westy's storage in Norwalk, Connecticut from September 2017 until February 18, 2019, in ArtSuite Gallery from February 18, 2019 until June 20, 2019, at Grosso Shippers in New Jersey until approximately September 20, 2019 when it was shipped to Colorado, arriving in Colorado on September 25, 2019. Sculpture on a Table was delivered to the UMMA in Maine on February 12, 2019. *See* email communication from UMMA related to art displayed/loaned to the UMMA dated February 12, 2019.

18.      Attached as Exhibit 1 to this written discovery is an email dated July 11, 2016. In the second sentence of the second paragraph, Nancy states "As a result of recent museums and  private collector acquisitions Harold's work has increased in value and many of the historical  pieces and the master works now reflect a substantial increase in the retail prices in the last  year." With respect to that statement, please provide the following information:

    a.      all facts upon which Nancy based this statement;
    b.      all documents related to or supporting these statements; and
    c.      all communications related to or support these statements.

**RESPONSE**: Defendants object on the grounds that this interrogatory

contains impermissible, multiple subparts under F.R.C.P. 33(a)(1).  Further, this interrogatory, sometimes referred to as a contention interrogatory, is overbroad. *See Felix v. City & County of Denver,* No. 08-cv-02228-MSK-KMT, 2009 WL 3838587 (D.Colo. 2009); *Grynberg v. Total S.A.*, No. 03-cv-01280-WYD-BNB, 2006 WL 1186836, at *6 (D. Colo. May 3, 2006) ("The nature of the federal discovery rules themselves suggests they are intended to facilitate reasonable discovery, not unduly burdensome, but selected by each party to fit the needs of the particular case.  The discovery rules provide no absolute, unharnessed right to find out every conceivable, relevant fact that opposing litigants know…" ). Subject to and without waiving any objection, Ms. Loving's opinion was based on current pricing, industry projections and appraisal valuations from individuals with expertise.  Ms. Loving's opinion was influenced by a 2016 article in the New York Times which provided that "a museum show can be very influential for an artist. It changes the price point, the popularity, the awareness a person has for an artist. Frank Stella, a painter who had a retrospective show last fall at the Whitney Museum of American Art. The show ran for a little more than three months, and after it closed, the value of his existing work rose — even though Mr. Stella has been a well-known American artist since the 1960s."  Produced herewith.  An appraisal done the year prior to her statement of opinion by professional appraiser of 20th Century Fine Art, Anna Heineman, PhD, also influenced her opinion.  Full report produced herewith.  Her appraisal report stated:   Harold Garde is an artist whose work is seeing somewhat of a resurgence in popularity. Long working as a painter in the Abstract Expressionist mold, Garde departed from the tenets of that genre when he began to introduce figuration into his artwork. Garde is a painter who has long been admired by other artists and has caught the eye of many serious art collectors, who have championed his work, and assisted in the revival of his work, which is reflected in his many museum/gallery exhibitions, and in the prices that his work is selling for by his dealers.  Produced herewith.

Also corroborating her opinion was that a major museum show in 2015 at the OMA lifted his prestige and elevated his stature. The produced price catalogue for Artlery Exhibit 2017 states that the objects identified in the museum loan agreement reflect current fair market value. The valuations listed in the loan agreement for historical and new works show a substantial increase in the value of the work. Price catalogue for Artlery Exhibit 2017.  In addition, Garde art was on display at the UMMA, see response to previous interrogatory and related documents.

19.      Was any Artwork alleged in the pleadings ever placed into a gallery, art show, or museum?  If your answer is yes, pleading identify what Artwork was so placed, when it was so  placed, and where it was so placed.

**RESPONSE**: Subject to and without waiving any objection, at the request and approval of Plaintiff, Mr. Garde's Sculpture on Table, 1985 was strategically placed for public exhibition at the University of Maine Museum of Art, chosen by the curator

George Kinghorn for a Solo exhibition of Garde Art from the 1980's. See response to Interrogatory number 17 and email and exhibition list produced with February 12, 2019 email from UMMA. Also per Plaintiff's request and approval, the Garde paintings titled, Still Life 1990, was exhibited for a magazine photo, local magazine *The Hook*.

Prior to Plaintiff's purchase of art, the paintings had been exhibited at various times and locations throughout the years. Some of the paintings are over 50 years old and have a long history of shows and exhibitions. *See* history of exhibitions in Charnoff Portfolio produced with email to Studio 41 regarding First Purchase dated August 9, 2016.

At one point in time, Plaintiff was disappointed that the art he had purchased, but not yet paid for, was not chosen for the Artlery exhibit in Boston during September 2017.

