# EXHIBIT 23

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 19-cv-2381-LTB-MEH

WALTER CHARNOFF

     Plaintiff,

v.

NANCY LOVING d/b/a ARTSUITE NY, ART PORT LLC,
STUDIO 41, LLC, ALICIA ST. PIERRE, MARTIN ST. PIERRE,
ISP HOLDINGS, INC., and DAVID HINKELMAN

     Defendants.

---

**PLAINTIFF'S AMENDED RESPONSES TO DEFENDANT NANCY LOVING d/b/a
ARTSUITE NY, ART PORT LLC, STUDIO 41, LLC, AND DAVID HINKELMAN'S
FIRST SET OF WRITTEN DISCOVERY**

---

Plaintiff hereby serves his Responses, which are affirmed under oath to the best of his knowledge, information, and belief as to the factual information in the interrogatory responses only, and subject to any objections stated therein, as follows:

**Responses to Interrogatories**

1.     Identify all evidence in your possession which supports your allegations in paragraph 30 of the Second Amended Complaint that Mr. Hinkelman made statements that "he knew were false when they were made."

1.     Plaintiff objects to this request because it requests "all evidence" because such interrogatories seek to lock in or limit parties to a position before they have had the full benefit of discovery and factual development. *Dalmatia Imp. Grp., Inc. v. Foodmatch, Inc*., 2016 WL 5721161, at *1 (E.D. Pa. Oct. 3, 2016) ("[T]here is considerable support for deferring contention interrogatories until the end of the discovery period.") (collecting authorities). Subject to this objection, Plaintiff states there are numerous indications that David knew his representations stated in paragraphs 28-29 of the Second Amended Complaint were false, which are the representations referred to in paragraph 30.

First, David's statements were affirmative representations, and therefore required affirmative knowledge in order to be true.

Second, David told Plaintiff verbally and via text that ignorance is not bliss, that the art was rapidly increasing in value and that it should be purchased immediately while it was still available.

Third, the statement that the art was increasing in value because of a large number of private collector and recent museum acquisitions was false because Ms. Loving was the sole agent for selling Mr. Garde's artwork, yet her 2016 tax returns showed only $5,000.00 in sales other than Plaintiff's artwork.  It is not logical that $5,000.00 in sales could drive up the market to impact the value of $186,000.00 in art.  Further, these numbers demonstrate that there was no rush of sales on Mr. Garde's artwork, and certainly not enough to impact the value of that art as represented.

Fourth, the invoices disclosed by Defendants at Loving 2017-2029, which are the records of all sales from 2016-2019, show no sales during 2016-2017 when Plaintiff made his purchases, and the amount of those purchases are less than half of Plaintiff's purchases, combined.

Fifth, those same invoices demonstrate that Mr. Garde's artwork was not rapidly increasing in value.  Sixth, the appraisal disclosed by Defendants at Loving 0502-0517 was done for purposes of a tax writeoff, and was not done according to the Uniform Standards of Appraisal Practice and is thus not a proper appraisal.  Further, David told Plaintiff that they inflate the cost of Mr. Garde's artwork in order to obtain a valuation to which they are not entitled.  Seventh, Ms. Loving and AP later attempted to charge both sales tax and shipping costs, with no valid or reasonable explanation for the change, thereby indicating an intent not to perform and that the prior representations by Ms. Loving and David were in fact false when made.

Eighth, there is nothing in the Portfolio Managing Marketing Agreement (the "2014 Agreement") at Loving 566-573 providing that Ms. Loving or AP lacked the authority to set prices, and as a whole, that agreement indicates she had authority to do so.

Ninth, with respect to paragraph 32 of the SAC, David, as a sophisticated businessperson, was aware or should have been aware of AP's tenuous financial position, the very limited sales of Mr. Garde's artwork, and that it did not have the resources to undertake the broad array of marketing and development efforts reflected in that allegation.

Tenth, Ms. Loving and AP were already obligated under the 2014 Agreement to market and develop Mr. Garde's artworks to increase its value, yet informed Plaintiff in 2016 that they needed his purchase in order to keep their contract with Studio 41 LLC ("S41") and Mr. Garde, thereby indicating that despite having years of time to successfully complete the tasks that were being promised to Plaintiff, Ms. Loving and AP had failed at those tasks.  This demonstrates knowledge and awareness they would be unable to now successfully complete the same tasks in 2016 and going forward.  In essence, Ms. Loving and AP, as restated and represented by David, were promising to do what they had already failed to do repeatedly.

2.      Identify by date and describe each "misrepresentation, entreaties, efforts to cajole Plaintiff into purchasing the art" made by Mr. Hinkelman, as alleged in paragraph 34 of the Second Amended Complaint.

