# **EXHIBIT 25**

Helen Bradley  07/13/2020
WALTER CHARNOFF vs NANCY LOVING

```
 1        IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF COLORADO
 2
    Civil Action No. 19-cv-2381-MEH
 3   _____
 4   DEPOSITION OF:  HELEN BRADLEY
                  July 13, 2020
 5   _____
 6   WALTER CHARNOFF,
 7   Plaintiff,
 8   v.
 9   NANCY LOVING, d/b/a ARTSUITE NY,
     ARTPORT LLC,
10   STUDIO 41, LLC,
     ALICIA ST. PIERRE,
11   MARTIN ST. PIERRE,
     ISP HOLDINGS, INC., and
12   DAVID HINKELMAN,
13   Defendants.
     _____
14
               PURSUANT TO NOTICE, the deposition of
15   HELEN BRADLEY was taken on behalf of the Defendants at
     16358 East 33rd Drive, Suite 40, Aurora, Colorado
16   80011, on July 13, 2020, at 9:39 a.m., before Deborah
     A. VanDemark, Registered Professional Reporter and
17   Notary Public within Colorado.
18
19
20
21
22
23
24
25
```

Page 2

```
 1            A P P E A R A N C E S
 2
    For the Plaintiff:
 3
           IAN T. HICKS, ESQ.
 4         The Law Office of Ian T. Hicks, LLC
           6000 East Evans Avenue
 5         Building 1, Suite 360
           Denver, Colorado  80222
 6         Email:  ian@ithlaw.com
 7
    For the Defendants:
 8
           ELIZABETH H. GETCHES, ESQ.
 9         Shoemaker Ghiselli + Schwartz, LLC
           1811 Pearl Street
10         Boulder, Colorado  80302
           Email:  lgetches@sgslitigation.com
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 3

```
 1               I N D E X
 2   EXAMINATION OF HELEN BRADLEY:               PAGE
     July 13, 2020
 3
     By Ms. Getches                              4, 114
 4
     By Mr. Hicks                                99
 5
                                              INITIAL
 6   DEPOSITION EXHIBITS:                      REFERENCE
 7   Exhibit 1   Plaintiff's 26(a)(2)(C) Disclosure   23
 8   Exhibit 2   Ship Art-Terry Dowd Estimate dated   27
                 4/21/20
 9
     Exhibit 3   Summary of Condition Reports Written 28
10               by Hayley Hooper
11   Exhibit 4   Museum Level Condition Reporting    49
                 Definitions
12
     Exhibit 5   Condition Reports done by Helen     50
13               Bradley
14   Exhibit 6   Photograph of Red Chair, Bates Loving 74
                 1261
15
     Exhibit 7   Condition Report dated 7/9/20       94
16
17
18
19
20
21
22
23
24
25
```

Page 4

1     WHEREUPON, the following proceedings were
2  taken pursuant to the Federal Rules of Civil
3  Procedure.
4         *   *   *   *   *
5         HELEN BRADLEY,
6  having been first duly sworn to state the whole truth,
7  testified as follows:
8        (Deponent's reply to oath:  I do.)
9            EXAMINATION
10 BY MS. GETCHES:
11       **Q.  Please state your name and spell your**
12 **last name for the record.**
13       A.  Helen Bradley, B-r-a-d-l-e-y.
14       **Q.  What is your -- you're here to testify**
15 **on behalf of Terry Dowd, correct?**
16       A.  Ship Art-Terry Dowd.
17       **Q.  And Terry Dowd is simply the name of a**
18 **company, not a person, correct?**
19       A.  Yes, both.
20       **Q.  Okay.**
21       A.  Both the name of Terry Dowd, who is one
22 of the partners in our company, but our full company
23 name is Ship Art-Terry Dowd.
24       **Q.  And you're testifying on behalf of the**
25 **company, correct?**

Page 33

1    Q.  Is that something that you always note,
2 or was that something that Mr. Charnoff asked you to
3 identify?
