# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-2381-MEH

WALTER CHARNOFF

    Plaintiff,

v.

NANCY LOVING, ARTPORT LLC, ARTSUITE NY, STUDIO 41, LLC

    Defendants.

---

## DECLARATION OF WALTER CHARNOFF

---

I, Walter Charnoff, being over 18 years of age and duly sworn, hereby verify the following under penalty of perjury:

1. I am the Plaintiff in this civil action. I presently live at 6950 Rabbit Mountain Road, Longmont, Colorado, 80503. I have lived only in Colorado for the past ten years. I intend to continue living in Colorado.

2. I have also reviewed numerous emails, text messages, and financial records relating to the allegations, claims, and defenses disclosed by the parties.

3. I have also reviewed the discovery responses tendered by the parties in this litigation in writing.

4. I know Nancy Loving ("Ms. Loving") through her boyfriend and my former business partner, David Hinkelman ("Mr. Hinkelman").

**EXHIBIT A**

5. Almost immediately after I completed the sale of my companies, Mr. Hinkelman and Ms. Loving began soliciting me by phone and text message, while I was physically located in Colorado, to make a substantial purchase of Mr. Garde's artworks from Ms. Loving's gallery.

6. Although the gallery appears to use the name ArtSuite Gallery from time to time, I wrote all of my checks and sent all of my wire transfers to Art Port, LLC, ("AP"). Ms. Loving represented and purported to act on behalf of AP as its owner and manager.

7. I understand that only AP is a registered, existing entity in New York where the gallery was physically situated from January 1, 2016 through July 31, 2019.

8. I made two purchases of art, one for $45,120.00, the second for $141,000.00, which were split up into three wire transfers and one check, which was picked up at my home by Mr. Hinkelman on behalf of Ms. Loving. The final payment was received by Ms. Loving and AP no later than November 18, 2017. Text Messages, emails, and a copy of the single check confirming these payments are attached collectively hereto as <u>Exhibit 1</u>. The text messages are between myself, Ms. Loving, and Mr. Hinkelman, were downloaded from my cellular phones, and I have confirmed they are authentic copies of those messages, with my name appearing as "Walter's iphone." *See* <u>Ex. 1</u>.

9. There was no formal, single written contract between myself and Ms. Loving or AP. Our agreement for each purchase of art is embodied in several emails and text messages, copies of which are attached hereto, collectively, as <u>Exhibit 2</u>. The invoice at Plaintiffs 000183 was created by Ms. Loving as a true and accurate representation of my payment obligations, I received it from her, and I complied with those obligations. *See* <u>Ex. 2</u>.

10. Those written communications establish that at a minimum, Ms. Loving would (1) ship the art to Colorado where I could take possession, (2) ensure that each piece of art was

signed by the artist, Harold Garde ("Mr. Garde"), (3) provide certificates of authenticity with the art, and (4) that I would not be responsible for sales tax.  *See* Ex. 2.

11.	My only obligation under our agreement was for me to pay the full $186,000.00, which I did no later than November 18, 2017.  *See* Ex. 2.  Despite full payment of the art, when I requested that the art be shipped, or even be made available to me in 2019, Ms. Loving refused to ship the art unless I signed an express written contract entitled "Sales Agreement," a copy of which is attached as Exhibit 3.

12.	The Sales Agreement included several terms that I had not agreed to and sought to modify our preexisting agreement, including but not limited to (1) it had an "as-is" clause that made me responsible for any damage to the art that I had not seen for over a year, (2) it restricted my copyright to the art so I could not use it freely, and (3) it made me responsible for sales tax. *See* Ex. 3.

13.	While Ms. Loving made various statements that I owed her other monies, her language in her written communications with me and my attorney at all times on this matter, Ian Hicks, made clear that execution of the Sales Agreement was mandatory, and she would not ship the art without my execution of that document.  The communications demonstrating this fact are attached collectively as Exhibit 4.

14.	Because Ms. Loving retained the art for so long, in an effort to extract execution of the Sales Agreement, the aesthetic, emotional, and artistic connection I had with the art, which were the material and significant reasons I decided to purchase it, have been eviscerated.  The art is now a physical representation of stress, mental anguish, and frustration and is valueless to me.

15. Ms. Loving and AP did not ship the art, and only did so with zero notice to me or my attorney, after I was forced to file a lawsuit to get possession of my art. She would not even let me pick it up at my expense prior to that time.

16. Accordingly, despite her admission it was my art and her admission that I had paid for the art in full over a year prior to her refusal to ship it unless I signed the Sales Agreement, she retained the art until I sued her and then shipped it haphazardly.

17. Based on the review by Ship Art Terry Dowd LLC, the art storage facility where the art is stored, and where an analysis of the condition of the art was made, many pieces of the art have no signature, and no certificates of authenticity for any piece of art were provided. A copy of their report is attached as Exhibit 5.

18. Therefore, Ms. Loving and AP did not fulfill their agreement with me even though I fully performed by tendering payment as stated herein.

.

Signed and verified under penalty of perjury this 19th day of October, 2020

By: _____
      Walter Charnoff