IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.   19-cv-2381-LTB-MEH

WALTER CHARNOFF

      Plaintiff,

v.

NANCY LOVING, d/b/a ARTSUITE NY,
ARTPORT LLC,
STUDIO 41, LLC,
ALICIA ST. PIERRE,
MARTIN ST. PIERRE,
ISP HOLDINGS, INC., and
DAVID HINKELMAN

      Defendants.

**DEFENDANTS NANCY LOVING, d/b/a ARTSUITE NY, ARTPORT LLC, STUDIO 41, LLC AND DAVID HINKELMAN'S OPPOSITON TO PLAINTIFF'S MOTION TO DISQUALIFY COUNSEL**

## INTRODUCTION

Charnoff's Motion to Disqualify is another low in a long line of personal attacks aimed to distract from the merits of his case and to further subvert the purposes of Fed.R.Civ.P. 1: to ensure the just, speedy, and inexpensive determination of this action. Despite the fact that Ms. Getches has represented the Defendants for over 14 months, Charnoff now claims —after discovery is closed and dispositive motions pending— that disqualification is appropriate because Ms. Getches' deposed him with respect to his (myriad) publicly available court cases and work history and (allegedly) pointed her pen at him once.

Charnoff claims disqualification is appropriate because (1) "attorney-client privileged information, work-product privileged information and confidential information"

1

obtained during her previous representation of him has been "used for Defendants benefit in this action and for a potential claim by Hinkelman" and (2) because she is representing two defendants in this action (Studio 41 and ArtPort) who are suing each in Florida other over the same monies paid by Charnoff in this case. [DOC 156 p. 2]. Each ground for disqualification is legally and factually baseless. Charnoff's Motion fails because he identifies zero confidential or privileged *factual* information that Ms. Getches previously obtained from him and he, instead, bases his Motion on *advice* that Ms. Getches (allegedly) provided him and which he (or his attorney) then chose to disclose, not Ms. Getches. Even if disqualification could be based on legal advice revealed by the movant, and it cannot, Charnoff has not (and cannot) show that such legal advice has been *used* against him in this case. Finally, Studio 41 and ArtPort are not suing each other over monies paid by Charnoff and there is no conflict in Ms. Getches' representation of both defendants. Defendants request that the Court deny Charnoff's Motion and award costs and other relief as appropriate.

## STANDARD

"Motions to disqualify counsel rest within the sound discretion of the trial court." *Funplex Partnership v. Funplex P'ship v. F.D.I.C.*, 19 F. Supp. 2d 1201 (D. Colo. 1998). "In interpreting and applying rules of professional ethics, the Court must consider, above all, the effect on the lawyer's client." *In re Renfrow*, No. 17-10385-R, 2018 WL 6266186, at *3 (Bankr. N.D. Okla. Nov. 28, 2018).

### I. Disqualification is Only Appropriate as to a Former Attorney Where the Specific Factual Contexts Are the Same or Substantially Related to the Former Client's Matter

2

"A lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client...." Colo.R.Prof.Conduct 1.9(b). This paragraph "operates to disqualify the lawyer only when the lawyer involved has actual knowledge of information protected by Rules 1.6 and 1.9(b)." Comment to Rule 1.9. The party seeking to disqualify opposing counsel on the ground of a former representation must establish 1) "an actual attorney-client relationship existed between the moving party and the opposing counsel" 2) "the present litigation involves a matter that is 'substantially related' to the subject of the movant's prior representation" and 3) "the interests of the opposing counsel's present client are materially adverse to the movant." *Religious Tech. Ctr. v. F.A.C.T.Net, Inc.*, 945 F. Supp. 1470, 1479 (D. Colo. 1996). "'Substantiality is present if the **factual contexts** of the two representations are similar or related.'" *Quark, Inc. v. Power Up Software Corp.*, 812 F.Supp. 178, 179 (D. Colo. 1992) (quoting *Smith v. Whatcott*, 757 F.2d 1098, 1100 (10th Cir.1985) (emphasis added)). In seeking to disqualify an attorney, "***[s]pecific facts must be alleged*** and 'counsel cannot be disqualified on the basis of speculation or conjecture....'" *Id.* (quoting *FDIC v. Sierra Resources, Inc.*, 682 F.Supp. 1167, 1170 (D. Colo.1987) (emphasis added)). "The burden of establishing the grounds for disqualification is on the moving party." *People ex rel. Woodard v. District Court*, 704 P.2d 851, 853 (Colo. 1985). To grant a motion, the trial court must "determine that any remedy short of disqualification would be ineffective." *People v. Hoskins*, 333 P.3d 828, 835 (Colo. 2014).

