# EXHIBIT 3


Shoemaker Ghiselli & Schwartz LLC Mail

**From:** Ian Hicks <Ian@ithlaw.com>
**Sent:** Wednesday, September 30, 2020 10:14 AM
**To:** hegarty_chambers@cod.uscourts.gov
**Cc:** Keely Carraway <keely@ithlaw.com>; Carrie Mumma <carrie@ithlaw.com>; Liza Getches <lgetches@sgslitigation.com>; Tom Wagner <tom@anderson-lg.com>
**Subject:** FW: Charnoff - Deposition Conferral Re Brande Charnoff
**Importance:** High

Hello,

Please see below. Thank you.

The Law Office of Ian T Hicks, LLC

6000 East Evans Avenue

Building 1, Suite 360

Denver, CO 80222

(720) 216-1511

(303) 648-4169

ian@ithlaw.com

---

**From:** Ian Hicks
**Sent:** Sunday, August 16, 2020 3:36 PM
**To:** Liza Getches <lgetches@sgslitigation.com>
**Cc:** Tom Wagner <tom@anderson-lg.com>; Keely Carraway <keely@ithlaw.com>; Carrie Mumma <carrie@ithlaw.com>; Jason A. Zimmerman <Jason.Zimmerman@gray-robinson.com>
**Subject:** Charnoff - Deposition Conferral Re Brande Charnoff
**Importance:** High

Hello Liza,

This communication is made pursuant to the safe harbor provisions of RPC 4.5(b).

Your email reflects a pattern of harassment, delay, and double standards that continues to drive up the attorneys' fees in this case.

Brande is a non-party, who has no information that is not available from other sources. Indeed, it is unlikely she has any unprivileged information. You tacitly conceded this when you failed to seek any discovery from her, or to request her deposition, for over a year after the commencement of this civil action. Your first request for her deposition occurred after the original discovery cutoff, and within only a few hours of sending a terse response to my email rejecting a settlement with Studio 41 based on my statement of delays and discovery gamesmanship by your clients. At neither that time, nor previous, nor since, have you explained despite request what information that you are attempting to obtain that isn't known by Mr. Charnoff, known by your clients, or known by other parties to this case.

Under C.R.S. 13-90-107(1)(a) and *In re Marriage of Bozarth*, 779 P.2d 1346 (Colo. 1989), my client may preclude any adverse testimony from Brande. ("The plain terms of section 13-90-107(1)(a) create two distinct privileges with respect to spousal testimony. *People v. Lucero*, 747 P.2d 660, 666 (Colo.1987). The first is the privilege against adverse spousal testimony or what is sometimes referred to as the rule of spousal disqualification. *Id*. at 667. This privilege prohibits a husband from testifying "for or against his wife without her consent" and a wife from testifying "for or against her husband without his consent." § 13-90-107(1)(a), 6A C.R.S. (1987) . . . As long as there is a valid contract of marriage in existence at the time of the proffered testimony, the statutory privilege against adverse spousal testimony will apply to prohibit one spouse from testifying "for or against the other on any subject without the consent of that other spouse."). Under this restriction, I cannot see what you hope to get from Brande.

Given these circumstances, it seems your request to depose Brande is designed to harass her, but also, more importantly, harass Mr. Charnoff. During your prior representation of Mr. Charnoff, you became keenly aware that he is uniquely protective of his wife, information that is both confidential and was learned as a consequence of the attorney-client relationship, which it seems you are attempting to use to your tactical advantage in this case. In fact, one can be fairly certain that one of the motivating factors behind your retention by Ms. Loving, through her local counsel, was your prior representation of Mr. Charnoff. I am unaware of any prior personal or business relationship you have with any of the Defendants. This is not the first time that you appear to have used Mr. Charnoff's unique characteristics, learned in the context of your attorney-client relationship with him, to gain an advantage. Early in the case, even after he expressly admitted his residency in Boulder County, Colorado, in a pleading filed with the Court, you still had a private investigator pull a detailed financial report and file it publicly with the court, which had a list of his properties, assets, and vehicles owned. This information was totally unnecessary, except that you have learned when you previously represented him that he is a very private person and does not want to have any details of his financial life out in the public domain.

While representing a client against a former client is not per se improper if the former and current matters are not substantially related, where confidential information is learned regarding the former client's unique vulnerabilities, that is a violation of the duties of loyalty and confidentiality:

> [Subsection (2) of R.P.C. 1.9] does not require a substantial relationship between the former and current representation. It recognizes that Rule 1.9's duty of loyalty embraces the sanctity of all information obtained in the course of representation, even if that information is not consciously and intentionally communicated to the attorney. This type of information—actively or passively obtained—can be knowingly, or even unknowingly, utilized by counsel to the disadvantage of its former client.

> When counsel is engaged, it is given privileged entry into the private world of the client; and in that privileged role counsel becomes privy to potentially innumerable observations, impressions, etc., which are not generally known. It is unseemly, and contrary to the duty of loyalty, for counsel to be in a position to utilize these observations and impressions to the litigation disadvantage of its former client by, for example, exploiting witnesses' known weaknesses. Subsection (2) of Rule 1.9 honors and enforces this aspect of the duty of loyalty.