20.     In Exhibit 1, attached hereto, at the second paragraph, first sentence beginning with "As a courtesy to Harold, I discussed with Studio 41, Harold's Family Trust, current pricing and have come to an understanding over the work selected" please provide the factual basis for this statement and identify any communications related to this statement.

**RESPONSE**:  Subject to and without waiving any objection, given Plaintiff's broad selection of work that he desired to purchase, as is Ms. Loving's general practice and as is standard industry protocol, Ms. Loving, as an artist representative, kept Studio 41/Mr. Garde in the loop prior to a sale despite that ArtPort's agreements with Studio 41 do not require such communications. She spoke with the family regarding Plaintiff's request to buy his work below market value pricing and the even larger offers to buy a portion of the business but the discussion was mainly informational. Plaintiff desired to be considered the largest collector of Garde art and he wanted Mr. Garde to know that he had collected his work and she informed him of that, too. Ms. Loving believes the conversation was telephonic.

21.     Is Nancy or ArtPort/ArtSuite providing indemnification or otherwise have either of them agreed to pay for the attorneys' fees for Studio 41, Harold, Mr. Hinkelman, the St. Pierres or either of them, or ISP Holdings with respect to this civil action?

**RESPONSE**: Subject to and without waiving any objection, see 2019 Portfolio Marketing Management Agreement.  ArtPort may pay fees related to its members'/investors' defense.

22.     Do you contend that Plaintiff agreed to pay for shipping and storage of the Artwork?  If your answer is yes, please identify the facts, documents, and communications  supporting that contention.

**RESPONSE**:  See Responses to Interrogatory numbers 1, 7, 8, and 9 and documents previously produced or produced herewith.

23.    Explain the factual basis of your counterclaim.

**RESPONSE**:  This contention interrogatory, sometimes is overbroad.  *See Felix v. City & County of Denver,* No. 08-cv-02228-MSK-KMT, 2009 WL 3838587 (D.Colo. 2009); *Grynberg v. Total S.A.*, No. 03-cv-01280-WYD-BNB, 2006 WL 1186836, at *6 (D. Colo. May 3, 2006) ("The nature of the federal discovery rules themselves suggests they are intended to facilitate reasonable discovery, not unduly burdensome, but selected by each party to fit the needs of the particular case.  The discovery rules provide no absolute, unharnessed right to find out every conceivable, relevant fact that opposing litigants know…" ). Subject to and without waiving any objection, see Responses to Interrogatory numbers 1, 7, 8, and 9 and documents previously produced and/or produced herewith. As per the parties' agreement, both written and verbal, ArtPort was to pay for the shipping costs and Plaintiff agreed to cover crating, storage and insurance of his art while ArtPort held the art at his request until his first home had been renovated and then the second house, that was also completely renovated, was built and/or until he was ready.

24.    Explain the factual basis for your affirmative defenses.

**RESPONSE**:  This contention interrogatory, sometimes is overbroad.  *See Felix v. City & County of Denver,* No. 08-cv-02228-MSK-KMT, 2009 WL 3838587 (D.Colo. 2009); *Grynberg v. Total S.A.*, No. 03-cv-01280-WYD-BNB, 2006 WL 1186836, at *6 (D. Colo. May 3, 2006) ("The nature of the federal discovery rules themselves suggests they are intended to facilitate reasonable discovery, not unduly burdensome, but selected by each party to fit the needs of the particular case.  The discovery rules provide no absolute, unharnessed right to find out every conceivable, relevant fact that opposing litigants know…" ). To require a litigant to "identify each denial of a material allegation and each affirmative defense in its pleadings and then to state all material facts supporting the denial or affirmative defense, identify all witnesses with knowledge of those facts, and identify all material documents supporting the denial or affirmative defense is unduly burdensome as a matter of law and abuse of the discovery system." *Id.* at *7. Subject to and without waiving any objection, many of the factual bases that support Defendants' affirmative defenses are set forth in the pleadings, discovery responses, and documents produced herewith and Defendants generally assert that Plaintiff brought this litigation  to unwind a transaction he no longer wishes to enter into due to one or more of the following:  his financial condition, health reasons, unrelated litigation(s), buyers remorse, own actions or inability to store the art he purchased, by fabricating reasons that Defendants engaged in wrongdoing, damaged art, that Defendants swapped out art for the art Plaintiff purchased or otherwise breached the parties agreement to buy and sell Garde artwork.  Plaintiff's claims have no basis in law or statute and, even if they did, he has suffered zero damages.  Plaintiff claims and damages are further groundless because he claims

that Defendants devalued the art he purchased while at the same time strangely claiming he has lost the increase in value of the art during the time Defendants allegedly failed to ship him the art. Defendants could not have stolen that which Plaintiff refused to accept and the artwork was not "taken" by Defendants. Plaintiff has not identified with any modicum of particularity what fraud was effected upon him and his theft and fraud claims are barred by the contract. Plaintiff should be estopped or prevented from claiming breaches of the agreement because he was the one who agreed to, waived and consented to the delay in shipping the art due to his own circumstances and construction on his home. Plaintiff may have known that he had these claims against Defendants at the time of his bankruptcy disclosures and, therefore, is judicially estopped and/or has admitted that he has no claim or cannot bring a claim against Defendants.