2.      Plaintiff objects to this request because it requests "all evidence" because such interrogatories seek to lock in or limit parties to a position before they have had the full benefit of discovery and factual development. *Dalmatia Imp. Grp., Inc. v. Foodmatch, Inc*., 2016 WL 5721161, at *1 (E.D. Pa. Oct. 3, 2016) ("[T]here is considerable support for deferring contention interrogatories until the end of the discovery period.") (collecting authorities).  Subject to that objection, Plaintiff incorporates his response to the previous interrogatory.

3.      Explain how shipping the paintings was "contrary to Colorado law governing [Mr. Charnoff's] claims and damages" as alleged in paragraph 50 of your Second Amended Complaint.

3.      Plaintiff objects to the extent this request seeks a legal conclusion.  Plaintiff objects to the extent this request seeks work-product information, including the mental impressions and legal theories of Plaintiff's counsel.  Subject to those objections, Plaintiff states that he had identified rescission, restitution, and disgorgement as relief in his prayer for relief, and Plaintiff, as the master of his complaint, is entitled to assert the claims and legal theories available under Colorado law.  In other words, Colorado law allows Plaintiff to elect his remedies, it does not allow Defendant to elect remedies for the Plaintiff by foisting the fruits of a transaction sought to be rescinded upon the Plaintiff.  Moreover, under Article 2 of the Uniform Commercial Code, the risk of loss, meaning, the burden to prove goods are nonconforming, transfers to the buyer.  Plaintiff never accepted delivery, and was not required to alter the relative burdens and rights that exist by default under Article 2.

4.      With respect to any damage You contend occurred to the art You purchased from ArtPort, identify:
    a)      the name or title of artwork,

    b)      date of artwork,

    c)      describe the damage to the art,

    d)      describe the location on art where damage occurred, and

    e)      state whether the damage occurred before or after You paid for the art.

4.      Plaintiff objects to this request to the extent it requests all evidence because such interrogatories seek to lock in or limit parties to a position before they have had the full benefit of discovery and factual development. *Dalmatia Imp. Grp., Inc. v. Foodmatch, Inc*., 2016 WL 5721161, at *1 (E.D. Pa. Oct. 3, 2016) ("[T]here is considerable support for deferring contention interrogatories until the end of the discovery period.") (collecting authorities).  Plaintiff also objects to the request to the extent it focuses on evidence available at the time the initial pleadings were filed, because that is not the evidence, or the full spectrum of evidence, to be

presented at trial, and therefore this request seeks information that is not reasonably calculated to lead to admissible evidence with respect to that temporal limitation.

Subject to these objections, Plaintiff identifies the paintings and artworks identified in the Ship Art Terry Dowd LLC condition reports that were disclosed to Defendants.  With respect to whether it was damaged before or after Plaintiff paid for the art, it is not relevant, as Ms. Loving and AP had an obligation to deliver the art in the condition it was previously represented to be in, which Ms. Loving and AP stated was in good condition, under Article 2 of the Uniform Commercial Code adopted in Colorado, under the contract between AP and Plaintiff, and pursuant to the representations made by Ms. Loving to induce Plaintiff's purchases of the artwork.  Ms. Loving sent a catalog before the first purchase that purported to show it in pristine condition, she sent photos before the second purchase that purported to show the same thing, and finally, stated that the art remained in that condition in various written communications. *See* Plaintiffs 219.  To the extent this request seeks information regarding when the damage occurred, that information is not reasonably calculated to lead to admissible evidence and Plaintiff objects, because Ms. Loving's and AP's obligation to deliver the art in good condition did not lawfully expire or extinguish merely because Plaintiff paid for the art.  That obligation still survives, to this day.

5.      With respect to the Journal, identify by name/title and describe each of the "14 paintings", two unbound paintings, and cover of the Journal that you claim comprised the Journal as alleged in paragraph 52 of your Complaint.

5.      Plaintiff objects to this request to the extent it requests all evidence because such interrogatories seek to lock in or limit parties to a position before they have had the full benefit of discovery and factual development. *Dalmatia Imp. Grp., Inc. v. Foodmatch, Inc*., 2016 WL 5721161, at *1 (E.D. Pa. Oct. 3, 2016) ("[T]here is considerable support for deferring contention interrogatories until the end of the discovery period.") (collecting authorities).  Plaintiff also objects to the request to the extent it focuses on evidence available at the time the initial pleadings were filed, because that is not the evidence, or the full spectrum of evidence, to be presented at trial, and therefore this request seeks information that is not reasonably calculated to lead to admissible evidence with respect to that temporal limitation.