4    A.  I will usually always note the
5 signature if -- if I can find one, but we were also
6 asked to look for signatures specifically.
7    Q.  Were you asked by Mr. Charnoff or
8 Mr. Hicks or both?
9    A.  Both.
10   Q.  And what value or meaning, I guess, if
11 at all, does a signature have on a given piece of
12 artwork?
13        MR. HICKS:  Object to the form and
14 foundation.
15   A.  Can I go ahead?
16   Q.  (BY MS. GETCHES)  Yeah, if you know.
17   A.  It's a way for someone to verify that
18 the piece was actually created by the artist as the
19 gallery stated.  It can be used -- especially in
20 appraisals, it can be used to determine if a piece is
21 a genuine artwork or not by comparing to known --
22 known signatures by the artist.
23   Q.  In your experience is a signature on a
24 given piece of artwork something that an artist
25 chooses to do?

Page 34

1    A.  Yes.
2    Q.  So sometimes an artist chooses not to
3 put their signature on a given piece of art, correct?
4    A.  Yes.
5    Q.  And you earlier referred to signatures
6 as quote, "obviously intentional."
7    A.  Yes.
8    Q.  And you said that because it's the
9 artist's decision whether or not to put their
10 signature on a given piece of art, right?
11   A.  Yes.
12   Q.  And you note that 19 of the 82 pieces
13 of art that you prepared condition reports on did not
14 have a signature, correct?
15   A.  Yes.
16   Q.  And four of those pieces were posters,
17 however, correct?
18   A.  Yes.
19   Q.  And one of the piece -- if you don't
20 recall, we can go through it.  One of the -- sorry.
21 One of the pieces is actually a combined piece of art
22 that has a signature on the bottom but not the top.
23 Do you recall that?
24   A.  I believe I know which one you're
25 referring to, but I would need to go back and check.

Page 35

1    Q.  Well, if you look at Number 1, would
2 you agree there's a signature on the top of "Nude
3 Figure Diptych," or rather there's a signature on the
4 bottom but not on the top?
5    A.  Yes, that's correct.
6    Q.  Okay.  We're going to go over the
7 condition reports in a minute here.
8    A.  Okay.
9    Q.  I'm just going to ask you a couple of
10 general questions about the whole process, and I'm
11 going to ask you if things were your opinion or not
12 your opinion.
13   A.  Okay.
14   Q.  If you don't understand, just let me
15 know.  It's not your opinion that the art that you
16 reviewed for Mr. Charnoff was damaged at any given
17 point in time, correct?
18   A.  There were a few pieces that looked
19 like they had damage, yes.
20   Q.  And I guess my question is different.
21 It's not your opinion that the art was damaged at a
22 specific point in time versus 20 years ago, correct?
23   A.  Yes, that's correct.
24   Q.  So you have no idea what the condition
25 of the art was three years ago versus seven years ago

Page 36

1 versus 30 years ago, correct?
2    A.  Yes, that's correct.
3    Q.  And for that matter you could not tell
4 the jury that any abrasion, loss, accretion occurred
5 nine months ago versus nine years ago, correct?
6    A.  Yes.
7    Q.  And you can't tell the jury that any
8 abrasion, loss, rub, accretion was done to the art by
9 Nancy Loving while in her care, custody, or control,
10 correct?
11   A.  Yes.
12   Q.  And you have no opinion regarding the
13 value of any of the art you viewed, right?
14   A.  Correct.
15   Q.  And you have no opinion regarding
16 whether any of the losses, accretions, rubs, abrasions
17 that you noted in your condition reports have reduced
18 the market value of the art, correct?
19   A.  I couldn't speak to that, no.
20   Q.  Do you recall reviewing some artwork
21 that looked like it was bound in a notebook or
22 journal?
23   A.  Yes.
24   Q.  You have no opinion whether that
25 artwork that looks like it was previously bound in a

Page 37

1  journal would be more or less valuable if it were
2  still bound in that journal, correct?