**II.     Disqualification is Disfavored and Charnoff Identifies No Prejudice From Continued Representation 14 Months into this Action**

"Disqualification is a severe remedy that should be avoided wherever possible." *Myers v. Porter*, 130 P.3d 1023, 1025 (Colo. 2006). A court may disqualify an attorney only when the movant sets forth specific facts "showing [] a clear danger that prejudice to a client or adversary would result from continued representation." *Id.* "The required showing of prejudice cannot be based on mere speculation or conjecture." *People v. Nozolino*, 298 P.3d 915, 918 (Colo. 2013). "Violation of an ethical rule, in itself, is neither a necessary nor a sufficient condition for disqualification." *Myers*, 130 P.3d at 1025. In fact, "[t]he disqualification of an attorney or firm, or any other sanction, based solely on a rule violation—absent sufficient proof of prejudice—would likely exceed a district court's jurisdiction." *Id.* at 1026.

Even when there might be an alleged violation, courts should "recognize that a motion to dismiss opposing counsel itself can be used as an unfair trial tactic." *Greenebaum-Mountain Mortg. Co. v. Pioneer Nat'l Title Ins. Co.*, 421 F. Supp. 1348, 1352 (D. Colo. 1976). "The attempt by an opposing party to disqualify the other side's lawyer must be viewed as part of the tactics of an adversary proceeding." *Id.* Thus, courts must be wary of a party's using a motion to disqualify as a procedural weapon. *See Mercantile Adjustment Bureau, LLC v. Flood*, 278 P.3d 348, 353 (Colo. 2012); *Fognani v. Young*, 115 P.3d 1268, 1272 (Colo. 2005). Moreover, late filing of a motion to disqualify can justify the summary rejection of that motion. *Marguerite A. Walk Private Found. Corp. v. Grand Teton Music Festival, Inc.*, No. 16cv155-F, 2017 WL 3449604, at 5 (D. Wyo. Mar. 8, 2017) (citing *Redd v. Shell Oil Co.*, 518 F.2d 311, 315 (10th Cir. 1975); *see Monarch Normandy Square Partners v. Normandy Square Assocs. Ltd. P'ship*, 1989 WL 86963, at 3 (D. Kan. July 26, 1989) ("A motion to disqualify should be

4

made with reasonable promptness after a party discovers the facts which lead to a motion.").

## BACKGROUND

Ms. Getches represented Mr. Charnoff and his company, RentRange, for a few months, over five years ago, when she was at her former firm, Moye White, LLP. Declaration of Liza Getches ("Declaration"), attached hereto as Ex. 1, at ¶ 3.  In that case, the "Taylor Action," Ms. Getches entered her appearance on July 3, 2014 and the case was dismissed by stipulation of the parties on October 15, 2014.  Declaration ¶ 3, Ex. A, B.  Ms. Getches does not recall the majority of the details of her brief representation of RentRange and Mr. Charnoff and does not recall whether she met him in person in addition to speaking with him on the phone.  *Id.* ¶ 4.  At the inception of this case, Ms. Getches recalled that Mr. Charnoff owned RentRange, a client she remembered from Moye White, and as a result she consulted with ethics counsel regarding the propriety of her representation, both prior to and after counsel for Charnoff's initial threat to move to disqualify her, over a year into the case, on October 14, 2020. Declaration ¶ 10.  Without waiving any attorney-client privileged protections, Ms. Getches proceeded with representation of Defendants based on advice of counsel. *Id.* at ¶ 11.

Clearly Charnoff has known about the representation since the inception of this case (and whatever he believes he disclosed to her) yet he waited 14 months to file his Motion as a transparent and untimely procedural weapon to harm Defendants and distract from the merits of this case. Charnoff identifies no basis for filing his Motion now, other than an unfair trial tactic, and Defendants will be further prejudiced in

defending this frivolous action by being forced to incur extensive additional attorneys' fees if forced to retain new counsel, where discovery has closed and dispositive motions have already been filed.

## ARGUMENT

### I. Prior Representation of Charnoff in the Taylor Case Does Not Justify Disqualification

The Taylor Action was an employment dispute where Taylor sued RentRange for failure to pay him under an employment agreement and sued Charnoff for various torts, including allegedly assaulting Taylor while collecting a company laptop.[1]  *See* Complaint attached as Exhibit C.

Charnoff alleges that during her representation of RentRange, Getches learned "a broad array of facts about RentRange, its corporate structure, line of business and activities in the marketplace" and that she had meetings, calls, and "advised him over the next several years." [DOC 16 p. 7].  To the contrary, Ms. Getches did not advise Charnoff over *several years*:  she was counsel on the Taylor litigation from July 2014 to October 2014, and left Moye White one year later in October 2015.  Declaration ¶ 7.  To be clear, RentRange is not a party to this case and any business information she learned regarding RentRange pertains in no respect to the factual context of this action, which involves the purchase and sale of art.