*In re PGH Int'l, Inc.*, 222 B.R. 401, 408 (Bankr. D. Conn. 1998) (citing *Prisco v. Westgate Entertainment, Inc.*, 799 F. Supp. 266 (D. Conn. 1992) (collecting authorities) (Citing Connecticut's R.P.C. 1.9, which is identical to Colorado's R.P.C. 1.9).

Yet, even if we presume that your request to depose Brande is to properly obtain discoverable information, the manner in which her deposition is being scheduled is improper. This is itself evidence from comparing the position that the Defendants other than ISP have taken with respect to their depositions. Mr. Wagner appears to believe that his clients, who he does not dispute have discoverable information, and who are actually parties to the case, are effectively immune from discovery. With respect to Ms. Loving, Mr. Hinkleman, and ISP, they each are central figures in the events giving rise to this litigation, they are each parties, none of them personally have a life threatening and unpredictable pandemic illness.

While you may believe that you are in a position to decide when Brande's Covid 19 disease has sufficiently abated for her to safely undergo the rigors of preparation and being deposed, you are not a medical doctor, you have not treated Brande, and you have no information from any medical professional that has. It should go without saying that Covid 19 is an illness that is mostly unknown to medical science, an illness for which even the best information relating to its spread, course, treatment, prognosis, and long-term risks is substantially unpredictable.

Some people, apparently healthy, get Covid, seem fine for a week, and then suffer massive organ failure. Why some people who lack preexisting conditions die, or have a downward turn after apparently recovering, is not known. Brande is still suffering symptoms of coughing and difficulty breathing. Her doctor, in an abundance of caution, has advised that the safest course of action is for her to wait another 30 days. You have been advised of her medical condition throughout. Her doctor is working during a pandemic and I do not feel it is necessary, moral, or even legitimate to ask that a medical profession be diverted during this time period for your unjustified demand for a doctor's note. Brande can provide a declaration to attest to her facts of treatment and need to delay her deposition, and this is more than sufficient. Let me also be clear, Brande has already suffered stress, frustration, and anxiety as a result of this deposition disputes as to whether she will have to sit through an all day deposition while still sick.

Your clients have no medical condition. Mr. Hinkelman is not even married to Ms. Loving, and is not related to her father. Why his deposition needs to be delayed or needed to be delayed or moved simply makes no sense. Ms. Loving, for her part, is not responsible for her father's care, and there is no indication that she cannot prepare for or attend a deposition remotely at any time. While his condition is unfortunate, nothing about her party deposition puts her life or health at risk. We have been seeking these depositions for months, and it has been one delay after another. There have been 10 document productions, Terry Dowd's deposition has already been taken, and my client has incurred substantial fees in dealing with these matters, and now Brande is having to incur fees to hire me to defend against a harassing deposition request that puts her health at risk.

So our offer remains that she can be deposed, subject to health considerations, in mid September. We can provide a declaration from her regarding her treatment and doctor's instructions. If you do not agree to move her deposition, then we will file for a protective order and seeks fees and costs. Furthermore, please advise when Nancy's father became ill, what his illness is, whether he is under medical care at a facility, and specifically what role Ms. Loving and Mr. Hinkelman play in his treatment. Please also advise how many days this month they have spent with him. There has been a startling lack of factual support or detail for continuing to move around their depositions around and intimating that they may yet again not be available even at the end of August.

Please promptly advise how you intend to proceed.

Thanks

Ian Hicks

The Law Office of Ian T. Hicks, LLC

[6000 East Evans Avenue, Building 1, Suite 360](#)

Denver, Colorado 80222

Phone: (720) 216-1511

Fax: (303) 648-4169

[ithlaw.com](#)

[ian@ithlaw.com](#)



Vanya Akraboff &lt;vakraboff@sgslitigation.com&gt;

---

**From:** Jason A. Zimmerman &lt;Jason.Zimmerman@gray-robinson.com&gt;
**Sent:** Sunday, August 9, 2020 3:33 PM
**To:** Ian Hicks &lt;Ian@ithlaw.com&gt;
**Cc:** Liza Getches &lt;lgetches@sgslitigation.com&gt;; Keely Carraway &lt;keely@ithlaw.com&gt;; Carrie Mumma &lt;carrie@ithlaw.com&gt;
**Subject:** Re: Charnoff - Two Conferral Items

Ian -

I wrote you about the purported conflict issue before. As I stated, nothing in the litigation in Florida has anything to do with your action. I said that to you in e-mail. I said that to you over the phone.

As counsel for Studo 41, I've repeatedly said there isn't a conflict and we are happy with Liza's representation of Studio 41.

Can you help me here? What are you referring to re: questions at a deposition?