25.     Explain Edward the curator's complete employment history, including training, experience, reason for hiring, employment performance, pay, and reason for his separation from employment

**RESPONSE**:  Subject to and without waiving any objection, Defendants are without knowledge or information sufficient to respond to Interrogatory number 25 and the request is not relevant.  Mr. Robinson was not an employee of ArtPort.  Edward Robinson was hired as a guest curatorial consultant by Artport and Artlery, a Boston Gallery, to curate a special 3 part exhibition. Ms. Loving was told that Edward Robinson graduated from Oxford and had previously worked at the Smithsonian, the MoMa and LACMA. He was paid by the hour for his time selecting art from 70 years of work of Mr. Garde. Once that show was completed Mr. Robinson devoted his time to a photography project in LA.

## RESPONSES TO REQUESTS FOR PRODUCTION

1.     Please produce the documents and communications identified or relied upon in  your responses to the Interrogatories served with this discovery.

**RESPONSE**:  Subject to and without waiving any objection, see documents produced herewith or previously produced.

2.     Please provide ArtPort's/ArtSuite's complete tax returns for the years 2015 – 2018.

**RESPONSE**:  Defendants object on the grounds that the subject tax returns and ArtPort's financial information are not relevant to any claim or recoverable damage in this breach of contract action. *Liedholt v. District Court*, 619 P.2d 768 (Colo. 1980). ArtPort's tax returns are confidential and the need for the tax return is not necessary to any legal claim or defense.  Plaintiff's request for tax returns is solely for purposes of

harassment, embarrassment or oppression. Defendants previously produced tax returns relative to proving addresses of the Defendants and did so not because the tax returns are relevant to any issue in dispute in this case but because they were ordered by the Court to do so for purposes of proving residency.

3.      Please provide all leases and rental agreements for any place where ArtPort/ArtSuite's has conducted business at any time from the years 2015 through the present.

**RESPONSE**:  Defendants object on the grounds ArtPort/ArtSuite's rental agreements or leases have no relevance to the instant litigation and are requested solely to protract the time and expense of this litigation.  Where ArtPort conducted business is irrelevant to the issues in dispute and, now, that jurisdiction has been established, the jurisdiction of this litigation.

4.      Please provide all documents, data, and communications relating to Nancy's contract to act on behalf of Harold.

**RESPONSE**:  Subject to and without waiving any objection, Defendants state that Ms. Loving's written agreements rented to Harold Garde art are with Studio 41, not Mr. Garde individually.

5.      Please provide all documents, data, and communications relating to Nancy's contract to act on behalf of Studio 41.

**RESPONSE**:  Defendants object on the grounds Request for Production number 5 is overly broad and unduly burdensome in that documents, data and communications "relating to" Ms. Loving's agreement to sell Mr. Garde's artwork would lead to the production of numerous and irrelevant documents and therefore also violates the proportionality requirements contained in F.R.C.P. 26.  Subject to and without waiving any objection, see 2013 and 2019 ArtPort/Studio 41 Agreements produced herewith.

6.      Please provide all declaration pages for any insurance policy that may have provided coverage, at any time during 2015 through the present, for ArtPort/ArtSuite, its building or facilities, its inventory, or any Artwork that may have been sold to Plaintiff.

**RESPONSE**:  Defendants object on the grounds ArtPort's insurance documents are not relevant to any claim in this litigation.  Subject to and without waiving any objection, see documents produced herewith.

7.      Please provide ArtPort's/ArtSuite's complete bank statements for the time period from January 1, 2016 through December 1, 2019.

**RESPONSE**: Defendants object on the grounds Request for Production number 7 is harassing, oppressive, requests confidential information and is not likely to lead to the discovery of relevant or admissible evidence. Request for Production number 7 is solely intended to unnecessarily amplify this litigation and harass ArtPort/Ms. Loving. Bank statements related to ArtPort's receipt of payments from Plaintiff are produced herewith.