Subject to those objections, Plaintiff states that he was sold on the journal as a result of its uniform, complete, and cohesive character as a collection of artworks, and that fundamental character was destroyed when the journal was then incomplete, with parts missing.  This is akin to buying the original manuscript of a famous book such as Moby Dick or A Tale of Two Cities, and making the purchase based on the belief one was receiving the entire, complete manuscript, then only later finding out that three chapters are missing.  When Plaintiff reviewed the journal, it was a complete, unitary, and bound collection.  What was to be provided to Plaintiff it was not bound, and Plaintiff later saw several of the journal paintings for sale, online, at AP's online store.  Ms. Loving admitted at Plaintiffs 28 that less than all the paintings were provided that were originally in the journal.  There were originally 16 journal paintings.  The complete journal, before it was split apart by Ms. Loving, include the 11 paintings at Plaintiffs 220-230 plus 5 others that Plaintiff did not take pictures of.

6.       Identify all evidence in your possession at the time you filed your Complaint that the Journal has lost value or that its fundamental character has been damaged, because it is unbound, as alleged in paragraphs 43 and 44.

6.       Plaintiff incorporates his response to request 5.

7.       Identify the three Journal paintings that were placed for sale on the internet, as alleged in paragraph 45 of your Complaint, the date of such internet posting(s), and the evidence you have that such posting on the internet occurred.

7.       Plaintiff incorporates his response to request 5.  Plaintiff also objects because Ms. Loving has not produced complete business and inventory records tracking what happened to the missing journal paintings.  Plaintiff further states that the journal paintings were on sale on artsy.net.  Plaintiff is in the process of locating and producing copies or screenshots of those items for sale.

8.       Identify by name/title each and every piece of art that made up the First Purchase, as defined in your Complaint, and the difference between what you believe You purchased and what you received and/or is stored at Terry Dowd.

8.       Plaintiff objects to this request because discovery is ongoing, and the authenticity of any piece of art at Terry Dowd is not admitted, and further because Plaintiff has a viable rescission remedy and the time for election has not occurred.  Plaintiff states that the disputed items on the first and second purchase are (a) theaffirmatively unbound journal paintings, (b) the five missing journal paintings, (c) the missing certificates of authenticity, (d) some of the missing free gifts (sketches, event posters, works on paper, tan vessels, and strappos), (d) the red chair painting that was switched for another red chair painting, and (e) that the vast majority of the art is significantly damaged, even though it was represented verbally, in writing, and in photographs to be in good condition *See* Loving 49-51, 100, Plaintiffs 31-33, 131, 167, 282, 289.  Moreover, sculptures on table was part of the purchases that was not received by Terry Dowd, but is apparently being shipped to Terry Dowd by Ms. Loving.  The Terry Dowd condition reports can be compared to the photos used by Ms. Loving to induce Plaintiffs' purchase.  These have been disclosed.

Plaintiff received the items from the first purchase that were promised except sculptures on table, certificates of authenticity, a bill of sale, a printed and bound portfolio, and two signed books from Harold Garde.  These items were material to Plaintiff's first purchase.

9.       Identify by name/title each and every piece of art that made up the Second Purchase, as defined in your Complaint, and any difference between what you believe you purchased and what you received and/or is stored at Terry Dowd.

9.       Plaintiff incorporates his response to request 8, but adds that he also failed to receive, in addition to the items stated in response to request 8 that do not apply exclusively to the first purchase, the missing signatures on paintings, that Harold Garde was going to write on

the back what he was thinking on the more valuable paintings at the time of their creation, and also failed to receive a bill of sale.

    10.    Identify each and every material misrepresentation made by Ms. Loving to you and for each describe in detail the misrepresentation, when the misrepresentation was made, each document that evidences the misrepresentation, and the damages You knew You had suffered as of the filing of the Complaint/Second Amended Complaint.

    10.    Plaintiff objects to this request to the extent it requests all evidence and each and every misrepresentation because such interrogatories seek to lock in or limit parties to a position before they have had the full benefit of discovery and factual development. *Dalmatia Imp. Grp., Inc. v. Foodmatch, Inc.*, 2016 WL 5721161, at *1 (E.D. Pa. Oct. 3, 2016) ("[T]here is considerable support for deferring contention interrogatories until the end of the discovery period.") (collecting authorities).  Plaintiff also objects because discovery is ongoing, and further evidence showing that representations were false and material may be obtained.  Plaintiff objects to the extent the term "material" requires a legal conclusion.