3       A.  No, no opinion.
4       Q.  Do you agree that art ages over time?
5       A.  Yes.
6       Q.  Some of the art you analyzed was over
7  40 years old, correct?
8       A.  Yes.
9       Q.  And you have no opinion whether
10  Mr. Charnoff received the art he agreed to purchase or
11  not, correct?
12       A.  I wouldn't know about that.
13       Q.  And it's your opinion that every single
14  piece of artwork that you reviewed for Mr. Charnoff is
15  in stable condition, correct?
16       A.  Yes.
17       Q.  Now, with respect to some of the
18  abrasions, accretions, losses, et cetera that you
19  noted in Mr. Charnoff's art, do you have an opinion
20  whether those could be restored or preserved to remove
21  some of those accretions, discoloration, et cetera?
22       A.  I couldn't personally say for sure one
23  way or the other.  You would need to speak to an
24  appraiser.
25       Q.  Or a conservator, correct?

Page 38

1       A.  Or a conservator, correct.
2       Q.  Are you okay to go for a little longer,
3  or would you like to take a break?
4       A.  Oh, no, I'm good.
5       Q.  Let's look at your Number 1, which is
6  372-1.
7       A.  Okay.
8       Q.  Number 1 is titled "Nude Figure Diptych
9  Top," correct?
10       A.  Yes.
11       Q.  And diptych is d-i-p-t-y-c-h.  And
12  Number 1 is like we were just saying, the top of a
13  piece of art that goes with Number 2, which is "Nude
14  Figure Diptych Bottom," correct?
15       A.  Yes.
16       Q.  The date of creation of this artwork is
17  1977, correct?
18       A.  Yes.
19       Q.  And the author or artist is Harold
20  Garde, correct?
21       A.  Yes.
22       Q.  Would you agree with me that the
23  picture on the first page does not show some loss that
24  is actually present on the art?  For example, the
25  three black lines on the left you cannot see that

Page 39

1  there's what looks --
2       A.  Yes, I would agree to due to the size
3  and image quality you can't see that.
4       Q.  So sometimes when people send pictures
5  of art, you can't see the granular detail of losses
6  that are actually present on the art, right?
7            MR. HICKS:  Objection to the foundation
8  and form.
9       Q.  (BY MS. GETCHES)  Is that correct?
10       A.  Yes.
11       Q.  Do you think it's a misrepresentation
12  to have a picture of art like this on your report when
13  you can't see in plain view the accretions and losses
14  that are actually present on the art?
15            MR. HICKS:  Form and foundation.
16       A.  I'm not sure I would say
17  misrepresentation.  Kind of the goal in putting an
18  unmarked picture on the first page of the report is
19  just for easy reference in my case.
20       Q.  (BY MS. GETCHES)  Yeah.  So when you put
21  this picture on the front page of your condition
22  report, it's to show whoever is looking at the
23  condition report what the piece of art is, right?
24       A.  Yes.
25       Q.  And you don't think you're hiding

Page 40

1  anything from the person who's reviewing the art by
2  not showing every little granular detail of wear and
3  tear to the art, do you?
4            MR. HICKS:  Object to the form and
5  foundation.
6       A.  No.
7       Q.  (BY MS. GETCHES)  So the terms that are
8  present on the second page are what I wanted to ask
9  the questions about.
10       A.  Okay.
11       Q.  So please tell the jury what abrasion
12  means.
13       A.   An abrasion is anything taken from the
14  artwork.  It is less specific than scratch or loss,
15  paint chip, anything like that.  It's a more general
16  term stating that something appears to have come off
17  the artwork or the frame, the base, et cetera.
18       Q.  And why isn't that a loss?
19       A.  Usually it refers to something --
20  something that you can't -- can't be quite specific
21  on, again, noting -- noting what I saw at the -- when
22  I -- when I examined it.  But due to, you know, just
23  using my eyesight, maybe my viewpoint, whatever, I
24  couldn't say for sure that paint was actually lost or
25  something actually rubbed against the surface.  But it