---

[1] Charnoff attaches Exhibit 2 for a misleading purpose.  [DOC 156-3].  Exhibit 2 shows Ms. Getches' contact information for the 2014 Taylor case as Shoemaker, Ghiselli + Schwartz (SGS) but she did not represent Charnoff at SGS.  Declaration ¶ 9.  Ms. Getches joined SGS in November 2015 and the Taylor Litigation concluded a year prior, in October 2014.  *Id.* ¶ 8.

Charnoff claims Ms. Getches demonstrated "the height of disloyalty" when she asked generic questions about the Taylor litigation in "a transparent attempt to use the allegations in those cases to paint Plaintiff in a negative light" and to use "Plaintiff's actions in following [her] advice against him" when she previously told him he had "done nothing wrong." Motion [DOC 156] p. 4. Charnoff does not explain how Ms. Getches painted him in a negative light or used her advice against him.

Distilled, Charnoff's position is that "Defendants' defense strategy, in part, <u>is substantially related to this action</u>, because they intend to utilize [Charnoff's] alleged mismanagement of RentRange "to demonstrate that [he] lacks credibility, is overly litigious, and seeks to avoid paying legitimate obligations." *Id.* p. 5. But the alleged mismanagement of RentRange would have been *Taylor's strategy*, not Ms. Getches' strategy, and allegations regarding Charnoff's alleged mismanagement are public record contained in public court filings, and could be drawn upon by any attorney. *See* Complaint, *supra*. Moreover, seeking to show a lack of credibility, litigiousness, and failure to pay legal obligations is a common method employed by attorneys including Ms. Getches because juries are instructed to consider the credibility of witnesses. Declaration ¶ 15.

In any event, Ms. Getches did not question Mr. Charnoff regarding "mismanagement" of RentRange. *Id.* ¶ 19. Rather, it was Charnoff who unnecessarily detailed advice that Ms. Getches (allegedly) provided to him related to the Taylor settlement (whether to accept stock versus attorneys' fees). Charnoff Affidavit ¶ 8; Motion p. 8; Ex. 2 (Charnoff Dep.) at 14:21-15:23. The fact that Ms. Getches engaged in common-place deposition questioning regarding the Taylor Action, along with

7

Charnoff's other extensive court cases, in no way establishes that the two matters are substantially related, as required for disqualification.

## II. Getches Did Not Represent Charnoff on the RentRange, Onit Solutions LLC and REIsmart, LLC Transaction and There is No Basis for Disqualification

Charnoff claims Ms. Getches' previous involvement in a transactional matter justifies disqualification. [DOC 156 p. 3]. However, Charnoff does not identify confidential or privileged information *he* provided to Ms. Getches that she has *used* in this case and, instead, *himself* reveals legal advice she (allegedly) provided to him while at her former firm, Moye White. *Id.* Charnoff states Ms. Getches provided legal advice and guidance on the formation, management, and sale of certain assets between OnIt, REI, and RentRange, including guidance on "whether OnIt had title to certain intellectual property … and drafted an Opinion Letter that it had "clear title." [DOC 156, p. 8 ¶ 9] Charnoff Affidavit ¶ 10.

Ms. Getches does not have access to five-year old information from her prior firm but (1) she is, (and has always been) a litigator not a transactional attorney, (2) she did not perform title searches, and (3) she did not draft legal Opinion Letters at Moye White. Declaration ¶ 20. Instead, Moye White had a formal Legal Opinion committee in place which included attorneys that she understood were trained or qualified to draft Legal Opinions. *Id.* Ms. Getches was not a member of the group and did not draft formal Legal Opinions. *Id.* In any event, there is no confidential information identified that Ms. Getches *used* against Mr. Charnoff and, instead, it is Charnoff who drafted an affidavit where he chose to disclose the legal advice (allegedly) provided by Ms. Getches. *See* Ex. [156-4]; [DOC 156, p. 8 ¶ 9]; Charnoff Affidavit ¶¶ 9-11.

8

Charnoff details advice he was provided [DOC 156 p. 9 ¶ 10-11] leading up to and during the Ladd Litigation, specifically regarding a demand letter from Ladd, and states that the advice he was provided by Moye White and Ms. Getches was "negligent" because the Ladd Litigation was eventually commenced in late October 2015, the same date that Ms. Getches moved firms. *See* Declaration ¶ 7. Ms. Getches did not represent Charnoff in the Ladd Litigation and she did not provide him advice with respect to the Ladd Litigation because it was litigated when she was already at her current firm. *Id.* ¶ 9.