**Jason A. Zimmerman | Shareholder**
**G R A Y | R O B I N S O N**

301 East Pine Street, Suite 1400 | Orlando, Florida 32801
**T:** 407-843-8880 | **F:** 407-244-5690 | **D:** 407-244-5669
E-mail | Website | Bio | vCard

**Facebook | LinkedIn | Twitter**

**For the latest updates on COVID-19, visit GrayRobinson's COVID-19 Task Force.**

This e-mail is intended only for the individual(s) or entity(s) named within the message. This e-mail might contain legally privileged and confidential information. If you properly received this e-mail as a client or retained expert, please hold it in confidence to protect the attorney-client or work product privileges. Should the intended recipient forward or disclose this message to another person or party, that action could constitute a waiver of the attorney-client privilege. If the reader of this message is not the intended recipient, or the agent responsible to deliver it to the intended recipient, you are hereby notified that any review, dissemination, distribution or copying of this communication is prohibited by the sender and to do so might constitute a violation of the Electronic Communications Privacy Act, 18 U.S.C. section 2510-2521. If this communication was received in error we apologize for the intrusion. Please

notify us by reply e-mail and delete the original message without reading same. Nothing in this e-mail message shall, in and of itself, create an attorney-client relationship with the sender.

On Aug 9, 2020 5:18 PM, Ian Hicks <Ian@ithlaw.com> wrote:

> **This message originated outside of GrayRobinson.**
>
> Hello Liza,
>
> I am writing to confer on two items.
>
> First, your client's expert disclosure. I have conferred previously, but to reiterate, it does not provide her qualifications, expertise, or an adequate statement of the opinions to be expressed under the rule for non retained experts. Given our prior conferrals and the fact that it has not been updated or amended, I will email the judge's chambers tomorrow at 5 p.m. if we don't have agreement that you will do so by Tuesday at noon.
>
> Second, the disqualification and conflict issues. Even with the conflict waiver, there remains the problem of you cross examining your clients at the depositions. More specifically, to adequately represent S41, it is necessary to establish that Ms. Loving either did nothing wrong (in which case that hurts S41's position in the Florida case) or was acting entirely for her own purposes and against S41 here (which helps her position in the Florida case, but hurts her position here).
>
> If you review the comments to the RPC rule on conflicts, that is essentially a non-waivable issue. I presume it is opposed, but I am conferring nonetheless because this is a new matter.
>
> Thanks
>
> Ian
>
> The Law Office of Ian T Hicks, LLC
>
> 6000 East Evans Avenue
>
> Building 1, Suite 360
>
> Denver, CO  80222
>
> (720) 216-1511
>
> (303) 648-4169
>
> ian@ithlaw.com



## Party Search Results

**Search Criteria:** Party Search; Last Name: [charnoff]; First Name: [walter]
**Result Count:** 9 (1 page)
**Current Page:** 1

| | |
|---|---|
| Party Name | Charnoff, Walter (db) |
| Case Number | 1:2017bk21594 |
| Case Title | Walter Charnoff |
| Court | Colorado Bankruptcy Court |
| Date Filed | 12/22/2017 |
| Date Closed | 05/20/2019 |
| Party Name | Charnoff, Walter (dft) |
| Case Number | 1:2018ap01110 |
| Case Title | LADD 2000 Partners, LTD and Charnoff |
| Court | Colorado Bankruptcy Court |
| Date Filed | 04/02/2018 |
| Date Closed | 07/08/2019 |
| Party Name | Charnoff, Walter (cr) |
| Case Number | 1:2018bk13226 |
| Case Title | George Stephen Long |
| Court | Colorado Bankruptcy Court |
| Date Filed | 04/18/2018 |
| Date Closed | 12/12/2018 |
| Party Name | Charnoff, Walter (cc) |
| Case Number | 1:2010cv00508 |
| Case Title | Buckles Management, LLC et al v. InvestorDigs, LLC et al |
| Court | Colorado District Court |
| Date Filed | 03/04/2010 |
| Date Closed | 03/28/2011 |
| Party Name | Charnoff, Walter (dft) |
| Case Number | 1:2010cv00508 |
| Case Title | Buckles Management, LLC et al v. InvestorDigs, LLC et al |
| Court | Colorado District Court |
| Date Filed | 03/04/2010 |
| Date Closed | 03/28/2011 |

| Party Name | Charnoff, Walter (cc) |
|---|---|
| Case Number | 1:2014cv01251 |
| Case Title | Taylor v. Charnoff et al |
| Court | Colorado District Court |
| Date Filed | 05/01/2014 |
| Date Closed | 10/15/2014 |
| Party Name | Charnoff, Walter (dft) |
| Case Number | 1:2014cv01251 |
| Case Title | Taylor v. Charnoff et al |
| Court | Colorado District Court |
| Date Filed | 05/01/2014 |
| Date Closed | 10/15/2014 |
| Party Name | Charnoff, Walter (pla) |
| Case Number | 1:2019cv02381 |
| Case Title | Charnoff v. Loving et al |
| Court | Colorado District Court |
| Date Filed | 08/21/2019 |
| Date Closed | |
| Party Name | Charnoff, Walter (cd) |
| Case Number | 1:2019cv02381 |
| Case Title | Charnoff v. Loving et al |
| Court | Colorado District Court |
| Date Filed | 08/21/2019 |
| Date Closed | |