8.      Please provide ArtPort's/ArtSuite's business records or other documentation demonstrating its revenue from each piece of art it sold, including the name of the artist, the  amount of revenue, and the name of the piece of art, for the time period from January 1, 2016  through December 1, 2019.

**RESPONSE**:  Defendants object on the grounds Request for Production number 8 is harassing, oppressive, and requests information that will not lead to the discovery of relevant or admissible evidence and violates the proportionality requirements contained in F.R.C.P. 26.  Subject to and without waiving any objection, Defendants have sold numerous of pieces of art and the unrelated art is not relevant to Plaintiff's purchases nor could Defendants identify each piece of art at this time.  Defendants assert that the price of Garde art separate from the Garde art purchased by Plaintiff is not relevant as each piece of art is unique.  Without waiving any objection, Defendant ArtPort produces herewith records of previous Garde art sold by ArtPort (Patrick D. acquisition, "Kimonos" sale, and University of Wyoming Museum purchase) and pricing for Garde art.

9.      Please provide ArtPort's/ArtSuite's profit and loss statements and balance sheets for the time period from January 1, 2016 through December 1, 2019.

**RESPONSE**:  See Responses and objections contained in Response to Request for Production number 2.  Profit and loss statements and balance sheets are not relevant, and are confidential.

10.     Please provide any documents and any communications relating to any agreement, pledge, promise, undertaking, or other transaction relating to or involving the management of ArtPort/ArtSuite, or the sharing of revenue, profits, or losses, between ArtPort/ArtSuite or Nancy, on the one hand, and Mr. Hinkelman, the St. Pierres or either of  them, ISP Holdings, Harold, or Studio 41 on the other hand.

**RESPONSE**:  See  Membership Interest Agreement involving ISP, Hinkleman and Loving and the 2013 and 2019 Studio 41/ArtPort Agreements, previously produced.

11.     Please provide ArtPort's/ArtSuite's operating agreement, from the original agreement, any amendments, and the current version of the agreement.

**RESPONSE**:  Defendants object on the grounds Request for Production is vague and

unintelligible.  Subject to and without waiving any objection, see operating agreement, membership interest agreement and amendments previously provided to Plaintiff's counsel.

12.     Please provide all documents, data, and communications Nancy and ArtPort/ArtSuite contend support their counterclaim.

**RESPONSE**: See documents identified in response to Interrogatory number 19 and explanation set forth in response to Interrogatory number 23.  Discovery is ongoing and Defendants reserve the right to supplement this response.

13.     Please provide all communications with Plaintiff.

**RESPONSE**:  Previously produced or produced herewith.

14.     Please provide all invoices, spreadsheets, receipts, itemizations, inventories, or documents you have provided to or received from Plaintiff at any time, which relate to or reflect  the items of Artwork he purchased, or that you contend he purchased.

**RESPONSE**:  Defendants object that the requested information is equally in the possession of Plaintiff as Plaintiff is asking for documents "provided to" or "received from" Plaintiff. Without waiving any objections, see invoices, spreadsheets, powerpoint and itemizations provided by Ms. Loving to Mr. Charnoff via email previously produced. .

15.     Please provide any bank statements, deposit slips, or other documents showing how Plaintiff's money was received and/or deposited for his payment of the Artwork, including  the accounts it went into.

**RESPONSE**:  Defendants object on the grounds this Request seeks confidential information that is not relevant and/or that would never be produced without a protective order.  Without waiving said objection, see redacted bank statements produced herewith.

16.     Please provide the bank statements, deposit slips, wire transfer receipts, withdrawal receipts, letters, and any other documents, communications, or data that relate to or reflect any removals of monies from the accounts that received Plaintiff's payment funds for the Artwork, for a period of 24 months after those payments were received.

**RESPONSE**: Defendants object on the grounds Request for Production number 16 seeks confidential information that is solely for the purpose of harassment or oppression and is not likely to lead to the discovery of admissible or relevant evidence and violates

the proportionality requirements contained in F.R.C.P. 26. The request seeks confidential financial information. Said documents, other than the bank statements produced herewith, will not be produced.

17.     Please provide all contracts, memorandums of understanding, operating agreements, bylaws, articles of incorporation or organization, and any other documents relating to or reflecting any financial or business dealings by or between Nancy, ArtPort/ArtSuite, Mr. Hinkelman, the St. Pierres or either of them, ISP Holdings, or ArtSuite from the time period of January 1, 2015 through the present.

**RESPONSE**: Defendants object on the grounds Request for Production number 17 is not relevant and is solely intended to protract this litigation by time and expense. Subject to and without waiving any objection, some of the requested documents are produced herewith is ArtPort Limited Membership Investment Agreement, operating agreement/amendments, previously produced.