    Subject to and without waiving the foregoing, Plaintiff states that the following misrepresentations of material fact were made by Ms. Loving: (1) that the art was insured and would remain insured until it arrived in Colorado, Plaintiffs 513, 514, 73 (2) that the art would be shipped promptly, by a date certain, and professionally when in fact it was shipped in a manner that caused substantial damage to the art, Plaintiffs 73, Loving 49-51, (3) that the art would be crated, shipped, and insured at AP's expense, Plaintiffs 3, 131, 282, Loving 49-51, (4) the purchases would include certificates of authenticity, that Ms. Loving would ensure the art was signed, and that there would be free gifts (sketches, event posters, works on paper, tan vessels, and large black and white two figure canvas), Loving 49-51, 100, Plaintiffs 131, 167, 282, 289, (5) Ms. Loving reneged on her promises and refused to send the art unless Plaintiff agreed to sign a Sales Agreement he had not seen before, included an as-is clause, and which was unsupported by any consideration, Plaintiffs 5-22, (6) that Ms. Loving would work with Edward Robinson and others, and herself generally, to create a market for the art and increase its value as an investment for the second purchase, Plaintiffs 173, (7) that she would ship the journal, but then later admits unbinding it, Loving 154, (8) and finally, Ms. Loving attempted to impose new costs, conditions, and payments that were not part of their agreement, Plaintiffs 5-22,  (9) Ms. Loving stated that the art would be stored and cared for professionally, when in fact it was stored in her home and was damaged at some point while in her care, or during shipping, Plaintiffs 2, 32, (10) Ms. Loving also said the art was rapidly increasing in value due to recent collector, museum, and other acquisitions, and (11) Ms. Loving said that Plaintiff was not the largest collector, and in fact, that a doctor in Miami had a much larger collection which was so valuable, it was cause the doctor's kids to inherit a large estate, (12) that the art would be shipped professionally and properly crated, and would be insured all the way until final delivery into Colorado, (13) Ms. Loving said that she had the right to withhold Plaintiff's art, even though it was paid for in full, over a dispute over shipping fees that were less than 1% of the value of the art she admitted was paid for, and (14) that it would be "white glove" delivery, (15) that the art was museum quality, that it was undamaged, and that she was keeping it in her possession because it was going to be placed on loan to several museums, (16) Edward the curator was going to put it into gallery shows to double the price, see the text and emails previously

identified and produced, (17) that  there would be professional custom crates, and (18) the free gifts would be signed.  Plaintiff also incorporates responses to requests 8 and 9 herein.


11.     Identify specifically the "various pieces of artwork" that Ms. Loving "tried to switch" and that were different from that which had been agreed upon, as alleged by You in paragraph 80 of your Second Amended Complaint.

11.     Plaintiff incorporates by reference his response to interrogatory 8, 9, and 10.


12.     Identify how You believe the art's "aesthetic and artistic value" has "been destroyed by Defendants' wrongful acts and omissions" as alleged by you in paragraph 79 of your Second Amended Complaint.

12.     Plaintiff incorporates by reference his response to interrogatory 5.  Plaintiff further states that Ms. Loving's sales pitch to him, and her inducement to Plaintiff to buy the art, was based on Plaintiff's appreciation for Mr. Garde's creative process, the history of his career, and, in general, the story tied to the art.  Through Plaintiff's long and tortuous struggle dealing with Ms. Loving, AP, and Mr. Hinkelman, to get Ms. Loving and AP to honor their promises, her repeated breaches of agreements, and her fraudulent conduct to induce Plaintiff's purchase, the story that became associated with the art was not that of the artist, but instead the story of frustration, futility, and being taken advantage of, lied to, and misled.  Looking at the art, which is now severely damaged, merely engenders frustration, the source of which is the wrongful acts and omissions described in this response by Ms. Loving, AP, and David.  Ms. Loving said the bound journal, because of its bound character, had special historic provenance, and that was used to induce the purchase, but then she affirmatively unbound it.  Indeed, Ms. Loving actually disclosed four of the five missing journal paintings.  Further, the damage the art suffered, when it was represented to be in pristine condition and museum quality, in the possession, custody, or control of Ms. Loving, as detailed in the Terry Dowd condition reports, has made the art aesthetically unappealing.
13.     Identify the injuries, damages, and losses You had suffered as of the filing of the Second Amended Complaint due to Defendants "prior retention of the paid-for art prior to its shipment after litigation was commenced."

13.     Plaintiff objects to this request to the extent that discovery is still continuing, and further facts and damages may be revealed, and his damages may continue to increase over time.  Plaintiff also objects that Defendants have not provided full information that would determine when the art was damaged, which may impact the damages calculation.