Charnoff claims Ms. Getches "weaponized the (unidentified) privileged and confidential information she obtained during her prior representation of Charnoff" and "sought to expose privileged and confidential information" [DOC 156 p. 4, 10] but he identifies *zero* privileged and confidential information she either obtained at Moye White or received as a result of her questioning during the deposition, and there is none. Instead of information he disclosed to Ms. Getches, Charnoff discloses various *advice he received* from Ms. Getches in his Motion and Affidavit, which was *not* discussed nor elicited during his deposition, and which has indisputably not been *used* in this case (and it has not). [DOC 156] p. 8-9, ¶¶ 7 – 10. Charnoff Affidavit ¶¶ 7-9.

III. **Questions Were Not Propounded to Aid an (Alleged) Future Hinkelman Suit**

Charnoff claims Getches asked questions about Plaintiff's management of RentRange leading up to the Ladd Litigation in an attempt to "obtain discovery for a future case by Mr. Hinkelman." [DOC 156 p. 4-5]. Specifically, he states she solicited information for use in Hinkelman's future lawsuit when she asked questions regarding the structure and management of his various companies, whether he had been accused

9

of misrepresentation by a former employee, and whether he had instructed investors to set aside legal reserves. *Id.*  Questions regarding his former work were conducted to understand Charnoff's background and to show Charnoff actually does due diligence on companies he invests in which he expects to make a profit.   Declaration ¶ 17.  The question regarding whether an employee had accused Charnoff of misrepresentation directly relates to the claims in this case and was to understand whether Charnoff knew of the significance, meaning or gravity of the claims he brought in this case.  *Id.* ¶ 18.  However, Charnoff denied ever being accused of misrepresentation and, as a result, Ms. Getches moved on to another line of questioning. Ex. 2 (Charnoff Dep.) at 29:3-5 (Q: "Were you accused of misrepresentation by employees at Altisource?" A: "I was not.").  The question regarding legal reserves was propounded to determine whether he included the reserves as assets in his bankruptcy schedules, or chose to not to (such as the very art Charnoff failed to disclose in this case).

In short, the information elicited was not conducted for the purpose of a future lawsuit and, to the extent Mr. Hinkelman and Mr. Charnoff chose to litigate in the future, Ms. Getches would not represent Hinkelman in any such lawsuit. Declaration ¶ 22. Chcharnarnoff's self-serving argument that the questioning "had no apparent purpose other than to obtain discovery for a future case," [DOC 156 p. 4-5] is nothing but pure conjecture and cannot support a claim for disqualification.

**IV.     Counsel Did Not Use Confidential Information to Trigger Plaintiff's Unique Sensitivities**

Charnoff claims Ms. Getches learned Charnoff's "unique personal characteristics … strengths and weaknesses as a witness, and the circumstances likely to cause him stress, annoyance and frustration" but he identifies no such unique personal

10

characteristics.   [DOC 156] at p. 7.  Instead, Charnoff reveals no-so-unique traits on page 7 of his Motion and in his Affidavit ¶ 4-5, that he is "private" "protective of his wife" or that he wants "to appear" as "someone is emotionally stable, law-abiding, and trustworthy" and that he has a "strong disdain for being pointed at."  *Id.*  Charnoff and his counsel further revealed these characteristics to Ms. Getches, counsel for the ISP Defendants, and Florida counsel for Studio 41, prior to the deposition in email correspondence prior to his deposition Hicks. Ex. 3 (Email from Hicks to Getches, August 16, 2020). To the extent this information could be considered protected or privileged after Charnoff or his counsel disclosed it on multiple occasions both prior to the deposition and in his own Motion it is not unique, privileged nor does Ms. Getches believe it was "disclosed" to her five years ago.  Declaration ¶ 13. She further asserts she does not believe the information to be is memorable or distinct to any client and denies he told her he has a "disdain for being pointed at."  *Id.* ¶ 14.

Ms. Getches did not learn confidential information regarding Charnoff's traffic tickets but, to the extent she did receive information regarding Mr. Charnoff's prior litigation history, she did not retain the information and, as a result, paid to have her paralegal download and review Mr. Charnoff's publicly available court cases and appearances, which are substantial.  *Id.* ¶ 16; Charnoff Case List attached as Exhibit 3. In paragraphs 7 and 8, Charnoff (himself) discloses several pieces of "advice" Ms. Getches allegedly provided regarding the use of prior litigation history against to him, which she denies, but he does not explain how it was "used" against him.  *See id.* ¶¶ 10-12. For example, Charnoff identifies as "most inappropriate" Ms. Getches repeated questions "regarding the very same subjects, facts, communications involved in her

11

prior representations of Plaintiff and his companies" but – unimpressively – cites to her generic questioning regarding Mr. Charnoff's – publicly available – litigation history. [DOC 156 ¶ 17].