18.     Please provide all contracts, invoices, bills of lading, receipts, communications, and documents reflecting the storage, shipping, and any other costs associated with the handling of the Artwork.

**RESPONSE**: See documents produced herewith.

19.     Produce all final receipts and invoices relating to Plaintiff's allegations or claims, your allegations or denials or counterclaims, or your affirmative defenses.

**RESPONSE**: Defendants produce herewith receipts and invoices related to the art purchase as well as the expenses associated with Plaintiff's refusal to accept the art.

20.     Produce all documents that support your affirmative defenses.

**RESPONSE**: Subject to and without waiving any objection, discovery is ongoing but Defendants produce responsive documents herewith or previously.

21.     Produce all declaration pages and insurance policies that protected or related to any Artwork purchased by or allegedly purchased by Plaintiff, or sold or possessed by any Defendant from January 1, 2015 through the present.

**RESPONSE**: See insurance documents produced and referenced above.

22.     Produce all Peter Lik storage receipts for any of his art, and all storage receipts for all other artists in your possession, or that relate to any art held, possessed, or sold by any Defendant, or stored by any Defendant from January 1, 2015 through the present.

**RESPONSE**:  Defendants object and will not produce any such documents as not relevant to this litigation, burdensome, and solely for the purposes of harassment or fishing expedition.  Further the interrogatory violates the proportionality requirements contained in F.R.C.P. 26. Without waiving said objection, see Lik storage invoice (Dv01 Consignment Invoice) dated ispApril 6, 2017 produced herewith.

23.    Produce all communications with Edward the curator.

**RESPONSE**:  Defendants object and will not produce any such documents as completely not relevant to this litigation, burdensome, and solely for the purposes of harassment or fishing expedition.  Such communications were mainly verbal.

24.    Produce Ms. Loving/ArtPort/ArtSuite's contracts or agreements with any artists in effect from January 1, 2015 through the present.

**RESPONSE**:  Defendants object and will not produce any such documents as not wholly not relevant to this litigation, burdensome, and solely for the purposes of harassment or fishing expedition.  The documents are also confidential.

## RESPONSES TO REQUEST FOR ADMISSION

1.    Admit that Exhibit 1 served herewith is a true and authentic copy of the email that it depicts.

**RESPONSE**:  Defendants admit that Ms. Loving sent the email depicted on Exhibit 1 was sent to the recipients stated on the email and that the contents of the email are those that she wrote at that time.  The email contains a black box and exhibit number 6that are not on the original email.

2.    Admit that the Nancy Loving Affidavit filed in support of Defendant's Motion to  Dismiss for Lack of Jurisdiction, docket number 11-1, served herewith as Exhibit 2, contains at least two false statements of fact.

**RESPONSE**:  Defendants state that Ms. Loving's affidavit contains her understanding of the facts at the time it was made and, to the extent it contains a reflection of her misunderstanding or misstatements, they were not knowingly or intentionally falsely made at the time.

3.    Admit that you did not store Plaintiffs' Artworks in a separate storage facility, apart from any other artworks, each time it was stored.

**RESPONSE**:  Deny in part.  Plaintiff's artwork was at all times kept physically separate from other artwork.  For most of the time ArtPort stored Plaintiff's art while he refused

to accept shipment, it was in a separate storage unit from other artwork.

Dated: April 7,  2020.

<div style="margin-left:40%">

Shoemaker Ghiselli + Schwartz LLC


*/s/  Liza Getches*
Elizabeth H. Getches
SHOEMAKER GHISELLI + SCHWARTZ LLC
1811 Pearl Street
Boulder, CO  80302
Telephone:  (303) 530-3452
FAX:  (303) 530-4071
Email:  lgetches@sgslitigation.com
*Attorney for Defendants Nancy Loving, d/b/a*
*Artsuite NY, Artport LLC, Studio 41, LLC, and*
*David Hinkelman*

</div>

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of April, 2020 a true and accurate copy of the foregoing **NANCY LOVING, d/b/a ARTSUITE NY, ARTPORT LLC, STUDIO 41, LLC, AND DAVID HINKELMAN'S RESPONSES TO PLAINTIFF'S FIRST SET OF WRITTEN DISCOVERY** was served via E-mail on the following:

Ian T. Hicks, Reg. No. 39332
The Law Office of Ian T. Hicks LLC
6000 East Evans Avenue, Building 1, Suite 360
Denver, Colorado, 80222
Telephone: (720) 216-1511
Facsimile: (303) 648-4169
E-mail: ian@ithlaw.com


*s/ Liza Getches*