Subject to those objection, Plaintiff states that he lost the time-value of money for the $186,000.00 he could have placed in another investment, he lost the use and benefit of the art during that time period, he suffered noneconomic damage for emotional distress, mental anguish, and frustration in dealing with Ms. Loving, AP, and David and the wrongful acts and omissions identified in these discovery responses, he lost the benefit of his bargain, in that he paid nearly

the median price of a home in the United States and received nothing in return, he suffered harm in that the art has been transformed into a symbol of frustration and futility and will never have the same value, he suffered damages because the art has been substantially damaged and will never again have the same aesthetic or financial value, and finally he suffered damages comprising the difference between the approximately $440,000.00 value stated by Ms. Loving for the artwork, and the amount he paid, and could not sell the art and reap that profit because of Ms. Loving's, AP's, and David's wrongful acts and omissions.  Ms. Loving gave this valuation, Plaintiff is reviewing his records to identify any responsive documents.  Plaintiff also incorporates his storage fees, condition reports, and legal fees and costs related to the litigation.

14.     Identify by dollar amount the "substantial portion of Plaintiff's $186,000 in purchase funds" that Alicia, Martin and ISP received and that you had a factual basis for alleging in Paragraph 81 of your Second Amended Complaint.

14.     Plaintiff objects to this request to the extent it requests all evidence because such interrogatories seek to lock in or limit parties to a position before they have had the full benefit of discovery and factual development.  *Dalmatia Imp. Grp., Inc. v. Foodmatch, Inc*., 2016 WL 5721161, at *1 (E.D. Pa. Oct. 3, 2016) ("[T]here is considerable support for deferring contention interrogatories until the end of the discovery period.") (collecting authorities).  Plaintiff also objects to this request because discovery is ongoing, and additional facts may be revealed responsive to this request.  Plaintiff also objects because this request improperly seeks discovery in favor of a parties whom counsel serving this discovery does not represent, and therefore it is not reasonably calculated to lead to admissible evidence.

Subject to these objection, Ms. Loving stated to Plaintiff that a substantial portion of the funds in question were going to the Defendants identified in this request.  Further, an investment agreement disclosed by Defendants at Loving 587-591 states that Ms. Loving and AP had an obligation to provide the first $500,000.00 in revenue from the sale of Mr. Garde's art to them, minus certain expenses.  This was signed in 2013.

15.     Identify what Defendants obtained "without authorization" as alleged by You in paragraph 87 of your Second Amended Complaint.

15.     Plaintiff objects to this request to the extent it requests all evidence because such interrogatories seek to lock in or limit parties to a position before they have had the full benefit of discovery and factual development.  *Dalmatia Imp. Grp., Inc. v. Foodmatch, Inc*., 2016 WL 5721161, at *1 (E.D. Pa. Oct. 3, 2016) ("[T]here is considerable support for deferring contention interrogatories until the end of the discovery period.") (collecting authorities).  Plaintiff also objects to this request because discovery is ongoing, and additional facts may be revealed responsive to this request.  Plaintiff also objects to the extent this calls for a legal conclusion.

Subject to those objections, authorization to retain Plaintiff's purchase funds was contingent on the condition that Ms. Loving and AP transmit the artwork paid for.  A plain reading of the civil theft statute, and the elements of unjust enrichment, demonstrate that retaining someone else's money that you only have a right to upon performance of an act, constitutes an actionable violation.

16.     Plaintiff objects to this request to the extent it requests all evidence because such interrogatories seek to lock in or limit parties to a position before they have had the full benefit of discovery and factual development. *Dalmatia Imp. Grp., Inc. v. Foodmatch, Inc*., 2016 WL 5721161, at *1 (E.D. Pa. Oct. 3, 2016) ("[T]here is considerable support for deferring contention interrogatories until the end of the discovery period.") (collecting authorities). Plaintiff also objects to this request because discovery is ongoing, and additional facts may be revealed responsive to this request.

Subject to those objections, Plaintiff incorporates his response to request 13. Plaintiff also lost two vessels because during this time it was damaged by Nancy's pool table, and then Alicia St. Pierre tortiously interfered with the trade back that Nancy had approved for two vessels.

17.     Identify all evidence, including the identification of any document, in your possession at the time You filed your Complaint that you had suffered economic damages of "no less than $440,000.00".

17.     Plaintiff objects to this request to the extent it requests all evidence because such interrogatories seek to lock in or limit parties to a position before they have had the full benefit of discovery and factual development. *Dalmatia Imp. Grp., Inc. v. Foodmatch, Inc*., 2016 WL 5721161, at *1 (E.D. Pa. Oct. 3, 2016) ("[T]here is considerable support for deferring contention interrogatories until the end of the discovery period.") (collecting authorities). Plaintiff also objects to this request because discovery is ongoing, and additional facts may be revealed responsive to this request.