Charnoff also claims concern that Defendants "may have hired Ms. Getches because she formerly represented Plaintiff", [DOC 156 p. 5], but Ms. Getches revealed her prior representation to her clients, not vice versa. Declaration ¶ 23.

Finally, Charnoff claims that "at the outset of the case" (over a year ago) she inappropriately filed a "background check" of Charnoff and his wife disclosing his and his wife's "political affiliation, her addresses, her assets, and vehicles" [DOC 156 p. 15] suggesting Ms. Getches should have filed the same level of personal and financial information of her own clients. Charnoff claims Ms. Getches engaged in "harassing and irrelevant questioning" regarding his assets to utilize the "unique sensitivities and weaknesses as a witness, which matters are confidential and privileged, against [him] to harm his interests. [DOC 156 p. 24]. Defendants filed an asset report because they were ordered by the court to prove Charnoff's domicile for purposes of jurisdiction, stating, "[a]s applicable to Plaintiff (and Defendant Loving) residence itself is not sufficient, itself, to establish jurisdiction." [DOC 8] at p. 3. Because Defendants and the undersigned did not possess such information, they enlisted the assistance of a private investigator to provide an asset report related to domicile and residence. *See* Affidavit of Private Investigator [DOC 12-2] and various related filings [DOCS 12-2 – 12-6].

Stated simply, Charnoff identifies no unique or confidential information that was used against him nor explains why his Motion should be granted now when he knowingly waited a year to file it.

**V.      The Alleged Conflict in Representing Studio 41 and ArtPort is Baseless.**

Charnoff asserts there is an "obvious conflict of interest because both in this action and in the Florida action the interests of parties are materially adverse". Charnoff further (incorrectly) claims the ethical conflict would prevent Studio 41 from asserting that Loving and ArtPort were acting beyond the scope of their authority in his case and also (incorrectly) that they parties are in litigation over the "same monies and reporting failures at issue in this case."

The instant action involves the sale of art to Charnoff by ArtPort and Loving and Charnoff inexplicably brought Studio 41 into the lawsuit despite Studio 41 not being involved in the transaction. The Studio 41 Florida lawsuit involves nothing related to the Colorado case, but instead, Studio 41's desire to terminate ArtPort's agency relationship with Studio 41 over an alleged failure to provide timely reporting. *See* Complaint attached as Exhibit 4. After the Florida lawsuit commenced, Studio 41 asked Ms. Getches to continue representing it. Declaration ¶ 24. Ms. Getches has repeatedly been assured that the Florida lawsuit does not seek monies related to Charnoff, only termination of the agency agreement. *Id.* ¶ 25. Charnoff, in turn, has been advised repeatedly that the two cases are distinct, not related and that she would continue to represent both defendants, at the request and consent of both defendants. *Id.* ¶ 26. Charnoff's counsel was also directly advised by Studio 41's Florida counsel (Jason Zimmerman) that the cases are not the same and his suggestion that Ms. Getches should withdraw is meritless. *See* email from Jason Zimmerman to Ian Hicks dated October 27, 2017, attached as Exhibit 3. Thus, Charnoff's Motion on this basis is groundless.

13

## **CONCLUSION**

For the reasons set forth herein, Plaintiff's motion to disqualify should be denied.

Dated: October 29, 2020.

                                              Shoemaker Ghiselli + Schwartz LLC

                                              */s/  Liza Getches*
                                              Elizabeth H. Getches
                                              SHOEMAKER GHISELLI + SCHWARTZ LLC
                                              1811 Pearl Street
                                              Boulder, CO  80302
                                              Telephone:  (303) 530-3452
                                              FAX:  (303) 530-4071
                                              Email:  lgetches@sgslitigation.com
                                              *Attorney for Defendants*

**CERTIFICATE OF SERVICE**

    I hereby certify that on this 29th day of October, 2020 a true and accurate copy of the foregoing **DEFENDANTS NANCY LOVING, d/b/a ARTSUITE NY, ARTPORT LLC, STUDIO 41, LLC AND DAVID HINKELMAN'S OPPOSITON TO PLAINTIFF'S MOTION TO DISQUALIFY COUNSEL** was filed and served via ECF on all counsel of record.

                                              *s/ Vanya P. Akraboff*