Subject to those objections, Plaintiff incorporates his response to request 13.

18.     Plaintiff objects to this request to the extent it requests all evidence because such interrogatories seek to lock in or limit parties to a position before they have had the full benefit of discovery and factual development. *Dalmatia Imp. Grp., Inc. v. Foodmatch, Inc*., 2016 WL 5721161, at *1 (E.D. Pa. Oct. 3, 2016) ("[T]here is considerable support for deferring contention interrogatories until the end of the discovery period.") (collecting authorities). Plaintiff also objects to this request because discovery is ongoing, and additional facts may be revealed responsive to this request. Plaintiff also objects because this request improperly seeks discovery in favor of a parties whom counsel serving this discovery does not represent, and therefore it is not reasonably calculated to lead to admissible evidence.

Subject to that objection, Plaintiff states that Ms. Loving told Plaintiff that Ms. St. Pierre, who is purportedly and was purportedly acting on behalf of ISP, stated that they refused to permit performance of various contractual conditions and duties because it would be too costly to AP. Plaintiff states that David clearly worked with Ms. Loving and AP to guide her improper actions, decision-making, and decisions to engage in wrongful acts and omissions based upon his email correspondence at Loving 2100-2153.

19.     Identify by bates number all documents, photographs and other evidence in your possession that Two Vessels was damaged by a pool cue or its proximity to a pool table.

19.     Plaintiff objects to this request to the extent it requests all evidence because such interrogatories seek to lock in or limit parties to a position before they have had the full benefit of discovery and factual development. *Dalmatia Imp. Grp., Inc. v. Foodmatch, Inc.,* 2016 WL 5721161, at *1 (E.D. Pa. Oct. 3, 2016) ("[T]here is considerable support for deferring contention interrogatories until the end of the discovery period.") (collecting authorities).  Plaintiff also objects to this request because discovery is ongoing, and additional facts may be revealed responsive to this request.

Subject to those objections, Plaintiff states that Ms. Loving admitted it was damaged in verbal conversations with Plaintiff in her home in the manner alleged in the Second Amended Complaint.  Plaintiff also states that he saw the damage personally, and it was in a playroom with a pool table and from his life experience and common sense, it was plain obvious that the proximity to the pool table caused it to be skewered by a pool cue.  Finally, in two separate written communications, Plaintiff told Ms. Loving that it was damaged in her home, and her failure to rebut or disclaim that accusation under the circumstances constitutes an adoptive or other admission, Plaintiffs 270, 281.

20.     Identify by bates numbers all the photographs of the art you purchased from ArtPort which support your claim that the Defendants damaged the art You purchased after you purchased it.

20.     Plaintiff objects to this request to the extent it requests all evidence because such interrogatories seek to lock in or limit parties to a position before they have had the full benefit of discovery and factual development. *Dalmatia Imp. Grp., Inc. v. Foodmatch, Inc.,* 2016 WL 5721161, at *1 (E.D. Pa. Oct. 3, 2016) ("[T]here is considerable support for deferring contention interrogatories until the end of the discovery period.") (collecting authorities).  Plaintiff also objects to this request because discovery is ongoing, and additional facts may be revealed responsive to this request.  Plaintiff also objects to this request because it is compound.  It asks and assumes that any photographs identified below are synonymous with the precise art purchased from AP, and also asks for photographs that might demonstrate damage happened while in Defendants' care, custody, or control or right of control.

Subject to those objection, Plaintiff points to Plaintiffs 57-71 and Loving 1175-1776, along with the condition reports disclosed from Terry Dowd.  Besides the bates numbers, there were other documents and photographs disclosed by the parties in support of this response.

21.     Identify by bates numbers all the photographs which support your statement made on May 20, 2019 that "Nancy switched my Strappos and free gifts" and You have "photos to prove it."

21.     Plaintiff incorporates his response to request 20.

22.      Identify by bates number all correspondence that You claim demonstrates that the costs of crates/crating was included in your purchase price.

22.      Plaintiff incorporates his response to request 10.  Further, in the first email after the purchase, Ms. Loving said the costs of crating and shipping would be covered.

## Responses to Requests for Production

1.      Produce all documents and photos relied upon or referenced in answering the above Interrogatories.

1.      Plaintiff objects to the extent this request seeks information that is privileged under the attorney client or work product privilege.  In formulating responses to this discovery, Plaintiff may have reviewed correspondence from his attorney, and he and his attorney may have shared their thoughts, impressions, and theories through such correspondence.  Subject to that objection, Plaintiff directs Defendants to each discovery request to identify the specific document that was relied upon for that request.  Plaintiff further states that he relied upon his disclosures, and the disclosure document produced by Defendants generally in responding to these requests.

2.      Produce all documents, in your possession at the time you filed your Complaint that You had suffered $440,000 in economic damages.

2.      Plaintiff objects to the extent this request seeks information that is privileged under the attorney client or work product privilege.  In formulating responses to this discovery, Plaintiff may have reviewed correspondence from his attorney, and he and his attorney may have shared their thoughts, impressions, and theories through such correspondence.  Plaintiff also objects to the extent this request presumes that a party must have possession of a document reflecting an understanding, a statement, a fact, or an event in order to comply with Fed. R. Civ. P. 11, when in fact memories, eyewitness identification, and many other forms of recollections and evidence are valid bases for an allegation or claim for relief.  Subject to these objections, Plaintiff refers a valuation by Ms. Loving to be used in a court proceeding as reflecting the value of the art.  On the phone, Ms. Loving was told that the valuation would be used in a court proceeding, and that it had to be accurate.  To the extent this request seeks information on how the damages are calculated, since Ms. Loving valued the art at approximately $440,000.00, and since Plaintiff paid $186,000.00, at the time the Complaint was filed, he had neither, so his damages were comprised of his payment plus the increase in value.

3.      Produce all documents which support your claim for Non-Economic Damages.

3.      Plaintiff objects to the extent this request seeks information that is privileged under the attorney client or work product privilege.  In formulating responses to this discovery, Plaintiff may have reviewed correspondence from his attorney, and he and his attorney may have shared their thoughts, impressions, and theories through such correspondence.  Plaintiff also objects to the extent this interrogatory presumes that Plaintiff must have relied solely upon

documentary information as the basis for his damages.  Plaintiff may have relied upon not only that type of information, but also upon the statements of Ms. Loving.  Plaintiff construes this request to include both exemplary damages and mental anguish, emotional distress, frustration, and embarrassment under the description "noneconomic damages."

Subject to these objections, Plaintiff states that with respect to the documents that provide evidence of mental anguish, emotional distress, frustration, and embarrassment, he identifies the same documents demonstrating breaches of contract and fraudulent misrepresentation.  Paying for something, and then not receiving it, and ultimately being subjected to a long litany of broken promises, failures to perform, and attempted changing conditions and material terms would be extremely frustrating, annoying, and mentally anguishing to an average person.  I did not seek treatment for my emotional distress, but what I went through with the Defendants caused me many sleepless nights, headaches, stomach pains, and other common physical manifestations one might expect from stress.

With respect to the documents that reflect Defendants' state of mind for purposes of exemplary damages, Plaintiff again points to the same documents demonstrating fraudulent misrepresentation but further notes that during the pendency of this litigation, Ms. Loving and AP caused the art to be shipped without proper insurance, caused the art to be damaged or are responsible for its damage because of the fact that their agents shipped the art improperly, and therefore engaged in the same types of willful, wanton, or fraudulent behaviors during the litigation that they engaged in before the litigation was filed and which forms the basis for their exemplary damages claim, thereby permitting the Court to increase the exemplary damage award under that statute.

4.      Produce all art appraisals and valuations which informed the filing of your Complaint and claim for economic damages.

4.      Plaintiff objects to the extent this request presumes that a party must have possession of a document reflecting an understanding, a statement, a fact, or an event in order to comply with Fed. R. Civ. P. 11, when in fact memories, eyewitness identification, and many other forms of recollections and evidence are valid bases for an allegation or claim for relief.  Subject to that objection, Plaintiff relied upon Ms. Loving's oral statements of value and a spreadsheet which was produced by Ms. Loving as a valuation to be used in a court proceeding as reflecting the value of the art.  On the phone, Ms. Loving was told that the valuation would be used in a court proceeding, and that it had to be accurate.

5.      Produce records reflecting the date(s) of your stays at Canyon Ranch and the Mayo Clinic.

5.      Plaintiff objects to this request to the extent that it seeks information that is not reasonably calculated to lead to admissible evidence.  Plaintiff did not seek treatment for emotional distress or mental anguish at either facility.  Further, the defamation claim is not yet part of the lawsuit.  Moreover, Plaintiff need not rely on anything but the jury's common wisdom and understanding to assess noneconomic damages in a case involving parasitic mental anguish

damages, rather than a case where they are the primary and indeed, sole damages, per *Anson v. Trujillo,* 56 P.3d 114 (Colo. App. 2002). (collecting authorities).

6.      Produce records showing You were ordered by a doctor not to look at a screen and not work in or around April 2020.

6.      Plaintiff objects to this request to the extent that it seeks information that is not reasonably calculated to lead to admissible evidence.  There are no such records.

7.      Produce documents reflecting the date the renovation of your home was completed and construction of your second home was completed.

7.      Plaintiff objects to this request to the extent that it seeks information that is not reasonably calculated to lead to admissible evidence.  Plaintiff states that when his home renovation started and finished is wholly unrelated to this case, because it was never provided as a reason for rejecting the art, and certainly not for the extended time period that Ms. Loving, AP, and Defendants wrongfully retained the art.

8.      Produce all documents related to any correspondence sent by You or any representative of yours (including Ian Hicks) with any individual or entity (other than Defendants or any retained expert) regarding the art you purchased from ArtPort from October 2015 to present. Such correspondence shall include, but is in no way limited to: Terry Dowd, Grosso, the Gardes, and other purchasers of Garde artwork.

8.      Plaintiff objects to this request as overbroad and unduly burdensome.  It requests all documents "related to" any correspondence sent not only by Plaintiff but any person acting on Plaintiff's behalf with any person or entity over a 5 year period, including a year before the art was purchased.  Plaintiff also objects that this request seeks information protected by the attorney client and work product privileges, because it seeks confidential communications between Plaintiff and his present counsel, and his counsel in an unrelated case involving an entirely different subject-matter, parties, and claimants, which was settled out of court and resulted in a dismissal of all issues and claims with prejudice, and no finding of liability or damages.  Subject to these objections, Plaintiff states that he is producing emails from Ian Hicks to Terry Dowd and one email received from Grosso Art Packers.

9.      Produce all correspondence with Defendants from October 2015 to present.

9.      Plaintiff objects to this request to the extent it requests information not reasonably calculated to lead to admissible evidence, such as information involving the business dealings between Plaintiff and Mr. Hinkelman unrelated to this litigation or art.  Subject to that objection, to the extent such correspondence exists, it has been produced or is already in Defendants' possession.

10.     Produce all appraisals, valuations, condition reports, and analyses You have regarding any art you purchased from ArtPort, other than those produced by Defendants.

10.     Plaintiff objects to this request because it uses the term "analyses" and that term could involve documents or communications with retained, but nondisclosed experts as well as attorney-client communications.  To the extent documents exist outside of that scope, they have been disclosed or are in Defendants' possession or Defendants have disclosed them.

11.     Produce all documents related to any sale, or attempted sale, of the art your purchased from ArtPort to a third party.

11.     No such documents exist.

## Responses to Requests for Admission

1.     Admit that the art was "shipped to Plaintiff without his consent" as alleged by you in paragraph 50 of your Complaint.

1.     The legal effect of an allegation is a legal issue, not a factual one, for purposes of an admission.  Plaintiff states that the allegation speaks for itself, and as such, deny or state they lack sufficient information to admit or deny.

2.     Admit that you authorized ArtPort to accept payment of $186,000.

2.     Plaintiff admits only that based on fraudulent misrepresentations, promises to perform, and failures to disclose material facts and other wrongful conduct as alleged in the Second Amended Complaint, Plaintiff paid $186,000.00 to Art Port LLC.

3.     Admit that you have no evidence ISP, Alicia or Martin St. Pierre received any portion of the monies you paid ArtPort for Garde's artwork.

3.     Denied.  As alleged in the Complaint and in the declaration offered in response and objection to the motion to dismiss filed by Alicia St. Pierre, Martin St. Pierre, and ISP Holdings, Inc., Ms. Loving stated that they received monies from the first purchase.  Further, documents disclosed by Ms. Loving, including an investment agreement, state that those Defendants were to receive revenue from the Garde purchase.

4.     Admit that you had no documents in your possession at the time you filed your Complaint that the value of the First Purchase or Second Purchase (as defined by you in your Complaint) had declined in value.

4.     Denied.

5.     Admit that You rejected a settlement offer of $1,500.00 for storage, insurance to point of shipment, packing and crating prior to bringing this litigation.

5.     Denied.

## Certificate of Service

The undersigned certifies that the foregoing was served on counsel for the Defendants who served this discovery on  12th day of July, 2020:


_s/ Ian T. Hicks, Esq_____

Verification Page

I, Walter Charnoff, on this 13th day of July, 2020, that the factual information in the foregoing interrogatories is true and accurate under penalty of perjury to the best of my information, knowledge, and belief:

By: _____

Walter Charnoff